**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

DIANNE LaSALLE, individually, as Personal Representative of the Estate of the Decedent JACK LaSALLE, and on behalf of all wrongful death beneficiaries of Decedent JACK LaSALLE,

Plaintiffs,

v.

AMERICAN INTERNATIONAL INDUSTRIES, et al.;

Defendants.

Case No. 2:26-cv-03159-TL

**PLAINTIFFS' EMERGENCY APPLICATION FOR IMMEDIATE REMAND OF MESOTHELIOMA LAWSUIT BACK TO WASHINGTON STATE COURT; OR IN THE ALTERNATIVE, FOR SHORTENED NOTICE TIME ON A MOTION FOR SUCH RELIEF**

NOTE ON MOTION CALENDAR:
October 7, 2026



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION AND STATEMENT OF THE ISSUES. .................................. 6

II. STATEMENT OF FACTS. .................................................................. 8

A. The *LaSalle* Washington State Court mesothelioma lawsuit has been pending since May 4, 2023. .................................................................. 8

B. Barretts' bankruptcy case was filed several months later, on October 2, 2023. .................................................................. 9

C. After the parties exchanged thousands of pages of documents and completed over three dozen depositions during the discovery process, the *LaSalle* case will start its Washington State Court jury trial on November 2, 2026. .................................................................. 9

D. Decedent Jack LaSalle used Clubman Talc from the late 1960's through 2010's, including as of 1987 when Defendant A-I-I became the manufacturer – *i.e.*, Mr. LaSalle used A-I-I's product for five years before BMI Oldco Inc. (f/k/a Barretts Minerals Inc.) even existed. .................................................................. 11

1. Mr. LaSalle's testimony. .................................................................. 11

2. Mr. Loveless's testimony on behalf of A-I-I. .................................. 14

E. Mr. LaSalle also used Dr. Scholl's talc that was made by Defendant PTI Union; and PTI Union will participate in the Washington State Court jury trial. .................................................................. 15

1. Mr. LaSalle's testimony. .................................................................. 15

2. The Washington Court of Appeal's order affirming personal jurisdiction. .................................................................. 16

3. PTI Union's chart of talc sources. .................................................. 16

F. Pathologists Dr. Dodson and Dr. Abraham each detected talc, asbestos, and other talc-related particles in Mr. LaSalle's tissue samples; and explained that Mr. LaSalle's exposures to Clubman talc and Dr. Scholl's talc contributed to causing Mr. LaSalle's mesothelioma. .................................................................. 16

1. Photographs of chrysotile, tremolite, anthophyllite, and talc in Mr. LaSalle's lung and lymph tissue. .............................................. 18

G. Barretts did not exist until 1992 – *i.e.*, five years after A-I-I started to make Clubman talc. .................................................................. 19




**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

H. On May 14, 2025, Judge Isgur recommended that the bankruptcy-court reference should be withdrawn, so that the SDTX District Court could determine whether any talc sold by Barretts contained sufficient quantity and form of asbestos to potentially cause mesothelioma or other asbestos-related diseases. ..................................... 19

I. On June 22, 2026, the SDTX District Court withdrew the bankruptcy-court reference as Judge Isgur had recommended. ................. 20

J. 73 days later (and 1,067 days after Barretts filed its bankruptcy case), A-I-I filed its Notice of Removal of Claims in the *LaSalle* case, asserting "related to" jurisdiction linked to Barretts' bankruptcy case. .................................................................................................... 20

III. DISCUSSION.................................................................................................... 20

A. A-I-I violated the 30-day deadline for removal, depriving the federal courts of any potential "related to" jurisdiction over the *LaSalle* case. ...... 20

B. On the merits, this Court does not possess "related to" bankruptcy jurisdiction over the *LaSalle* Plaintiff's Washington State law tort claims against non-bankruptcy-debtor A-I-I. ........................................... 22

C. Likewise, this Court should – and indeed, *must* – abstain from exercising any potential "related to" jurisdiction over the *LaSalle* case because the Washington State Court is ready to conduct a jury trial on November 2, 2026.................................................................... 24

IV. CONCLUSION. ............................................................................................... 26




**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arnold v. Garlock, Inc.*,
278 F.3d 426 (5th Cir. 2001) .......... 23

*Cochran v. Johnson & Johnson*,
2019 WL 3202312 (S.D. Tx. 2019) .......... 8, 22, 23

*Feld v. Zale Corp. (In re Zale Corp.)*,
62 F.3d 746 (5th Cir. 1995) .......... 23

