# Exhibit 5

FILED
5/16/2024
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

JACK LASALLE and DIANNE LASALLE, husband and wife,

Plaintiffs/Respondents,

v.

PTI UNION, LLC, a/k/a PHARMA TECH INDUSTRIES;

Defendant/Petitioner,

AMERICAN INTERNATIONAL INDUSTRIES, sued individually, as alter-ego of, and as successor-in-interest to PINAUD, INC., ED PINAUD, INC., d/b/a ED. PINAUD, THE NESLEMUR COMPANY, formerly known as THE NESTLE-LEMUR COMPANY; ARYZ CORP., BARRETTS MINERALS INC.; BAYER CONSUMER CARE HOLDINGS LLC, sued individually, as alter-ego of, and as successor-in-interest to SCHOOL, INC.; BRENNTAG NORTH AMERICA, INC., sued individually, as alter-ego of, and as successor-in-interest to MINERAL AND PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER, CLARK & DANIELS, INC.; BRENNTAG SPECIALTIES, LLC, individually and as successor-in-interest, parent, alter ego, and equitable trustee to BRENNTAG SPECIALTIES, INC. (formerly known as MINERAL AND PIGMENT SOLUTIONS, INC.), sued individually, as alter-ego of, and as successor-in-interest to WHITTAKER, CLARK & DANIELS, INC.; CHATTEM,

No. 86245-6-I

COMMISSIONER'S RULING DENYING DISCRETIONARY REVIEW

No. 86245-6-I/2

INC., a subsidiary of SANOFIAVENTIS U.S. LLC, sued individually, as alter-ego of, and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY; COSTCO WHOLESALE CORPORATION: ERX CORP.; GLAMOUR INDUSTRIES CO., formerly known as BETTY K. DEVELOPMENT CO.; JOHNSON & JOHNSON; KENVUE INC., individually and as successor-in-interest and alter ego to JOHNSON & JOHNSON BABY PRODUCTS COMPANY ("Old JJCI"); JOHNSON & JOHNSON CONSUMER INC., individually and as successor-in-interest to JOHNSON & JOHNSON BABY PRODUCTS COMPANY ("Old JJCI"); JOHNSON & JOHNSON CONSUMER INC., individually, and as successor-in-interest, parent, alter ego, and equitable trustee of JOHNSON & JOHNSON CONSUMER INC. and JOHNSON & JOHNSON BABY PRODUCTS COMPANY ("New JJCI"); LTL MANAGEMENT LLC, individually, and as successor-in-interest, parent, alter ego, and equitable trustee of JOHNSON & JOHNSON CONSUMER INC. and JOHNSON & JOHNSON BABY PRODUCTS COMPANY; MERCK & CO., INC., sued individually, as alter-ego of, and successor-in-interest to SCHOLL, INC.; PFIZER INC.; PTI ROYSTON, LLC, a/k/a PHARMA TECH INDUSTRIES; RAZY PROPERTIES, INC.; REBGRO CORPORATION; SAFEWAY INC.; SPECIALTY MINERALS INC.; and SRYZ CORP.,

Defendants.

This lawsuit involves allegations of exposure to talcum powder products allegedly containing asbestos and allegedly causing plaintiff's mesothelioma. PTI Union, LLC, one of 20 plus defendants, seeks discretionary review of the trial court's denial of its motion to dismiss for lack of personal jurisdiction. The trial court concluded it has specific (case-linked) personal jurisdiction over PTI Union, an out-of-state company. For a Washington court to exercise specific jurisdiction over an out-of-state defendant, plaintiff must show the defendant purposefully availed itself of the privilege of doing business in Washington, thus invoking the benefits and protections of our laws. Mere foreseeability that products placed by an out-of-state defendant in an independent nationwide distribution system will end up reaching the forum state is insufficient, without "something more" such as "substantial volume" of products "regularly" flowing into the state. Over the years, PTI Union obtained talc from other sources and blended and bottled it at its facility in Missouri, resulting in millions of finished products each year ready for nationwide distribution by end product owners. PTI Union argues its mere knowledge that the products owned by third parties would be distributed nationwide by third parties is insufficient to show its purposeful availment of the privilege of doing business in Washington. As explained below, PTI Union fails to show an obvious error or any other ground for discretionary review under RAP 2.3(b). Review is denied.

