# Exhibit 7

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
May 14, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 23-90794** |
| **BMI OLDCO INC., *et al.*,** | § | |
| **Debtors.** | § | **Jointly Administered** |
| | § | **CHAPTER 11** |

**ABATEMENT ORDER AND
REPORT AND RECOMMENDATION TO DISTRICT COURT**

The Bankruptcy Court *sua sponte*:

(1) Recommends that the reference to this bankruptcy case be withdrawn, in part;

(2) Recommends that the District Court determine, by trial or otherwise, whether any of the talc sold by Barretts Minerals, Inc. ("BMI") contained sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases;

(3) Abates this bankruptcy case and its related adversary proceedings pending a determination by the District Court as to whether any BMI talc sold by BMI had sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases.

**ANALYSIS**

On October 2, 2023, BMI commenced this chapter 11 bankruptcy case to resolve about 800 talc-related personal injury lawsuits across 22 states. BMI mined, processed, and sold talc. ECF No. 1414 at 171. The claimants allege that they were severely injured by exposure to asbestos in BMI-mined talc. BMI and its affiliates have repeatedly and publicly denied that the talc sold by BMI contained sufficient asbestos to cause illness or injury. ECF No. 1414 at 92.

Resolving whether BMI's talc contained asbestos—an issue common to all claimants—will substantiate or negate the basis for hundreds of pending and future claims against BMI. Any confirmable plan that might be proposed will, by necessity, be governed by this issue. At a minimum, the presence or absence of asbestos will determine whether injunctive relief under 11 U.S.C. § 524(g) is available. It will also determine whether the Court must provide for claimants without currently manifested injuries.

There are also suits against BMI's parent corporation, Minerals Technologies Inc. ("MTI"), for negligent testing of asbestos in BMI-mined talc. BMI alleges these testing claims belong to the bankruptcy estate to assert against MTI. A number of claimants dispute that allegation and claim a direct cause of action against the parent on account of testing. Regardless, the value of these claims depend on the presence of asbestos in BMI's talc. If asbestos was not present in the talc that was sold, there will be no testing claim at all.

The Debtors, its non-debtor affiliates, the Official Committee of Unsecured Creditors, and the future claimants' representative have not reached a consensual resolution after a fourteen-month-long mediation led by a nationally recognized mediator and extraordinarily capable counsel. ECF No. 1335.

On April 2, 2025, BMI filed its Chapter 11 Plan of Reorganization. ECF No. 1353. The proposed plan provides two treatment options for talc claimants. The first option provides for the settlement of talc claims through the establishment of a "Talc Personal Injury Trust" under § 524(g) of the Bankruptcy Code. ECF No. 1353. MTI will contribute to this Trust in exchange for the protection of a channeling injunction that extends to BMI's non-debtor affiliates. The second option acts as the fallback if BMI fails to secure votes to confirm the § 524(g) plan. ECF No. 1311 at 19. The plan would only discharge the Debtors' liabilities and would provide a "Non-524(g) Trust" to resolve talc claims with materially less contribution from MTI.

In resolving an asbestos bankruptcy case with a § 524(g) injunction, BMI is required to provide for future claims to be made by persons who may develop asbestos-related diseases that manifest symptoms at a later date. 11 U.S.C. § 524(g)(2)(B)(ii). Without a confirmable plan, this case will be dismissed. In that event, current claimants will resort to the tort system—potentially depleting BMI's assets and leaving nothing for future claimants.

Moreover, because the presence of asbestos in BMI's talc is a key disputed issue, a process involving hundreds of separate trials will drain available resources from the estate such that actual victims would receive less recovery.

Each claimant is required to prove individualized injuries. Those individualized injuries cannot be determined on a "group basis." *Arnold v. Garlock, Inc.*, 278 F.3d 426, 443 (5th Cir. 2001) (holding that "federal rules providing for aggregation of claims . . . cannot override the necessity of proving causation as to each defendant, a requirement of the state law providing the cause of action and of the right to trial by jury").

Nevertheless, each claimant asserts a common factual allegation that BMI's talc contained asbestos which caused their individual injuries. *See, e.g.*, *Jenkins v. Raymark*, 831 F.2d 550 (5th Cir. 1987) (binding 753 asbestos claimants to a determination of common issues in a single trial but requiring individual jury determinations of causation and damages). A single determination of this threshold issue will reserve more available resources and yield a higher recovery for the claimants.

Because the question of the presence of disease-producing asbestos is fundamental and common to personal injury and wrongful death claims in this bankruptcy case, the Bankruptcy Court believes that the determination of the presence of asbestos must be determined by the United States District Court. 28 U.S.C. § 157((b)(5) ("The district court *shall order* that personal injury tort and wrongful death claims

shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the case is pending."(emphasis added)).