*Gonzalez v. Limon*,
926 F.3d 186 (5th Cir. 2019) .......... 22

*Home Depot U.S.A., Inc. v. Jackson*,
139 S. Ct. 1743 (2019) .......... 22

*Howery v. Allstate Ins. Co.*,
243 F.3d 912 (5th Cir. 2001) .......... 22

*In re Imerys Talc America, Inc.*,
2019 WL 3253366 (D. De. 2019) .......... 8, 22, 23, 24, 25

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 22

*LaRoche Indus. v. Orica Nitrogen LLC*,
312 B.R. 249 (Bankr. D. Del. 2004) .......... 25

*In re Mobile Tool Int'l*,
320 B.R. 552 (Bankr. D. Del. 2005) .......... 25

*Rasul v. Bush*,
542 U.S. 466 (2004) .......... 22

*Removed State Court Talc Actions v. Johnson & Johnson*,
2019 WL 2191808 (C.D. Ca. 2019) .......... 8, 23

*Settlement Funding, L.L.C. v. Rapid Settlements, Limited*,
851 F.3d 530 (5th Cir. 2017) .......... 22



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

*Stern v. Marshall*,
564 U.S. 462 (2011) .......... 23

*In re TXNB Internal Case*,
483 F.3d 292 (5th Cir. 2007) .......... 22, 23

**Federal Statutes**

28 U.S.C.
§ 157(b)(5) .......... 23
§ 1334 .......... 22, 25
§ 1334(b) .......... 22
§ 1334(b), (c)(1)-(2) .......... 8
§ 1334(c)(1) .......... 24
§ 1334(c)(2) .......... 25
§ 1446(b)(1), (3) .......... 7, 20, 21
§ 1452 .......... 22
§ 1452(a) .......... 22
§ 1452(b) .......... 8



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

## I. INTRODUCTION AND STATEMENT OF THE ISSUES.

Plaintiff Dianne LaSalle hereby files this emergency application for immediate remand of the *LaSalle* case back to the State of Washington King County Superior Court, Case No. 23-2-08165-0 SEA, so that the jury trial may begin on November 2, 2026 with all defendants present.

Mrs. LaSalle filed the *LaSalle* mesothelioma lawsuit in Washington State Court in 2023, several months before BMI Oldco Inc. (f/k/a Barretts Minerals Inc.) filed its bankruptcy case. Over the past three-and-one-half years, Mrs. LaSalle, Defendants American International Industries, et al. ("A-I-I"), and Defendant PTI Union, LLC ("PTI Union") have completed extensive discovery, including over three dozen depositions of percipient and expert witnesses. Decedent Jack LaSalle regularly used Clubman Talc for several decades during Mr. LaSalle's career as a barber, from the late 1960's through 2010's. That included the period from 1987 to 1992, which were the initial years when A-I-I made Clubman Talc – *i.e.*, Mr. LaSalle had five years of exposure to A-I-I's product *before Barretts even existed*. Mr. LaSalle also used Dr. Scholl's talc, which was manufactured by PTI Union. To prove her case against A-I-I and PTI Union, Mrs. LaSalle relies upon more than just the testimony of Mr. LaSalle and his coworkers. Most significantly, the pathology experts have tested Mr. LaSalle's tissue, and they detected talc, asbestos, and other talc-related particles. That is *physical* evidence of exposure that corroborates the witnesses' testimony. It is a mineralogical fingerprint.

Faced with compelling evidence of A-I-I's liability, and on the threshold of the jury trial, A-I-I has improperly removed the *LaSalle* case to the Western District of Washington,



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

contending that Mrs. LaSalle's lawsuit against A-I-I is inextricably "related to" Barretts' bankruptcy case. That bankruptcy case is pending in the Southern District of Texas. There, A-I-I is separately moving to fix venue for the *LaSalle* case in the SDTX. But there is no hearing set for that motion, because A-I-I has not asked for any hearing.

A-I-I's removal to this Court was improper for several reasons, and the *LaSalle* case should be immediately remanded.

First, A-I-I's Notice of Removal of Claims unquestionably was late by at least several weeks, and in truth it was late by *years*. On June 22, 2026, as soon as SDTX District Judge Hanks ordered that the bankruptcy-court reference was withdrawn, so that Judge Hanks might conduct a trial on whether Barretts' talc can cause mesothelioma for purposes of evaluating the size of Barretts' liability to injured claimants, the removal clock was ticking. A-I-I had just 30 days, until July 22, 2026, to file its notice of removal. [28 U.S.C. § 1446(b)(1), (3).] But A-I-I waited 73 days, until September 3, 2026, to file the notice. That was too late. Indeed, A-I-I has known since *at least 2023* that the *LaSalle* case involves allegations of exposure to Barretts' talc via A-I-I's product, Clubman Talc.