FACTS

The following facts are stated for purposes of this ruling only. Plaintiff Jack LaSalle lived and worked in Washington State and worked as a barber from 2005 to 2021. As a barber, he was regularly exposed to products containing talcum powder, allegedly containing asbestos, sold in Washington, including Dr. Scholl's® brands. Dr.

Scholl's® products were owned by defendants Merck & Co., Inc. (Merck) and Bayer Consumer Care Holdings LLC (Bayer).

Petitioner PTI Union, LLC is a Delaware company formed in 2007 with its principal place of business in Union, Missouri. During certain time periods, it blended and bottled certain talcum powder products at its facility in Union, Missouri, pursuant to its contracts with the end product owners, Merck and Bayer (owners of Dr. Scholl's®), defendant Chattem, Inc. (owner of Gold Bond®), and Johnson & Johnson Consumer, Inc. (owner of Shower-to Shower Simmer Effects™). According to PTI Union's Director of Quality Michael Brasher, PTI Union blended and bottled these products to the specifications set by the end product owners, who controlled and directed the shipment of the products from PTI Union's facility in Missouri to the owners' designated facilities, none of which was in Washington. According to Brasher, once bottled, PTI Union had no control over the products and played "no role in the content of the label or the final release, commercial distribution, sale, or marketing of [the] products to the public."

In May 2023, Jack and his wife Dianne LaSalle filed a complaint for personal injury against 20 plus defendants in King County Superior Court. PTI Union was one of the defendants, along with Bayer, Merck, and Johnson & Johnson Consumer, Inc. The Lasalles asserted product liability claims against the defendants, alleging that Jack developed pleural mesothelioma, with which he was diagnosed in July 2022, as a result of his exposure to asbestos-containing talcum powder products. In August 2023, the LaSalles filed an amended complaint and was granted an accelerated priority trial date due to Jack's age, failing health, and terminal cancer.

Meanwhile, PTI Union filed a motion to dismiss for lack of personal jurisdiction.

At issue is specific (case-linked) personal jurisdiction, which requires defendant's "minimum contacts" with the forum state. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (citation omitted).[1] There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed.2d 528 (1985) (citation omitted). Also, the suit must "arise out of or relate to the defendant's contacts with the forum." Bristol-Myers Squibb Co. v. Superior Ct. of Cal., 582 U.S. 255, 262, 137 S. Ct. 1773, 198 L. Ed.2d 395 (2017) (citation omitted). Further, the exercise of jurisdiction must be consistent with notions of "fair play and substantial justice." Rudzewicz, 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).

PTI Union argued that the Washington court lacks specific jurisdiction over it because the LaSalles could not show it purposefully availed itself of the privilege of doing business in Washington or that their claims arose out of or related to any contact between PTI Union and Washington. In response, the LaSalles asked to conduct jurisdictional discovery, which the trial court granted.

After jurisdictional discovery, the LaSalles filed a supplemental response to the motion to dismiss, with copies of PTI Union's contracts with Dr. Scholl's® product

[1] There is no claim the Washington court has general (all purpose) personal jurisdiction over PTI Union. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed.2d 796 (2011)).

owners from 1997 to 2008. The contracts were filed with certain redactions under a conditional protective order, with unredacted copies filed under seal. In its order denying PTI Union's motion to dismiss, the trial court summarized the content of these contracts, and there is no dispute as to the accuracy or adequacy of the summary.

The contracts between PTI Union and defendant Merck's predecessor Schering-Plough Healthcare Products, Inc. (Schering) provided that PTI Union would blend and bottle Dr. Scholl's® "Olympic brand" products for sale throughout the "Territory" of the United States. Schering was required to source at least 70% of its Dr. Scholl's® products from PTI Union. Under the contracts, PTI Union blended and bottled four million bottles per year at about $1 per bottle. In 2005, PTI Union and Schering entered into their next contract, which required Schering to exclude PTI Union's competitors and "source 100% of its U.S. requirements of the Commercial Products from" PTI Union. In 2013, PTI Union and Merck (Schering's successor) entered into a similar contract, supplementing prior contracts dating back to 1997 and requiring Merck to "release the finished PRODUCT to the United States (US) market." Under the contract, PTI Union would blend and bottle 100% of Merck's Dr. Scholl's® products. In its contracts with defendant Bayer, dated in 2015 and 2017, PTI Union guaranteed its manufacturing capacity to meet Bayer's full requirements for U.S. distribution. None of the contracts referred to Washington State. But they did not exclude sale in Washington.