This Court recommends that the United States District Court withdraw the reference to the Bankruptcy Court on this central issue. 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion, for cause shown."). Although the Bankruptcy Court recognizes the possibility that additional withdrawals of the reference may be required, resolution of this common question of fact may obviate that requirement.

The principal objectors do not wish to be deprived of their day in court. They will not be. Under § 1109(b) of the Bankruptcy Code, each is a party-in-interest. The 800 claimants are represented by a small number of highly competent counsel. From this Court's experience, the claimants are ably represented. Administration of this matter by the district court will not impose an undue burden on judicial resources.

## ARTICLE III CASE OR CONTROVERSY

The claimants object to this Court's recommendation for several reasons. The principal objection is that the proposed determination—whether BMI's talc contained asbestos sufficient to cause asbestos-related diseases—does not present an Article III "case or controversy." This objection is misplaced.

In determining the presence of a case or controversy under Article III of the Constitution, the Supreme Court explained that "the basic inquiry is whether the contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 297–98 (1979) (internal citation and quotation marks omitted).

Throughout this bankruptcy case, BMI and the claimants have been engaged in a real and substantial controversy regarding the presence of disease producing asbestos in BMI-mined talc. It is a matter that directly impacts the administration of the bankruptcy case, the feasibility of the § 524(g) plan, the value of claims, and resolution of any future asbestos claims.

The District Court's determination regarding the presence or absence of talc is necessary and appropriate to resolve multiple matters already argued before this Court.

## I. Whether BMI is proposing a plan in good faith under § 1129(a)(3).

"The requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." *In re HONX, Inc.*, 2022 WL 17984313, at *1 (Bankr. S.D. Tex. Dec. 28, 2022). A debtor seeking to absolve its asbestos-related liabilities is a not a bad faith motive for filing bankruptcy if parties in interests are treated fairly. *Id.* (noting that Congress wrote § 524(g) to protect future asbestos claimants).

If the District Court finds that there was no asbestos in BMI's talc, the proposed § 524(g) plan would ultimately be unconfirmable. If there was asbestos, the plan could be filed in good faith and confirmable if both present and future claimants are compensated fairly.

## II. Whether the approximately 800 personal injury and wrongful death claims can be linked to BMI talc.

To date, BMI's Schedule F lists over 500 Talc-Related Litigation Claims. ECF No. 401. The amounts of the claims are unliquidated and disputed. ECF No. 401. These claims are central to this bankruptcy case. If the talc did not contain asbestos in a harmful amount and form, the claims against the estate have no value.

At least 50 claimants are represented by the firm Maune Raichle Hartley French & Mudd, LLC. ECF No. 401. The MRHFM claimants have filed joinders in support of the Committee's Motion to Transfer Venue (ECF No. 337), Motion to Dismiss this Case (ECF No. 1310), and Response to this Court's Case Management Order (ECF No. 1431). The claimants have repeatedly taken the stance that they were exposed to asbestos from BMI-mined talc. Here are some excerpts of statements made by those same parties who now claim an absence of a case or controversy:

- "[Mesothelioma] victims allege they were exposed to MTI's asbestos-contaminated talc, which it and the Debtors mined and milled in Montana." ECF No. 337 at 2 (MRHFM Claimants' Joinder to Motion of the Committee to Transfer Venue).
- "The sale of talc from the Barretts mine caused asbestos to be incorporated into industrial and consumer products, resulting in serious injuries and death." ECF No. 994 at 5 (MRHFM Claimants adopting the arguments in Committee's Motion to Dismiss).
- "Talc from Montana mines contains asbestos. It cannot be removed no matter how exacting the testing and beneficiation protocol may be and it can cause individuals to develop fatal and excruciating forms of cancer like mesothelioma." ECF No. 994 at 5 (MRHFM Claimants adopting the arguments in Committee's Motion to Dismiss).
- MR. THOMPSON (Attorney for MRHFM Claimants): "There's no question BMI has liability, and there's also no question that they filed for bankruptcy." ECF No. 1415 at 85 (Apr. 15, 2025 Hearing Transcript).
- MR. THOMPSON: "I think as to talc, Johnson & Johnson, Whittaker, Clark & Daniels, Avon, **BMI**, and Pfizer all claim their respective talc and talc products don't contain asbestos. We

allege that it does, and they still settle anyways." ECF No. 1444 at 66 (Apr. 15, 2025 Hearing Transcript) (emphasis added).

- MR. THOMPSON: "I believe very strongly, and the evidence shows overwhelmingly that there is asbestos in this talc." ECF No. 1444 at 66 (Apr. 29, 2025 Hearing Transcript).