Second, there is no "related to" bankruptcy jurisdiction over the *LaSalle* case, because A-I-I cannot obtain indemnification from Barretts on the basis of A-I-I's *own* negligence and strict products liability for A-I-I's product – especially not for the period 1987 to 1992, before Barretts even existed. In a factually and legally similar context, when Johnson & Johnson tried to attach itself to its talc supplier's bankruptcy case, district court judges (including Senior District Judge Nancy F. Atlas of the SDTX) properly held that "related to" jurisdiction did not reach non-bankruptcy-debtor Johnson & Johnson's own



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

liability. [*Cochran v. Johnson & Johnson*, 2019 WL 3202312, *1 (S.D. Tx. 2019); *In re Imerys Talc America, Inc.*, 2019 WL 3253366, *1 (D. De. 2019); *Removed State Court Talc Actions v. Johnson & Johnson*, 2019 WL 2191808, * 1 (C.D. Ca. 2019).]

Third, even if related to jurisdiction exists, this Court should – and *must* – abstain from exercising such jurisdiction. [28 U.S.C. § 1334(b), (c)(1)-(2); 28 U.S.C. § 1452(b).] Washington State law governs Mrs. LaSalle's tort claims against non-bankruptcy-debtor A-I-I; and the Washington State Court jury trial will begin on November 2, 2026. Mrs. LaSalle will proceed to trial against PTI Union there, no matter what this Court does here. But in fairness, this Court should show deference to the Washington State Court and allow Mrs. LaSalle to proceed against A-I-I, as well.

If this Court determines that A-I-I is entitled to more time to oppose Plaintiff's emergency application for remand, then this Court should order a shortened briefing schedule and a prompt motion hearing. This application would constitute Plaintiff's moving papers.

## II. STATEMENT OF FACTS.

### A. The *LaSalle* Washington State Court mesothelioma lawsuit has been pending since May 4, 2023.

The operative May 8, 2024 Second Amended Complaint in the *LaSalle* Washington State Court mesothelioma lawsuit is entitled, *DIANNE LaSALLE, individually, as Personal Representative of the Estate of the Decedent JACK LaSALLE, and on behalf of all wrongful death beneficiaries of Decedent JACK LaSALLE, vs. AMERICAN INTERNATIONAL*



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

*INDUSTRIES, et al.*, King County Super. Ct. Case No. 23-2-08165-0 SEA. [SAC, Exh. 1 to Caggiano Decl.]

The *LaSalle* case has been pending since May 4, 2023. [Caggiano Decl. at ¶ 2]

**B. Barretts' bankruptcy case was filed several months later, on October 2, 2023.**

Barretts' bankruptcy case was filed on October 2, 2023. ["First-Day" Declaration, Exh. 6 to Caggiano Decl.]

**C. After the parties exchanged thousands of pages of documents and completed over three dozen depositions during the discovery process, the *LaSalle* case will start its Washington State Court jury trial on November 2, 2026.**

The *LaSalle* trial court's August 21, 2026 Pretrial Conference Order confirmed the 20-day in-person jury trial to begin on November 2, 2026, and set the related deadlines and procedures. [Pretrial Conference Order, Exh. 2 to Caggiano Decl.]

In the *LaSalle* case, the defendants who will participate in the jury trial include American International Industries and its constituent general partners ("A-I-I"), as well as PTI Union, LLC ("PTI Union"). [Caggiano Decl. at ¶ 4.] Mrs. LaSalle, A-I-I, and PTI Union are finishing expert witness discovery, but they are otherwise ready for trial. [*Id.*] The parties have exchanged thousands of pages of documents. [*Id.*] And the parties have completed over three dozen depositions, including:

- Decedent Jack LaSalle;
- Dianne LaSalle (decedent's spouse);
- Julie LaSalle (decedent's daughter);
- Misty Mason (decedent's daughter);