The LaSalles argued these contracts showed PTI Union placed Dr. Scholl's® products into the stream of commerce for nationwide distribution and thereby purposefully availed itself of the nationwide market, including Washington. They argued that once they showed purposeful availment, they need not prove the merits of their

claims against PTI Union to meet the relatedness prong of specific jurisdiction before trial. PTI Union filed a supplemental reply, arguing that its contracting with third-party owners of Dr. Scholl's® products outside Washington to blend and bottle the products outside Washington for nationwide distribution by the third-party owners is insufficient to show its purposeful availment of the privilege of doing business in Washington.

On December 14, 2023, the trial court conducted a hearing. On December 19, 2023, the court issued a twelve-page order denying the motion to dismiss, with findings of fact and conclusions of law. The court concluded that PTI purposefully availed itself of the privilege of doing business in Washington "indirectly" by contracting with "three manufacturers of Dr. Scholl's talc-containing end products." The court explained:

> PTI [Union's] actions in forming such contracts with three separate third-parties, renewing them over a 7-year period, supplying blended and bottled talc at a rate of 4,000,000 bottles per year (at one dollar per bottle), and requiring in some instances that 100% of PTI [Union's] blended and bottled talc product be used in the Dr. Scholl's end products, to the exclusion of all other blended talc sources during the contracts' applicability, were all affirmative acts that evince an intent that PTI [Union's] blended talc products would be introduced into Washington.

The court also concluded that the LaSalles satisfied the "relatedness" prong, reasoning that Jack LaSalle's mesothelioma "allegedly arises from exposure to" PTI Union's talc-containing end products he purchased or used in Washington, including those provided pursuant to "the contracts discussed above."

PTI Union filed a motion for reconsideration. On February 1, 2024, the trial court granted reconsideration in part and amended the order denying the motion to dismiss. The court amended the order only to clarify that it "did not find that PTI Union owned any of the branded product lines in question," "mined the talc," or "was a supplier in that

sense." But the court stated PTI Union "did obtain talc from other sources" and blended it, resulting in a finished product ready for "the end-owner such as Merck or Bayer." The court also replaced the language in the order referring to Merck and Bayer as "third-party manufactures" with "third-party buyers and distributors."

PTI Union filed a notice for discretionary review of the order denying its motion to dismiss and amended order to this Court. On March 29, 2024, while PTI Union's motion for discretionary review was pending (but before the LaSalles filed their response), Jack LaSalle died. Trial is currently scheduled to begin on June 24, 2024. On May 15, 2024, I heard the parties' oral argument on the motion for discretionary review.

DECISION

PTI Union seeks discretionary review of the trial court's denial of its motion to dismiss for lack of personal jurisdiction. "Interlocutory review is disfavored." Minehart v. Morning Star Boys Ranch, Inc., 156 Wn. App. 457, 462, 232 P.3d 591 (2010); Maybury v. City of Seattle, 53 Wn.2d 716, 721, 336 P.2d 878 (1959). "Piecemeal appeals of interlocutory orders must be avoided in the interests of speedy and economical disposition of judicial business." Minehart, 156 Wn. App. at 462 (quoting Maybury, 53 Wn.2d at 721). This Court may accept pretrial review when the party seeking review demonstrates one of the four narrow grounds set forth in RAP 2.3(b). PTI Union seeks review under (b)(1) and (2), which set forth the following criteria:

> (1) The superior court has committed an obvious error which would render further proceedings useless [or]
>
> (2) The superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act[.]

RAP 2.3(b)(1), (2). PTI Union satisfies neither criterion.

First, review is not warranted under RAP 2.3(b)(2) because the trial court's denial of PTI Union's motion to dismiss does not meet the effect prong. Review under this "probable error" criterion is limited to injunction-like orders having "an immediate effect outside the courtroom." State v. Howland, 180 Wn. App. 196, 207, 321 P.3d 303 (2014). When an order "merely alters the status of the litigation itself or limits the freedom of a party to act in the conduct of the lawsuit, even if the trial court's action is probably erroneous, it is not sufficient to invoke review under RAP 2.3(b)(2)." Howland, 180 Wn. App. at 207; In re Dependency of N.G., 199 Wn.2d 588, 598, 510 P.3d 335 (2022) (affirming "the Howland interpretation of RAP 2.3(b)(2)"). "[I]t is evident that a trial court order denying a motion to dismiss . . . is generally insufficient to satisfy the effect prong." Howland, 180 Wn. App. at 206. PTI Union argues the trial court's denial of its motion to dismiss limits its freedom to act "by misapplying Washington law to hale [it] into a Washington court against its expectation and subjecting it to the expense and harassment of discovery and, potentially, trial." Motion for Discretionary Review at 9-10. But having to continue to defend against a lawsuit is not an immediate effect outside of the lawsuit to satisfy the effect prong of RAP 2.3(b)(2).