The controversy has been fully joined in this case. BMI and MTI have categorically denied the claimants' allegations of the presence of disease-producing asbestos in their talc:

At the April 14, 2025 hearing, D.J. Monagle—CEO and President of BMI and Senior Vice President of Consumer Specialties at MTI—gave testimony that he did not believe that BMI's talc ever contained asbestos. ECF No. 1414.

- MR. MONAGLE: "I have seen no evidence of any asbestos in the final product of BMI"s talc." ECF No. 1414 at 93.
- MR. THOMPSON: "You believe the talc claims have no merit. Right?" MR. MONAGLE: "Yes." ECF No. 1414 at 127.

These denials were not limited to a single encounter at a hearing:

- MR. MONAGLE: "I am not aware of any asbestos, any asbestos, that has made its way down the mountain and into a final product." ECF No. 1387 at 324 (Mar. 26, 2025 Deposition Transcript).
- "BMI's talc products were subject to state of the art testing procedures, which confirm that no asbestos was ever found in any talc that BMI sold into the market, and BMI has never been found liable to any talc claimant in any court of law." ECF No. 1311 at 16 (BMI's Response to Motion to Dismiss).

Such dispute is a real and substantial controversy that has reached this Court throughout this bankruptcy case. The issue is joined in this case. It is joined in this case by litigation of the controversy. There is a case and a controversy.

## III. Whether the Testing Claims have any potential viability.

Some claimants have claims against BMI's non-debtor affiliates for negligent testing of BMI-mined talc. The Plan seeks to release BMI's non-debtor affiliates for any talc-related liabilities in exchange for contribution towards the Trust. Although BMI denies the presence of the asbestos, it alleges that the testing claims belong exclusively to BMI. BMI seeks a claim from its testing affiliates to reimburse it for these liabilities.

The Claimants argue that they are the injured parties and have direct claims against the parent arising out of testing defects.

If there is disease producing asbestos in the talc sold by BMI, it is possible that the parent has liability both to the claimants and to BMI.

If no asbestos was present, the Testing Claims—whether property of the estate or a direct action—have no value. Conversely, if asbestos was present, the value of those claims could materially increase.

## IV. Whether appointment of a future claims representative is warranted.

The proposed plan provides talc claimants with two treatment options. Under the first option, the Plan will settle the talc claims through the establishment of a personal injury trust under § 524(g). The Trust must provide for both current and future claimants. § 524(g)(2)(B). MTI will contribute to this Trust in exchange for protection of a channeling injunction that will enjoin any current and future asbestos-related lawsuits against the debtor and certain non-debtor affiliates. The Trust is designed to provide for resolution of future talc claims, due to the nature of long latency periods of asbestos-related diseases. It is crucial in this bankruptcy case, where claimants, who may develop symptoms of mesothelioma at a later date, deserve fair treatment under the Plan.

To ensure that future claimants are adequately represented, the appointment of a FCR is required. *See, e.g.*, *In re Johns–Manville Corp.*, 581 B.R. 38, 44 (Bankr. S.D.N.Y. 2018) (finding that the interest of future claimants are distinct and separate from those of current asbestos plaintiffs).

Without the presence of asbestos in the BMI-mined talc, there is no basis for the appointment of a FCR and contribution to the Trust. Conversely, if asbestos is present, the future claimants must be accounted for in the § 524(g) Trust and a FCR must be appointed.

## RECOMMENDATION

This Court recommends that the reference under 28 U.S.C. § 157(a) be withdrawn solely to determine whether any talc sold by BMI contained sufficient quantity and form of asbestos to potentially cause mesothelioma or other asbestos related diseases.

The question is posed in BMI Oldco Inc.'s Case No. 23-90794. It is this Bankruptcy Court's understanding that any party-in-interest[1] may participate in the District Court's determination. The examples given in § 1109(b) would include (at a minimum):

(i) BMI (the debtor under § 1109);

(ii) Any person alleging that all or some talc sold by BMI talc contained sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases (creditors under § 1109);

(iii) any Official Committee appointed in this case (expressly listed under § 1109);

(iv) MTI (as an equity security holder under § 1109); and

[1] Under § 1109(b) of the Bankruptcy Code, a "party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

(v) the Future Claimants Representative (a statutorily created entity to represent future creditors under § 1109, which contains a non-exclusive list).

The Bankruptcy Court does not intend to suggest whether an appropriate determination should be made by motion practice, jury trial or otherwise.

**ABATEMENT ORDER**

This Bankruptcy Case and its adversary proceedings are abated until the District Court makes a final determination on the central issue for which withdrawal is recommended.

SIGNED 05/14/2025

Marvin Isgur
United States Bankruptcy Judge