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

- Heather Tucker (decedent's daughter);
- Mr. Anyan (decedent's coworker);
- Mr. Poe (decedent's coworker);
- Mr. Loveless (A-I-I's corporate-representative witness);
- Mr. Dror (A-I-I's corporate-representative witness);
- Mr. Moesta (A-I-I's employee);
- Mr. Komras (A-I-I's employee);
- Ms. Cooper (A-I-I's employee);
- Ms. Trevino (A-I-I's employee);
- Mr. Brasher (PTI Union's corporate-representative witness);
- Dr. Longo, Vol. 1 (Plaintiff's expert material scientist);
- Dr. Smith (Plaintiff's expert epidemiologist);
- Dr. Felsher (Plaintiff's expert oncologist);
- Dr. Dodson (Plaintiff's expert pathologist);
- Dr. Abraham (Plaintiff's expert pathologist);
- Dr. Kradin (Plaintiff's expert pathologist);
- Dr. Staggs (Plaintiff's expert pathologist);
- Dr. Horn (Plaintiff's expert pulmonologist);
- Dr. Compton (Plaintiff's expert microscopist);
- Mr. Colbert (Plaintiff's expert microscopist);
- Mr. Bailey (Plaintiff's expert geologist);
- Mr. Johnson (Plaintiff's expert economist);



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

- Dr. Barlow (defense expert toxicologist);
- Dr. Novakovic (defense expert pulmonologist);
- Mr. Adams (defense expert industrial hygienist);
- Ms. Dolan (defense expert economist);
- Mr. Herfel (defense expert naval researcher);
- Dr. Uhl (defense expert radiation oncologist);
- Dr. Roggli (defense expert pathologist);
- Dr. Nel (defense expert immunologist);
- Dr. van Zyl (defense expert geneticist);
- Mr. Peterson (defense expert toxicologist);
- Dr. Wittenkeller (treating doctor); and
- Dr. Arthurs (treating doctor);

The parties need only finish the deposition of Dr. Longo, and take the depositions of defense experts Mr. Gunter (geologist), Mr. Segrave (geologist), and Dr. Dhar (geneticist). [*Id.*]

**D. Decedent Jack LaSalle used Clubman Talc from the late 1960's through 2010's, including as of 1987 when Defendant A-I-I became the manufacturer – *i.e.*, Mr. LaSalle used A-I-I's product for five years before BMI Oldco Inc. (f/k/a Barretts Minerals Inc.) even existed.**

**1. Mr. LaSalle's testimony.**

As Decedent Jack LaSalle explained in his 2022 deposition testimony, he lived in the Spokane area all his life. [LaSalle Depo., Exh. 3 to Caggiano Decl., at 12:24-13:13.] He worked as a barber from 1970 until 2022 when he was diagnosed with mesothelioma.



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

[*Id.* at 14:3-15:7.] Throughout his career, Mr. LaSalle used talc, almost always Clubman brand. [*Id.* at 15:8-20.] Mr. LaSalle learned to use Clubman talc because his father, likewise a barber, used the product. [*Id.* at 19:23-20:17.] And then in barber school, Mr. LaSalle also learned to use talc to help remove moist hair clippings that were stuck to customers' skin. [*Id.* at 42:13-17, 43:16-44:1.] He applied the talc to a dusting brush, and then brushed the talc onto the customers' necks and ears, which created visible talc dust in the air. [*Id.* at 44:9-45:11, 47:12-48:6.] For example, Deposition Exhibit 27 illustrates how Mr. LaSalle used Clubman talc (*Id.* at 48:9-21):




Cleaning up after the haircuts likewise created visible talc dust in the air. [*Id.* at 49:1-25.] In addition to seeing the talc dust when he used the product, Mr. LaSalle smelled the scent when he breathed the talc powder. [*Id.* at 50:16-23] Mr. LaSalle used Clubman talc in the same way every day as a barber. [*Id.* at 51:5-52:6, 471:21-472:14, 474:13-475:6.] The amount of talc that he used varied for each customer, depending on their needs. [*Id.* at 476:11-477:18.]



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

Mr. LaSalle explained that the containers of Clubman talc said Clubman Talc and included an image of a man with a top hat; at first the containers were white tins; then they were green tins; and then they were green plastic bottles. [*Id.* at 53:6-54:19.] Deposition Exhibit 28 includes demonstrative images of the containers (*Id.* at 54:20-23, 58:13-59:4), *e.g.*:










Consistent with the word "Finest" printed on the containers, Mr. LaSalle used Clubman talc because it was a professional grade product that he trusted. [*Id.* at 59:20-60:11.] He bought it from a barber products supplier, who promoted the product. [*Id.* at 61:23-62:22.] Mr. LaSalle trusted that Clubman talc was safe, he received no warnings, and he would not have used the product if he had seen adequate warnings. [*Id.* at 63:18-65:18.]