Second, review is not warranted under RAP 2.3(b)(1) because PTI Union fails to show an "obvious error" in the trial court's denial of its motion to dismiss. For purposes of personal jurisdiction, PTI Union does not challenge the underlying facts described above while arguing that these facts do not support the Washington court's exercise of personal jurisdiction over it. "Where the underlying facts are not in dispute, this court reviews de novo a trial court's decision to dismiss for lack of personal jurisdiction." Noll

v. American Biltrite Inc., 188 Wn.2d 402, 411, 395 P.3d 1021 (2017). "We accept the allegations of the complaint as true, and the plaintiff must provide evidence sufficient to make a prima facie showing that jurisdiction is proper." Noll, 188 Wn.2d at 411.

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." Goodyear, 564 U.S. at 923. Under Washington's long arm jurisdiction statute, RCW 4.28.185, personal jurisdiction exists over nonresident defendants "as long as it complies with federal due process." Noll, 188 Wn.2d at 411. As discussed above, for a Washington court to exercise jurisdiction over an out-of-state defendant, there must be a showing that the defendant acted to purposefully avail itself of the privilege of doing business in Washington, thereby invoking the benefits and protections of Washington laws. Rudzewicz, 471 U.S. at 475 (citation omitted). And the suit must "arise out of or relate to" the defendant's contacts with Washington. Bristol-Myers, 582 U.S. at 262. PTI Union's motion for discretionary review focuses on purposeful availment.

"[A] foreign manufacturer's sale of products through an independent nationwide distribution system is not sufficient, *absent something more*, for a State to assert personal jurisdiction over a manufacturer when only one product enters a State and causes injury." State v. LG Electronics, Inc., 186 Wn.2d 169, 181, 375 P.3d 1035 (2016) (emphasis added) (citing J. McIntyre Machinery, Ltd v. Nicastro, 564 U.S. 873, 888-89, 131 S. Ct. 2780, 180 L. Ed.2d 765 (2011) (Breyer, J., concurring)). The United States Supreme Court "did not foreclose an exercise of personal jurisdiction over a foreign defendant where a *substantial volume* of sales took place in a state as part of

the *regular* flow of commerce." LG Electronics, 186 Wn.2d at 181 (emphasis added).[2]

PTI Union argues the trial court misapplied Noll and State v. LG Electronics. The trial court stated this case is "like LG Electronics and Noll III . . . standing for the principle that an ingredient or component that is harmful and incorporated into a different end product, controlled by a third party, may still subject the supplier of the ingredient/component to personal jurisdiction when the supplier, like PTI [Union] here, through its affirmative acts, knows or reasonably should expect that its product will be systematically distributed in a nationwide market including Washington."

LG Electronics and Noll involved the application of the stream of commerce theory of personal jurisdiction. LG Electronics was the State's consumer protection act enforcement action against many foreign electronics manufacturing companies, alleging price fixing related to the sale of CRTs (cathode ray tubes). Our Supreme Court noted

[2] In J. McIntyre, a British manufacturer sold metal shearing machines to an independent distributor in the United States, which in turn marketed and sold the machines throughout the United States. A single machine was sold by the distributor to a New Jersey company, and the company's employee injured his hand while using the machine and sued the British manufacturer in New Jersey. In two separate opinions, six justices of the United States Supreme Court concluded that the New Jersey court lacked personal jurisdiction over the British manufacturer. Justice Kennedy's plurality opinion signed by four justices concluded that mere foreseeability that the defendant's products might be distributed in New Jersey was insufficient and that the defendant must have "directed" at or "targeted" the forum state in some way. J. McIntyre, 564 U.S. at 882-86 (plurality opinion). Justice Breyer's concurrence signed by two justices reached the same result based on the Court's existing precedent that "a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place." Id. at 888-89 (Breyer, J., concurring). Justice Breyer noted that "something more" is required, such as "regular flow" of products into the forum state or the defendant's other activities in the state. Id. at 889. Washington Supreme Court has considered Justice Breyer's concurrence as representing the holding of J. McIntyre because it concurred in the judgment on the narrowest grounds. See LG Electronics, 186 Wn.2d at 180-81.