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

**2. Mr. Loveless's testimony on behalf of A-I-I.**

In the *LaSalle* case, Mr. Loveless provided deposition testimony on behalf of A-I-I and its constituent general partners. [*Id.* at 8:17-10:11.] In **1987**, A-I-I bought the Clubman product line from Neslemur. [*Id.* at 10:17-11:6.] A-I-I moved the Clubman operations from the East Coast to the West Coast. [*Id.* at 17:20-18:12.] At first, A-I-I had a contract packager that filled the bottles of Clubman talc, but by **1989** A-I-I itself filled the bottles at its facilities in North Hollywood and then Commerce, California. [*Id.* at 23:16-25:13, 26:17-27:22, 46:8-12.]

To make Clubman talc, A-I-I used the formula sheet that it had acquired from Neslemur, including for the type of talc, the bottle, the cap, and the label. [*Id.* at 43:1-44:10.] The proprietary scent also remained the same. [*Id.* at 235:1-13, 239:5-240:11.] At first, the containers were tin, and then plastic. [*Id.* at 131:7-132:16, 133:14-134:15.] When Barretts became the talc supplier (**1992**, as shown below), the talc always came from Barretts' Montana mines until 2017. [*Id.* at 46:23-48:18, 180:13-181:13.] But Deposition Exhibit 9 consists of the Clubman talc formulas; and the 1970's formulas reference **Italian** talc, not just Montana talc. [*Id.* at 194:2-199:25, 229:15-230:2, 230:19-231:10, and Exh. 9 thereto.]

A-I-I itself never tested its talc for asbestos; rather, A-I-I always just trusted the certifications that it received from its talc supplier Barretts. [*Id.* at 185:24-186:20.]

In approximately 2005, A-I-I was sued in a lawsuit alleging that Clubman talc contained asbestos. [*Id.* at 108:9-13.]



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

In response to that lawsuit, A-I-I preserved 53 samples of its bulk talc powder and provided them to its lawyers – *i.e.*, A-I-I did not stop selling the product, and A-I-I did not warn consumers. [*Id.* at 176:17-177:8, 184:21-185:20.]

About a decade later, in 2017, A-I-I received a communication from its liability insurer regarding talc and asbestos. [*Id.* at 100:19-101:7.] Thereafter, by July 2017, A-I-I stopped making the talc version of Clubman, and switched to a new cornstarch version. [*Id.* at 102:5-21.] The talc and cornstarch ingredients were similar in cost. [*Id.* at 139:10-17, 163:4-15.]

Around the same time, A-I-I for the first time ever hired an independent lab to test its talc for asbestos. [*Id.* at 189:11-25.]

### E. Mr. LaSalle also used Dr. Scholl's talc that was made by Defendant PTI Union; and PTI Union will participate in the Washington State Court jury trial.

#### 1. Mr. LaSalle's testimony.

Apart from his work-related talc exposures, Mr. LaSalle personally used talc foot powder. [LaSalle Depo., Exh. 3 to Caggiano Decl., at 15:24-16:2.] The two main brands that he used were Gold Bond and Dr. Scholl's. [*Id.* at 66:10-67:12.] He started to use the products during his service in the Army, and then continued to use them for a total of approximately five years, spread throughout his life from the 1970's through 2010's until a few years ago. [*Id.* at 67:15-69:16, 70:2-5, 477:21-480:2, 481:21-23, 482:19-483:25.]

Mr. LaSalle used Gold Bond and Dr. Scholl's talc to treat his athlete's foot whenever it occurred. [*Id.* at 71:6-23.] He applied the powder to his feet, and in his shoes. [*Id.* at 72:4-73:22.] Mr. LaSalle saw the powder on his feet and hands, and he smelled the scent



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

when he breathed the talc. [*Id.* at 74:3-75:9.] He used Gold Bond and Dr. Scholl's because they worked well, and he always had a bottle in his house. [*Id.* at 75:10-76:5.] He used the products for days or weeks at a time, as needed. [*Id.* at 485:15-486:25.]

The Dr. Scholl's bottles were yellow, as illustrated by Deposition Exhibit 32. [*Id.* at 76:19-78:5, and Exh. 32 thereto.]

Mr. LaSalle believed that the Dr. Scholl's talc dust was safe to breathe. [*Id.* at 81:9-12, 82:1-83:5.] He received no warnings about the hazards; and he would not have used the product if he had seen adequate warnings. [*Id.* at 83:6-84:4.]