that "where a foreign manufacturer seeks to serve the forum state's market, the act of placing goods into the stream of commerce with the intent that they will be purchased by consumers in the forum state can indicate purposeful availment." LG Electronics, 186 Wn.2d at 177. The court held the State's allegations considered as true sufficiently established a prima facie case of purposeful minimum contacts:

> The State alleges that (1) the Companies together dominated the global market for CRTs, (2) the Companies sold CRTs into international streams of commerce with the intent that the CRTs would be incorporated into millions of CRT products sold across the United States and in large quantities in Washington, and (3) along with their coconspirators, the Companies intended for their price-fixing activities to elevate the price of CRT Products purchased by consumers in Washington. Taking these allegations as verities, as we must at this stage, we agree with the State that "[t]he presence of millions of CRTs in Washington was not the result of chance of the random acts of third parties, but a fundamental attribute of [the Companies'] businesses."

LG Electronics, 186 Wn.2d at 182 (internal citations omitted) (emphasis added).

Noll involved allegations of occupational exposure to asbestos-containing cement pipes allegedly causing plaintiff's mesothelioma. At issue was whether Washington court had specific jurisdiction over a Wisconsin company (Special), which supplied asbestos to cement pipe manufacturer (Certain-Teed). Our Supreme Court held the plaintiff failed to allege any acts by Special to purposefully avail itself of the privilege of doing business in Washington, noting that the United States Supreme Court has "consistently rejected attempts to satisfy the 'defendant-focused 'minimum contacts' inquiry' by demonstrating contacts between a third party and the forum state." Noll, 188 Wn.2d at 414-15 (quoting Walden, 571 U.S. at 284). The Supreme Court remanded the case to the trial court, stating that the trial court could make its own finding of jurisdiction on remand "depending on the allegations that the plaintiff then raises." Noll, 188 Wn.2d

at 406. On remand, the plaintiff filed a motion to establish jurisdiction with additional evidence, which the trial court concluded was insufficient to show purposeful availment. This Court remanded to the trial court to make findings of fact on specific questions. See Noll v. Special Electric Co., 9 Wn. App.2d 317, 323-24, 444 P.3d 33 (2019) (Noll II).

On further remand, a different trial judge reviewed the record and issued findings of fact, and a two-judge majority of this Court held the findings supported jurisdiction over Special. See Noll v. Special Electric Co., 14 Wn. App.2d 230, 471 P.3d 247 (2020) (Noll III), review denied, 196 Wn.2d 1037 (2021). This Court noted that "establishing purposeful availment for the exercise of personal jurisdiction in stream of commerce cases in Washington State requires a showing of actual awareness." Noll III, 14 Wn. App.2d at 241. Although there was no direct evidence of Special's knowledge of Certain-Teed's specific sales of asbestos-containing cement pipes in Washington, the trial court found "substantial circumstantial evidence" of Special's awareness, noting nationwide sale and a 20% increase in asbestos-cement pipe sales attributable primarily to sales in the Southwest and West, which includes Washington, with a "strong" demand reported "on the West Coast." Id. at 241-42. Based on the trial court's findings, this Court concluded Special was aware of Certain-Teed's connection to Washington, there was a "regular flow" of Special's asbestos into Washington, and the presence of its product in Washington was not the result of chance or the random acts of third parties, but a fundamental attribute of its businesses. Id. at 244.

PTI Union argues LG Electronics and Noll III are distinguishable because, unlike the defendants there, it provided blending and bottling *service* (as opposed to products or components) for the end owners of the talcum powder products. It argues the

LaSalles never alleged or identified any document showing it "mined, milled, supplied, or owned the talc it blended for its customers." Motion for Discretionary Review at 13-14. But PTI Union obtained the talc from other sources, blended the ingredients, and bottled them, resulting in finished products ready for nationwide distribution and sale by the end product owners such as Merck and Bayer. The requirements of specific jurisdiction derive from and reflect two sets of values – "treating the defendants fairly" and "interstate federalism" (ensuring that states with little legitimate interest in a suit do not encroach on states more affected by the controversy). Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 360, 141 S. Ct. 1017, 209 L. Ed.2d 225 (2021) (citation omitted). In light of these values, PTI Union fails to explain why its asserted role in providing *service* should be treated differently from that of supplying components of allegedly injury-causing products. Whether PTI Union should be characterized as a service provider or component supplier, it chose to play necessary roles in the nationwide stream of commerce of millions of talcum powder products. PTI Union fails to show an "obvious" error in the trial court's application of LG Electronics or Noll III.