**2. The Washington Court of Appeal's order affirming personal jurisdiction.**

The Washington Court of Appeal upheld personal jurisdiction over PTI Union in the *LaSalle* case, because from at least 2008 onward, PTI Union contractually made *all* Dr. Scholl's talc for the *entire* U.S. market. [WA Court of Appeal Order, Exh. 5 to Caggiano Decl., at pp. 5-6, 14.]

**3. PTI Union's chart of talc sources.**

PTI Union provided a chart to its expert Dr. Nel, showing that PTI Union sourced its talc from China. [PTI Union Chart, Exh. 12 to Caggiano Decl.]

**F. Pathologists Dr. Dodson and Dr. Abraham each detected talc, asbestos, and other talc-related particles in Mr. LaSalle's tissue samples; and explained that Mr. LaSalle's exposures to Clubman talc and Dr. Scholl's talc contributed to causing Mr. LaSalle's mesothelioma.**

As explained in Dr. Dodson's declaration in the *LaSalle* case, Dr. Dodson performed several tissue digestion analyses of Mr. LaSalle's pathology materials. [Dodson MSJ Opp. Decl., Exh. 10 to Caggiano Decl., at p. 9, and Exh. 2 thereto.] In sum, within Mr. LaSalle's



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

lung or lymph tissue, Dr. Dodson detected particles including, for example, a chrysotile asbestos fiber, tremolite asbestos fibers, anthophyllite asbestos fibers, a magnesio-riebeckite cored ferruginous body (also known as magnesium-rich crocidolite, which is associated with Montana talc), talc transitional fibers (part talc, part anthophyllite), and non-fibrous talc. [*Id.*] Each of the above-referenced particles is naturally associated with talc. [*Id.*]

Similarly, as explained in Dr. Abraham's declaration in the *LaSalle* case, Dr. Abraham performed tissue digestion analyses of Mr. LaSalle's pathology materials. [Abraham MSJ Opp. Decl., Exh. 11 to Caggiano Decl., at p. 9, and Exhs. 2 and 3 thereto.] In sum, within Mr. LaSalle's lung or lymph tissue, Dr. Abraham detected particles including, for example, talc/anthophyllite fibers (including one long bundle with fiber splitting, measuring 37 x 0.25 um.), tremolite fibers, non-fibrous talc, and non-fibrous actinolite. [*Id.*]

Both Dr. Dodson and Dr. Abraham attribute Mr. LaSalle's mesothelioma to his cumulative exposures to asbestos-containing talc, as well as fibrous talc itself, including from the Clubman and Dr. Scholl's products. [Dodson MSJ Opp. Decl., Exh. 10 to Caggiano Decl., at pp. 8-10; Abraham MSJ Opp. Decl., Exh. 11 to Caggiano Decl., at pp. 8-10.]



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

**1. Photographs of chrysotile, tremolite, anthophyllite, and talc in Mr. LaSalle's lung and lymph tissue.**

These are photographs of some of the chrysotile, tremolite, anthophyllite, and talc structures that were detected in Mr. LaSalle's lung and lymph tissue (Exh. 13 to Caggiano Decl.):















**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650







**G. Barretts did not exist until 1992 – *i.e.*, five years after A-I-I started to make Clubman talc.**

As Barretts explained in its October 2, 2023 "First-Day" declaration in support of its bankruptcy case, Barretts did not exist until **1992**: "BMI's talc operations were historically part of an unincorporated division of Pfizer Inc. ("Pfizer"). On August 7, 1992, BMI was incorporated as a wholly-owned subsidiary of Pfizer." [First-Day Decl., Exh. 6 to Caggiano Decl., at p. 7.]

**H. On May 14, 2025, Judge Isgur recommended that the bankruptcy-court reference should be withdrawn, so that the SDTX District Court could determine whether any talc sold by Barretts contained sufficient quantity and form of asbestos to potentially cause mesothelioma or other asbestos-related diseases.**

On May 14, 2025, Judge Isgur recommended that the bankruptcy-court reference should be withdrawn, so that the District Court could determine whether any talc sold by Barretts contained sufficient quantity and form of asbestos to potentially cause



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

mesothelioma or other asbestos-related diseases. [5/14/2025 Order, Exh. 7 to Caggiano Decl.]

**I. On June 22, 2026, the SDTX District Court withdrew the bankruptcy-court reference as Judge Isgur had recommended.**

On June 22, 2026, the SDTX District Court withdrew the bankruptcy-court reference as Judge Isgur had recommended. [6/22/2026 Order, Exh. 8 to Caggiano Decl.]