PTI Union argues the trial court's decision is inconsistent with the United States Supreme Court's holding in Walden v. Fiore, 571 U.S. 277, 134 S. Ct. 1115, 188 L.Ed.2d 12 (2014), requiring the *defendant's* jurisdictional contacts with the forum state. "[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden, 571 U.S. at 285. Walden was not a stream of commerce case. Walden involved allegations of intentional tort arising from a police officer's seizure of cash at an airport in Atlanta, Georgia. The defendant officer had "never traveled to, conducted activities within,

contacted anyone in, or sent anything or anyone to Nevada," the forum state. Id. at 289. In holding that the Nevada court lacks jurisdiction over the officer, the Supreme Court noted that "although physical presence in the forum is not a prerequisite to jurisdiction, . . . *physical entry into the State* – either by the defendant in person or *through* an agent, *goods*, mail, or some other means – is certainly a relevant contact." Id. (emphasis added). Walden appears distinguishable and does not show an obvious error in the trial court's denial of PTI Union's motion to dismiss in this case.

PTI Union argues the trial court adopted a "pure" foreseeability test, inconsistent with Ford. In Ford, the United States Supreme Court generally discussed the requirements of specific jurisdiction and quoted its opinion in Walden that the minimum contacts must show "the defendant deliberately 'reached out beyond' its home – by, for example, 'exploiting a market' in the forum state or entering a contractual relationship *centered* there." Ford, 592 U.S. at 359 (emphasis added) (quoting Walden, 571 U.S. at 285). But purposeful availment was not at issue in Ford where the defendant agreed it purposefully availed itself of the privilege of doing business in the forum states. To the extent the Court discussed purposeful availment, the Court did not hold the defendant's contractual relationship *must* be centered in the forum state. Rather, the Court provided an "example" of the defendant's conduct showing purposeful availment.[3]

[3] Ford involved two products liability suits brought against Ford Motor Company, each stemming from a car crush. Ford argued its activities in the forum states "did not sufficiently *connect to the suits*" where the crashes occurred in the forum states, but the allegedly defective cars involved in the crashes were not first sold in the states nor designed or manufactured there. Ford, 592 U.S. at 361 (emphasis added). The Supreme Court rejected this argument and held the connection between the plaintiffs' claims and Ford's activities in the states was close enough to support specific jurisdiction. Id. at 371 (quoting Walden, 571 U.S. at 284).

PTI Union argues the trial court's decision will functionally erase any distinction between general and specific jurisdiction because the "logical end-point" of the court's reasoning is that PTI Union could be sued in any state. Motion for Discretionary Review at 22-23. But there are Washington-specific allegations that Jack LaSalle while living and working in Washington was *regularly* exposed to asbestos-containing talcum powder products blended and bottled by PTI Union *for years*. Based on the allegations, the court could arguably infer "a substantial volume of sales" in Washington of PTI Union blended and bottled talcum powder products "as part of the regular flow of commerce," particularly in light of the allegation that PTI blended and bottled millions of such products for nationwide distribution for years. LG Electronics, 186 Wn.2d at 181.

PTI Union raises a debatable issue but fails to show an "obvious" error in the trial court's denial of its motion to dismiss. PTI Union may prevail at trial. If not, it may appeal from a final judgment and may then challenge the trial court's decision on personal jurisdiction. PTI Union fails to meet the criteria for interlocutory review.

Discretionary review is denied.

Masako Kanazawa, Commissioner

---

Bristol-Myers also addressed the connection between the forum state (California) and the plaintiff's claims (not purposeful availment) where "the nonresidents [plaintiffs] were not prescribed [the defendant's drug] Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." Bristol-Myers, 582 U.S. at 264-65. The defendant did not dispute it purposefully availed itself of California's markets. Id. at 274 (Sotomayor, J., dissenting).