**J. 73 days later (and 1,067 days after Barretts filed its bankruptcy case), A-I-I filed its Notice of Removal of Claims in the *LaSalle* case, asserting "related to" jurisdiction linked to Barretts' bankruptcy case.**

On September 3, 2026, A-I-I filed its Notice of Removal of Claims in the *LaSalle* case, asserting "related-to" jurisdiction linked to Barretts' bankruptcy case. [*LaSalle* Notice of Removal, Exh. 9 to Caggiano Decl.]

## III. DISCUSSION.

**A. A-I-I violated the 30-day deadline for removal, depriving the federal courts of any potential "related to" jurisdiction over the *LaSalle* case.**

This Court should hold that A-I-I violated the 30-day deadline for removal. [28 U.S.C. § 1446(b)(1), (3).]

Section 1446(b)(1), (3) provides:

"(1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

. . .

(3) Except as provided in subsection (c) [removal based on diversity of citizenship], if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

Here, the 30-day removal clock started to tick all the way back on May 4, 2023, when the *LaSalle* case was filed; and then again on May 8, 2024 when the operative Second Amended Complaint was filed. By then, A-I-I possessed Mr. LaSalle's deposition testimony regarding his use of Clubman talc. Additionally, A-I-I already possessed its own evidence, referenced in support of its Notice of Removal of Claims, showing that Barretts was one of A-I-I's talc suppliers. [*See LaSalle* Notice of Removal, Exh. 9 to Caggiano Decl., at p. 3 ("The claims against A-I-I (all based on consumer use of Clubman Talcum Powder) are, in essence, claims against BMI talc.").] Plus, the 30-day removal clock started to tick *again* on May 14, 2025, when Judge Isgur recommended that the bankruptcy-court reference should be withdrawn so that the SDTX District Court could hold a medical-causation trial. And then the 30-day removal clock started to tick *one last time* on June 22, 2026, when the SDTX District Court withdrew the bankruptcy-court reference.

Despite all of those removal-deadline triggers, A-I-I waited until September 3, 2026 to file its Notice of Removal of Claims in the *LaSalle* case, asserting "related to" jurisdiction. That was at least several weeks too late under section 1446(b)(1), (3). Without



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

a timely notice of removal, there cannot be related to jurisdiction here. Accordingly, the *LaSalle* case should be remanded back to Washington State Court.

**B. On the merits, this Court does not possess "related to" bankruptcy jurisdiction over the *LaSalle* Plaintiff's Washington State law tort claims against non-bankruptcy-debtor A-I-I.**

As Senior District Judge Nancy F. Atlas held in the similar *Imerys* litigation (*Cochran v. Johnson & Johnson*, 2019 WL 3202312, *1 (S.D. Tx. 2019)):

"The United States Supreme Court has 'often explained that '[f]ederal courts are courts of limited jurisdiction.'' [*Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1745 (2019) (*quoting Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Rasul v. Bush*, 542 U.S. 466, 489 (2004); *Gonzalez v. Limon*, 926 F.3d 186, 188 (5th Cir. 2019).] ''They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.'' [*Rasul*, 542 U.S. at 489 (quoting *Kokkonen*, 511 U.S. at 377); *Gonzalez*, 926 F.3d at 188.] The court 'must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum.' [*Id*. (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)); *Settlement Funding, L.L.C. v. Rapid Settlements, Limited*, 851 F.3d 530, 537 (5th Cir. 2017).]

[28 U.S.C. § 1452] allows removal of claims where federal jurisdiction arises under 28 U.S.C. § 1334. [*See* 28 U.S.C. § 1452(a); *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007).] Section 1334(b) grants federal jurisdiction over proceedings that are 'related to' cases arising under Title 11, the Bankruptcy Code. [*See* 28 U.S.C. § 1334(b); *In re TXNB Internal Case*, 483 F.3d at 298.] The Fifth Circuit reads 'this jurisdictional grant



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

broadly, stating that the test for whether a proceeding properly invokes federal 'related to' jurisdiction is whether the outcome of the proceeding could conceivably affect the estate being administered in bankruptcy.' [*Id*. (citing *Arnold v. Garlock, Inc.*, 278 F.3d 426, 434 (5th Cir. 2001)).] 'Certainty is unnecessary; an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate.' [*Id*. (citing *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995)).]"

[*Cochran v. Johnson & Johnson*, 2019 WL 3202312, *1 (S.D. Tx. 2019).]

Importantly, 28 U.S.C. § 157(b)(5) does not *create* "related to" jurisdiction. On the contrary, only *if* "related to" jurisdiction otherwise exists in a personal injury case, venue should be fixed in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose. [*Id.*] In sum, "This provision governs venue, not jurisdiction." [*Removed State Court Talc Actions v. Johnson & Johnson*, 2019 WL 2191808, * 1 (C.D. Ca. 2019) (citing *Stern v. Marshall*, 564 U.S. 462, 478–79 (2011)).]

Despite the broad reach of "related to" jurisdiction, it did not benefit Johnson & Johnson in the *Imerys* litigation, and it does not benefit A-I-I here. That is because Johnson & Johnson could not identify any contractual or equitable indemnity rights whereby Imerys needed to indemnify Johnson & Johnson for <u>its own</u> misconduct. [*Cochran*, 2019 WL 3202312, *2.]

Likewise here, A-I-I cannot identify any contractual or equitable indemnity rights whereby Barretts needed to indemnify A-I-I for *its own* negligent misconduct or strict products liability. On the contrary, A-I-I made Clubman talc for at least five years *before*



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

Barretts even existed, from 1987 to 1992. And then from 1992 onward until 2017, A-I-I unreasonably failed to obtain *any* independent tests of the asbestos content of the talc that Barretts supplied. Plus, A-I-I unreasonably *never* warned consumers. Not even after A-I-I was sued in 2005, and not even after A-I-I's liability insurer informed A-I-I that it lacked coverage in 2017. If the Washington State Court jury finds that A-I-I bears its own negligence liability or strict products liability for the 1987 to 1992 period, and/or for the 1992 to 2017 period, then A-I-I will have *no* contractual or equitable indemnity rights against Barretts for A-I-I's wrongdoing.

### C. Likewise, this Court should – and indeed, *must* – abstain from exercising any potential "related to" jurisdiction over the *LaSalle* case because the Washington State Court is ready to conduct a jury trial on November 2, 2026.

The District of Delaware in the *Imerys* litigation, applying 28 U.S.C. § 1334(c)(1) (discretionary abstention), explained why federal courts should abstain from exercising any potential "related to" jurisdiction in this type of case:

"Section 1334(c)(1) states that 'nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising or related to a case under title 11.' [28 U.S.C. § 1334(c)(1).] In deciding whether abstention is proper, courts have utilized a twelve-factor test:

> (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

> (7) the substance rather than the form of an asserted 'core' proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties.

[*In re Mobile Tool Int'l*, 320 B.R. 552, 556–57 (Bankr. D. Del. 2005) (citing *LaRoche Indus. v. Orica Nitrogen LLC*, 312 B.R. 249, 253-54 (Bankr. D. Del. 2004)).] The Court need not consider all factors and no one factor is determinative, but instead 'should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case.' (Citations)"

[*In re Imerys Talc America, Inc.*, 2019 WL 3253366, *7 (D. De. 2019).]

Moreover, 28 U.S.C. § 1334(c)(2) requires *mandatory* abstention in state law cases, involving state law claims, against non-debtors: "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

Here, under *all* of the above factors, this Court should – and *must* – abstain from exercising any potential "related to" jurisdiction over the *LaSalle* case. *LaSalle* is a Washington State law case involving a plaintiff who has litigated for over three years, has nearly finished the discovery process, and has secured a jury trial date of November 2,



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

2026 in her home state court. All of Mrs. LaSalle's claims against A-I-I are Washington State law claims – negligence and strict products liability – that should proceed against A-I-I in the same trial along with PTI Union. Plus, A-I-I is a non-bankruptcy-debtor manufacturer who has absolutely *no* indemnification rights against Barretts for the period 1987 to 1992 – when A-I-I made Clubman talc before Barretts even existed.

## IV. CONCLUSION.

The *LaSalle* case should be immediately remanded back to Washington State Court. A-I-I's removal notice was too late; there is no related to jurisdiction; and this Court should, and must, abstain from exercising any potential related to jurisdiction.

This Court should grant this emergency application for remand, or else set a shortened briefing schedule and a prompt motion hearing.

## CERTIFICATION

I certify that this memorandum contains 4,755 words, in compliance with the Local Civil Rules.

DATED this 9th day of September, 2026.

WEINSTEIN CAGGIANO PLLC

*s/ Alexandra B. Caggiano*
Brian D. Weinstein, WSBA No. 24497
Alexandra B. Caggiano, WSBA No. 47862
600 University Street, Suite 1620
Seattle, Washington 98101
Phone: (206) 508-7070
Fax: (206) 237-8650

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

DATED this 9th day of September, 2026.

WEINSTEIN CAGGIANO PLLC

*s/ Alexandra Caggiano*
Alexandra Caggiano
Attorney



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650