**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| DIANNE LaSALLE, individually, as Personal Representative of the Estate of Decedent JACK LaSALLE, and on behalf of all wrongful death beneficiaries of Decedent JACK LaSALLE,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INTERNATIONAL INDUSTRIES, et al.;<br><br>Defendants. | Case No. 2:26-cv-03159-TL<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF DIANNE LASALLE'S MOTION TO REMAND**<br><br>ORAL ARGUMENT REQUESTED<br><br>NOTE ON MOTION CALENDAR: September 23, 2026<br><br><u>Related Cases</u>:<br>Chapter 11<br>In re BMI Oldco, Inc., et al.<br>Bankruptcy Case No. 23-90794 (MI)<br><br>Civil Action No. 4:25-cv-02193 (CGH)<br>USDC-Southern District of Texas<br><br><u>Pending Motion</u>:<br>Motion to Transfer and Fix Venue in the USDC-Southern District of Texas |

Defendants AMERICAN INTERNATIONAL INDUSTRIES; ARYZ CORP.; ERX CORP.; GLAMOUR INDUSTRIES CO.; RAZY PROPERTIES, INC.; and SRYZ CORP.



PIERCE DAVIS & PERRITANO LLP
1300 SW 6th Ave., Ste. 330
Portland, OR 97201
503.229.1819

(collectively, "A-I-I") hereby oppose Plaintiff Dianne LaSalle's "Emergency Application for Immediate Remand of Mesothelioma Lawsuit Back to Washington State Court."

For reasons explained below, this is not an emergency. Plaintiff Dianne LaSalle's action is closely related to the Barretts Minerals, Inc.'s ("BMI") bankruptcy, which is currently pending before the United States District Court for the Southern District of Texas and includes a motion to transfer and fix venue.[1] As a matter of comity, A-I-I respectfully urges this Court to defer to the district court to rule on this motion.

As set forth in A-I-I's Notice of Removal (Dkt. No. 1), incorporated herein by reference, Plaintiff's claims against A-I-I are related to the bankruptcy of its sole supplier of pharmaceutical grade talc used in A-I-I's Clubman Talcum Powder ("Clubman"). Plaintiff alleges that Mr. LaSalle inhaled enough Clubman as a barber for an alleged trace contaminant to cause his mesothelioma. The Honorable George C. Hanks, Jr., who presides over the BMI Chapter 11 bankruptcy cases, has ordered a science trial to decide the common issue in all claims against BMI: whether its talc "contained sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases." Bankr. Dkt. No. 1479 at p. 1; SDTX Dkt. No. 42 at p. 1.[2] Because Clubman was blended with BMI talc, this general causation question is common to all cases against A-I-I as well.

BMI provided A-I-I a written express warranty that the pharmaceutical grade talc it supplied conformed to current United States Pharmacopeia ("USP") Monograph requirements for talc and was free of "regulated" or "detectable" asbestiform minerals. Dkt. No. 1-2 at p. 44–48. Plaintiff's motion to remand should be denied because Plaintiff's claims against A-I-I are related to (and dependent on) the threshold general causation determination that will be

---

[1] A-I-I's Motion to Fix Venue is attached as Exhibit A to its Notice of Removal (Dkt. No. 1-2 at pp. 1-58.)

[2] All references to the docket in the general causation proceeding pending in the Southern District of Texas are identified as "SDTX Dkt. No. __." *In re BMI OLDCO Inc.*, No. 4:25-cv-2193 (S.D. Tex.); Bankr. Case No. 23-90794 (MI). References to the bankruptcy docket before Judge Isgur are identified as "Bankr. Dkt. No. __."



PIERCE DAVIS & PERRITANO LLP
1300 SW 6th Ave., Ste. 330
Portland, OR 97201
503.229.1819

made in the Bankruptcy Cases, they will otherwise impact the bankruptcy proceedings, and they should remain in federal court.

Dated: September 18, 2026

Respectfully submitted,

**PIERCE DAVIS & PERRITANO LLP**

By: */s/ Claude Bosworth*
Claude Bosworth, WSBA # 42568
cbosworth@piercedavis.com
Kathryn Johnson, WSBA # 59336
kjohnson@piercedavis.com
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
***Attorneys for Defendants, American International Industries, ARYZ Corp., ERX Corp., Glamour Industries Co., RAZY Properties, Inc., and SRYZ Corp.***

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

STATEMENT OF FACTS & PROCEDURAL HISTORY .......... 2

SUMMARY OF ARGUMENT .......... 6

DISCUSSION .......... 7

I. A-I-I's Notice of Removal Was Timely. .......... 7

A. Plaintiff measures the removal period from the wrong events. .......... 7

B. A-I-I could not remove until August 4, 2026. .......... 8

II. This Court Has "Related to" Jurisdiction over Plaintiff's Claims Against A-I-I. .......... 9

A. A proceeding is "related to" the bankruptcy if it could conceivably impact the estate. .......... 9

B. A-I-I and BMI share the unity of identity and uniformity of injury that support jurisdiction. .......... 12

i. Dow Corning as an example. .......... 12

ii. Relationship and unity of identity between A-I-I and BMI. .......... 13

iii. Uniformity of alleged source of injury. .......... 14

C. The J&J and Imerys decisions are distinguishable. .......... 15

III. Plaintiff's Motion Misrepresents the Facts. .......... 17

A. BMI existed prior to 1992. .......... 17

B. What Plaintiff claims was found in Mr. LaSalle's lungs is both contested and irrelevant to the jurisdictional question. .......... 18

IV. The Equities Favor Transfer, Not Remand. .......... 19

A. Abstention would be improper. .......... 19

B. Equitable remand is not warranted. .......... 21

CONCLUSION .......... 21






**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) ... 11, 12

*Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759 (5th Cir. 2000) ... 8

*Arnold v. Garlock, Inc.*, 278 F.3d 426 (5th Cir. 2001) ... 13, 18

*Berry v. Pharmacia Corp.*, 316 B.R. 883 (S.D. Miss. 2004) ... 19

*C&M Res., LLC v. Extraction Oil & Gas, Inc.*, 159 F.4th 755 (10th Cir. 2025) ... 8

*Calumet Nat'l Bank v. Levine*, 179 B.R. 117 (N.D. Ind. 1995) ... 6, 22

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) ... 10

*Cochran v. Johnson & Johnson*, 2019 WL 3202312 (S.D. Tex. 2019) ... 16

*Dietrich v. Boeing Co.*, 14 F.4th 1089 (9th Cir. 2021) ... 9

*In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996) ... 10, 13, 16

*Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773 (9th Cir. 1994) ... 8

*In re Fietz*, 852 F.2d 455 (9th Cir. 1988) ... 10

*Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689 (9th Cir. 2005) ... 7




**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

*In re Imerys Talc Am., Inc.*,
2019 WL 3253366 (D. Del. 2019) ....................16

*Knight v. Kirby Inland Marine Inc.*,
482 F.3d 347 (5th Cir. 2007)....................15

*LaSalle et al. v. Am. Int'l Indus., et al.*,
No. 22CV018567 (Cal. Super. Ct. Alameda Cnty. Dec. 1, 2022) ....................18

*LaSalle et al. v. Am. Int'l Indus.*,
No. 88543-0-I (Wash. Ct. App. Div. 1 Jan. 15, 2026)....................1

*LaSalle v. Am. Int'l Indus., et al.*,
No. 23-2-08165-0 SEA (Wash. Super. Ct. King Cnty. July 11, 2025) .................... 1, 2, 11

*Lozano v. GPE Controls*,
859 F. Supp. 1036 (S.D. Tex. 1994)....................8

*In re New England Compounding Pharm., Inc.*,
496 B.R. 256 (D. Mass. 2013) ....................19

*In re Nutraquest, Inc.*,
Case No. 03-5869, 2004 U.S. Dist. LEXIS 29143 (D.N.J. Mar. 5, 2004)....................11

*Pacor, Inc. v. Higgins*,
743 F.2d 984 (3d Cir. 1984)....................10

*In re Pan Am Corp.*,
16 F.3d 513 (2d Cir. 1994)....................6, 22

*In re Pan Am. Corp.*,
950 F.2d 839 (2d Cir. 1991)....................20

*Peabody v. Maud Van Cortland Hill Schroll Tr.*,
892 F.2d 772 (9th Cir. 1989)....................8

*In re Pegasus Gold Corp.*,
394 F.3d 1189 (9th Cir. 2005)....................10

*Rea v. Michaels Stores Inc.*,
742 F.3d 1234 (9th Cir. 2014)....................9

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
720 F.3d 1121 (9th Cir. 2013)....................9

*Rynearson v. Motricity, Inc.*,
626 F. Supp. 2d 1093 (W.D. Wash. 2009)....................8





**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

*In re Tucson Estates, Inc.*,
912 F.2d 1162 (9th Cir. 1990)....20

**Rules**

Fed. R. Bankr. 2018....4, 5, 9

**Statutes**

11 U.S.C. § 1109(b) ....5, 9

28 U.S.C. § 157(b)(2)(B)....19

28 U.S.C. § 157(b)(4)....19

28 U.S.C. § 157(b)(5)....2, 5, 6, 7, 11, 12, 13, 22

28 U.S.C. § 1334(6) ....20

28 U.S.C. § 1334(b) ....5, 6, 10, 12, 22

28 U.S.C. § 1334(c)(2) ....7, 19

28 U.S.C. § 1446....6, 7

28 U.S.C. § 1446(b)(3)....8

28. U.S.C. § 1446(b)(1)....7



**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

## INTRODUCTION

This case is *sui generis*—not a typical "related to" removal. Plaintiff Dianne LaSalle ("Plaintiff") has filed a lawsuit against A-I-I alleging that the BMI talc A-I-I used in Clubman was contaminated with asbestos. BMI went into bankruptcy because of the number of talc personal injury and wrongful death claims against it. This case was one of those, and the claims are still pending in the bankruptcy.

The Honorable George C. Hanks, Jr. of the Southern District of Texas is presiding over the district court adjudication of the threshold issue of general causation. A-I-I was granted permission to fully participate in the science proceedings before Judge Hanks. SDTX Dkt. No. 84 at p. 1. Absent transfer and consolidation, the identical general causation question will be adjudicated in this case as well. *See* Dkt. No. 1-3 at p. 4–5 (Plaintiff's Operative Complaint).

Plaintiff is not entitled to have the same issue adjudicated in different courts then pick the outcome she prefers. Nor can she complain that the federal causation proceeding would unjustly and unduly delay the state court trial. Plaintiff's counsel adjourned the state court trial date for over a year to appeal a sanctions order against them for willful violation of a court order governing the handling of physical evidence. *See* Bosworth Dec., ¶¶ 3, 5-6, Ex. A, (Order on Motion for Sanctions at p. 3) and Ex. B (Ruling on Appealability at p. 1). The evidence was a container of Clubman Talc. The Washington trial court sanctioned Plaintiff's counsel for violating a prior order requiring the timely disclosure of any product samples. The court imposed monetary sanctions of over $13,000, finding that the conduct of Plaintiff's counsel amounted to spoliation and was grounds for an adverse inference at trial. *Id*.

The *LaSalle* case was stayed for over a year while Plaintiff's counsel appealed their own misconduct. On January 15, 2026, the Washington Court of Appeals denied relief to Plaintiff and lifted the trial court stay. It was not until three months later, April 9, 2026, that Plaintiff's counsel moved to reinstate a trial date. *See* Bosworth Dec., ¶¶ 3, 7, Ex. C (Plaintiff's Motion to Reinstate Trial Date at p. 1). Mr. LaSalle passed away on March 29, 2024. Dkt. No. 1-3 at p. 3 (2d Am. Compl. ¶ 1).



**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

Plaintiff has made the same claims of Clubman Talc contamination against BMI, which are now part of the bankruptcy, that she has made against A-I-I. These claims are for the same product that BMI warranted was free of asbestos. The federal case is now a special proceeding devoted to a question common to all claims against BMI and A-I-I: was the BMI talc they both sold contaminated with an amount and kind of asbestos known to cause mesothelioma?

BMI gave A-I-I written warranties that its talc complied with USP specifications for pharmaceutical talc, including an absence of regulated asbestos. Dkt. No. 1-2 at p. 44–48. If the state court is allowed to make the same factual determination on general causation as the federal court, then the two matters are related. Where a plaintiff makes the same claims against a product seller in state court and the product supplier in bankruptcy court, and related to the bankruptcy case there is a special proceeding to determine general causation, then the state case is "related to" the bankruptcy proceeding and venue should be fixed in the district where the bankruptcy is pending. 28 U.S.C. § 157(b)(5). Plaintiff's motion to remand should accordingly be denied.

## STATEMENT OF FACTS & PROCEDURAL HISTORY

1. On September 27, 2022, Jack and Dianne LaSalle sued both A-I-I and BMI in Alameda County, California. Bosworth Dec., Ex. D (Original Complaint at p. 1). After a *forum non conveniens* motion, the LaSalles re-filed in the Superior Court of Washington for King County, Case No. 23-2-08165-0-SEA. The case was converted to a wrongful death action after Mr. LaSalle died. It has a trial date of November 2, 2026. *See* Bosworth Dec., ¶ 3.

2. Plaintiff's operative complaint alleges that Mr. LaSalle was diagnosed with mesothelioma and attributes his disease to Clubman Talc and another talc-based product. *See* Dkt. No. 1-3 at ¶¶ 4–5. Mr. LaSalle served in the United States Army before his professional career as a barber. Dkt. 13 at p. 15. He claimed to have no recollection of 15 years of his working life. *See* Bosworth Dec., ¶ 9, Ex. 3 (LaSalle Deposition at p. 364).

3. In the Army, Mr. LaSalle specialized in munitions. He was around many explosions. *See* Bosworth Dec., ¶ 9, Ex. 3 (LaSalle Deposition at pp. 119-121). When first


PIERCE DAVIS & PERRITANO LLP
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

diagnosed with mesothelioma, he made a claim to the Veteran's Administration for health care and benefits associated with his disease, which he claimed was caused by his military service. His physician wrote a letter attributing his mesothelioma to asbestos exposure in the Army. Yet, his wife asked to withdraw the "nexus" letter because her lawyers said, "it would hurt [their talc] case." Bosworth Dec., ¶¶ 10-11, Ex. F (Medical Records at p. 240), Ex. G, (Nexus Letter at p. 221).

4. A-I-I is a family-owned partnership that operates from a single location in the City of Commerce, California with fewer than 800 employees. From 1987 to 2017, A-I-I made and sold a talcum powder product called "Clubman Talc." BMI was the only supplier of talc to A-I-I for its Clubman product. Bosworth Dec., Ex. H (Loveless Dec. at ¶¶ 3–4).

5. On October 2, 2023, BMI sought Chapter 11 protection in the United States Bankruptcy Court for the Southern District of Texas as a result of lawsuits alleging its talc contained asbestos and caused personal injury and wrongful death. As set forth in the First Day Filings, and conceded by Plaintiff, "BMI's talc operations were historically part of an unincorporated division of Pfizer Inc. ("Pfizer"). On August 7, 1992, BMI was incorporated as a wholly-owned subsidiary of Pfizer." Dkt. No. 14-6 at p. 7.

6. BMI was a talc miner and manufacturer; it did not make finished consumer products. As a downstream blender of a product made exclusively with talc supplied by BMI, A-I-I is routinely named as a co-defendant in the same lawsuits that gave rise to BMI's bankruptcy. Bosworth Dec., Ex. H (Loveless Dec. at ¶¶ 4–5.) Plaintiff's claims against A-I-I (all based on Mr. LaSalle's professional use of Clubman) are, in essence, claims against BMI talc. They are related to BMI's bankruptcy because, among other reasons, the adjudication of such claims will affect administration of the Bankruptcy Estate, claim valuation, and the proposed reorganization plan.

7. A-I-I filed its Proof of Claim in the Bankruptcy Cases on May 6, 2024, asserting broad rights of breach of contract/express warranty, contractual indemnity, and equitable indemnity and contribution relating to the talc BMI supplied to A-I-I with written assurances

that, among others, the "product conforms to current USP [United States Pharmacopeia] Monograph requirements for talc" and is free of "regulated" or "detectable" asbestiform minerals. Dkt. No. 1-2 at pp. 39–43 (Ex. 10, A-I-I Proof of Claim) and pp. 44–48 (Exs. 11–12).

8. On May 14, 2025, the Bankruptcy Court issued its Abatement Order and Report and Recommendation ("AORR") to withdraw the reference so the district court could resolve the question of "whether any of the talc sold by [BMI] contained sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases" (the "Referred Question"). Bankr. Dkt. No. 1479 at p. 1,[3] SDTX Dkt. No. 1 at p. 1.[4]

9. A-I-I initially moved to intervene pursuant to Bankruptcy Rule 2018 and the AORR on July 17, 2025. SDTX Dkt. No. 8 at p. 1. On March 18, 2026, Judge Hanks of the Southern District of Texas denied A-I-I's motion as premature but stated: "[A-I-I] may reassert its motion to intervene if the Court decides to accept Judge Isgur's report and recommendation." SDTX Dkt. No. 39 at p. 1.

10. On June 22, 2026, Judge Hanks accepted and adopted Bankruptcy Judge Isgur's AORR. SDTX Dkt. No. 42 at p. 1.

11. On July 1, 2026, A-I-I renewed its motion to intervene. SDTX Dkt. No. 46 at p. 1. Recognizing A-I-I's direct stake in the resolution of the common causation issue, on August 4, 2026, Judge Hanks granted A-I-I's renewed motion and authorized its participation in the general causation proceeding, holding that: A-I-I is a party-in-interest pursuant to 11 U.S.C. § 1109(b) and Federal Rule of Bankruptcy Procedure 2018, broad participation is intended in this matter, and it would serve the interests of justice for A-I-I to fully participate. SDTX Dkt. No. 84 at p. 1.

---

[3] References to the docket in the Bankruptcy Case proceedings before Judge Isgur are identified as "Bankr. Dkt. No. ___." The AORR is Bankr. Dkt. No. 1479.

[4] References to the docket in the District Court proceedings before Judge Hanks are identified as "SDTX Dkt. No. ___."





**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

12. On September 2, 2026, A-I-I filed its Motion to Transfer and Fix Venue for Claims Related to BMI's Chapter 11 Bankruptcy under 28 U.S.C. §§ 157(b)(5) and 1334(b) in the United States District Court for the Southern District of Texas, Houston Division (the "Venue Motion"). Dkt. No. 1-2 at p. 1 (Ex. A to Notice of Removal).

13. On September 3, 2026, A-I-I filed its Notice of Removal with this Court. Dkt. No. 1. Plaintiff's claims against A-I-I are among the limited number of claims (eight in total) A-I-I seeks to transfer and consolidate in the Southern District of Texas, where the Referred Question and Bankruptcy Cases are currently pending.

14. Given the pending Venue Motion, it would be appropriate for this Court to administratively transfer the case to the Southern District of Texas or defer ruling on Plaintiff's remand motion until the Southern District of Texas has ruled on A-I-I's Motion to Transfer and Fix Venue. That court has the ultimate power to determine venue of personal injury and wrongful death claims related to the Bankruptcy Estate as well as procedural motions that might have an impact on those claims. *See* 28 U.S.C. § 157(b)(5) (personal injury and wrongful death claims "shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending") (emphasis added); *see also*, *Calumet Nat'l Bank v. Levine*, 179 B.R. 117, 122–23 (N.D. Ind. 1995) (staying all proceedings and deferring ruling on pending motions while § 157(b)(5) motion proceeded).

15. Given Judge Hanks' decision to withdraw the reference and address the common causation issue, it is his court that should determine whether Plaintiff's claims against A-I-I proceed in state or federal court. A-I-I respectfully suggests that this Court stay or defer consideration of Plaintiff's motion to remand pending the Southern District of Texas' venue determination.[5] Alternatively, Plaintiff's motion should be denied as Plaintiff presents no valid reasons for remand.

---

[5] The Southern District of Texas may exercise its powers under 28 U.S.C. § 157(b)(5) to transfer and fix venue for Plaintiff's claims even if this Court remands. *See In re Pan Am Corp.*, 16 F.3d 513, 516



**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

## SUMMARY OF ARGUMENT

Plaintiff's motion to remand should be denied. First, A-I-I's Notice of Removal was timely because no paper in the state court action ever revealed a basis for removal (so the 30-day clock under 28 U.S.C. § 1446 never began to run). Further, A-I-I could not remove until Judge Hanks granted A-I-I's renewed motion to intervene on August 4, 2026, and A-I-I filed this Notice of Removal within 30 days thereafter.

Second, this Court has "related to" jurisdiction under 28 U.S.C. § 1334(b) because Plaintiff's claims against A-I-I raise the identical threshold question the district court has already undertaken to decide in BMI's bankruptcy: Whether BMI talc (which was used in Clubman) contained asbestos in sufficient quantity and form to cause mesothelioma or other asbestos-related disease. On Judge Isgur's recommendation, the district court partially abated the bankruptcy precisely so that this common, dispositive question could be resolved in a single, centralized forum. In the AORR, Judge Isgur expressly found that the general causation issue directly impacts administration of the Bankruptcy Cases, the value of claims against the Estate, the feasibility of any plan, and the resolution of future claims. He further concluded that the issue is common to all claimants and central to the bankruptcy proceeding itself. Bankr. Dkt. No. 1479 at p. 3, 5; SDTX Dkt. No. 42 at p. 1. Thus, the Bankruptcy Court has already determined that resolution of the general causation issue will affect the Debtors' Estate and has effectively concluded that this litigation is "related to" the Bankruptcy Cases.

Third, abstention is not appropriate. Section 1334(c)(2) expressly exempts personal injury and wrongful death claims (and the derivative indemnity claims that flow from them) from mandatory abstention. Permissive abstention and equitable remand are disfavored where, as here, § 157(b)(5) commits the venue decision to the district court overseeing the bankruptcy. Further, Plaintiff's suggestion that relief is not imminent in the Southern District Texas is

---

(2d Cir. 1994) ("The plaintiffs do not dispute that the plain language of section 157(b)(5) authorized the district court to transfer their cases from Florida state court to the Southern District of New York where Pan Am's bankruptcy was proceeding.").



**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

incorrect. Counsel for A-I-I anticipates that the Venue Motion will be fully briefed and ripe for consideration by September 30, 2026, if not earlier. Bosworth Dec. at ¶ 4. As this is not an exigent situation, this Court need not decide Plaintiff's motion to remand.

## DISCUSSION

### I. A-I-I's Notice of Removal Was Timely.

Both parties agree that 28 U.S.C. § 1446 ("Section 1446") governs the timeliness of removal. The only question is when, if ever, the 30-day clock started. It is A-I-I's position that no 30-day removal clock has been triggered, and its Notice of Removal was timely.

#### A. Plaintiff measures the removal period from the wrong events.

Plaintiff's timeliness arguments fail because she measures A-I-I's removal period from the wrong event(s) while ignoring the procedural history that made removal possible.

Plaintiff first contends that the clock ran from the date she filed her complaint. It did not. The 30-day period under Section 1446(b)(1) begins only if the initial pleading affirmatively reveals the ground for removal. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 695 (9th Cir. 2005). Plaintiff's complaint pleads nothing more than ordinary product liability claims. *See* Dkt. No. 1-3 at p. 5–6. It was not removable on its face, so the clock did not start at filing.

Plaintiff alternatively contends that the 30-day clock under Section 1446(b)(3) ran from the AORR or from withdrawal of the bankruptcy reference. But, those papers issued in the Bankruptcy Cases—not in Plaintiff's state court case. Under the precedent of this Circuit, except in rare circumstances not applicable here, an "amended pleading, motion, order or other paper" triggers a second 30-day period only when it is generated within the state proceeding that has been removed. *Rynearson v. Motricity, Inc.*, 626 F. Supp. 2d 1093, 1097 (W.D. Wash. 2009). Generally, the state court record is "the sole source from which to ascertain" removability. *Peabody v. Maud Van Cortland Hill Schroll Tr.*, 892 F.2d 772, 775 (9th Cir. 1989); *Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773, 779 (9th Cir. 1994). The Tenth Circuit recently reached the same result on the timing question, holding that a federal bankruptcy filing





PIERCE DAVIS & PERRITANO LLP
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

in Delaware will not start the removal clock from a Colorado state court case even when the parties involved are the same in both. *C&M Res., LLC v. Extraction Oil & Gas, Inc.*, 159 F.4th 755, 763 (10th Cir. 2025). Thus, the AORR and the reference withdrawal are not "other paper" within the statute's meaning and did not start A-I-I's clock.[6]

Plaintiff's position on timeliness is also internally inconsistent. Ms. LaSalle faults A-I-I for failing to remove sooner based on A-I-I's connection (or "relation") to the BMI bankruptcy proceedings, while simultaneously contending that A-I-I's connection to those proceedings is too attenuated to support "related to" jurisdiction or venue. *See* Dkt. No. 13 at p. 20-24. Plaintiff cannot use the bankruptcy nexus as the premise for timing purposes while denying that same nexus for jurisdictional purposes.

Because no qualifying paper ever issued in Plaintiff's action, the 30-day clock never started. A-I-I could remove at any time based on independent information establishing removability. *See Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014); *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). A ground for removal must be made "unequivocally clear and certain" by an amended pleading, motion, order, or other paper before the clock runs. *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021). No such paper exists here, so there is no untimeliness to cure.

**B. A-I-I could not remove until August 4, 2026.**

As explained in the Notice of Removal, A-I-I had no ability to remove until it obtained standing as a party in the general causation proceeding. Dkt. No. 1 at p. 6–7, 13. A-I-I initially moved to intervene pursuant to Bankruptcy Rule 2018 and the AORR on July 17, 2025. SDTX Dkt. No. 8 at p. 1. On March 18, 2026, Judge Hanks denied A-I-I's motion as premature but stated: "[A-I-I] may reassert its motion to intervene if the Court decides to accept Judge Isgur's

---

[6] This conclusion holds even under the broader construction of "other paper" followed in the Fifth Circuit, under which a document qualifies only if the voluntary act of a plaintiff gives the defendant notice of changed circumstances supporting federal jurisdiction. *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000); *see Lozano v. GPE Controls*, 859 F. Supp. 1036, 1038 (S.D. Tex. 1994). The AORR and the reference withdrawal are court orders in the bankruptcy proceeding, not voluntary acts of the plaintiff, so they do not qualify as "other paper" even under that view.





**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

report and recommendation." SDTX Dkt. No. 39 at p. 1. On June 22, 2026, Judge Hanks accepted and adopted Judge Isgur's AORR. SDTX Dkt. No. 42 at p. 1. On July 1, 2026, A-I-I renewed its motion to intervene. SDTX Dkt. No. 46 at p. 1.

On August 4, 2026, recognizing A-I-I's direct stake in the resolution of the common causation issues, Judge Hanks granted A-I-I's renewed motion and authorized its participation in the general causation proceeding. The Southern District of Texas held that A-I-I is a party-in-interest pursuant to 11 U.S.C. § 1109(b) and Federal Rule of Bankruptcy Procedure 2018, broad participation is intended in the matter, and it would serve the interests of justice for A-I-I to fully participate. SDTX Dkt. No. 84 at p. 1.

Having obtained standing as a party to the general causation proceeding on August 4, 2026, A-I-I acted swiftly to file both the Venue Motion on September 2, 2026, and this Notice of Removal on September 3, 2026, less than 30 days later. Therefore, even if orders in the BMI proceedings could qualify as other paper, no grounds for removal were made "unequivocally clear and certain" until Judge Hanks' second intervention order. SDTX Dkt. No. 84 at p. 1.

## II. This Court Has "Related to" Jurisdiction over Plaintiff's Claims Against A-I-I.

Section 1334(b) confers jurisdiction over any proceeding whose outcome could have a conceivable effect on the estate. That standard is satisfied several times over here. The Bankruptcy Court has already found that the general causation question directly affects Estate administration, claim valuation, and plan feasibility. A-I-I and BMI share the relationship, unity of identity, and uniformity of injury that support "related to" jurisdiction over a non-debtor co-defendant. And Plaintiff's own claims against A-I-I depend on the same BMI talc that is the subject of the causation proceeding. The authorities Plaintiff relies upon involve none of these features.

### A. A proceeding is "related to" the bankruptcy if it could conceivably impact





**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

**the estate.**

A proceeding is "related to" a bankruptcy if its outcome "could conceivably have any effect" on the estate being administered. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), adopted in *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988); accord *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995). The proceeding "need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994. Certainty is not required. *In re Dow Corning Corp.*, 86 F.3d 482, 491 (6th Cir. 1996).

Here, no plan has been confirmed in the Bankruptcy Cases, so the broad pre-confirmation formulation governs rather than the narrower post-confirmation "close nexus" standard. *See In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193–94 (9th Cir. 2005).

This Court need not determine the "related to" issue on a blank slate (if it determines the issue at all). The Bankruptcy Court has already found that the threshold causation issue presented by claims arising from BMI's talc directly affects administration of the Bankruptcy Cases, the value of claims against the Estate, the feasibility of any plan, and the resolution of future claims. The Bankruptcy Court further concluded that the general causation issue is common to all claimants and sufficiently central to the bankruptcy proceeding to warrant withdrawal of the reference and centralized adjudication by the district court pursuant to 28 U.S.C. § 157(b)(5). Bankr. Dkt. No. 1479 at p. 3, 5; SDTX Dkt. No. 42 at p. 1.

Judge Isgur's findings establish the requisite nexus between the *LaSalle* case and BMI's Estate. Each of Plaintiff's claims against A-I-I (negligence, strict liability, failure to warn) present the very same question of general causation the Bankruptcy Court identified as directly affecting claim valuation, Estate administration, and plan feasibility. *See In re Nutraquest, Inc.*, Case No. 03-5869, 2004 U.S. Dist. LEXIS 29143, at *41 (D.N.J. Mar. 5, 2004) (finding "related to" jurisdiction in action between plaintiff and non-debtor because "the





**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

issues of causation and damages will be decided in the tort action, [and] any disposition of these issues will be related to a determination of [the] Debtor's liability[.]"). Indeed, because Plaintiff's claims against A-I-I arise from the same product (BMI talc) at issue in the Bankruptcy Cases, any judgment against A-I-I would, in effect, be a judgment against the Estate. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1014 (4th Cir. 1986).

Plaintiff's claims against A-I-I also impact the Bankruptcy Estate because they present an opportunity for double recovery. Ms. LaSalle has a claim against BMI and a lawsuit against A-I-I. These duplicative claims—in both state and bankruptcy court—over the same injury (her husband's mesothelioma) and the same product (Clubman blended with BMI talc) make it possible that the Estate will issue payment directly to Plaintiff (to resolve the bankruptcy claim) and also to A-I-I (to reimburse it for litigation costs and/or settlement funds paid to Ms. LaSalle for the same injury).

In upholding the district court's authority under 28 U.S.C. §§ 157(b)(5) and 1334(b) to fix venue and try all personal injury and wrongful death actions "related to" the Chapter 11 case, *A.H. Robins* explains that "related to" jurisdiction "arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," with "a suit against a third-party who is entitled to absolute indemnity by the debtor" as the paradigm. 788 F.2d at 1014 (finding identity of interest with respect to claims arising out of use of a single device manufactured by the debtor). There can be nothing more similar here. All eight plaintiffs allege asbestos exposure from Clubman Talc. BMI supplied that talc. Any judgment against A-I-I would be, in effect, both a finding that BMI's talc was contaminated with asbestos and a judgment entitling A-I-I to absolute indemnity from BMI. *A.H. Robins* cautions that, if the non-debtor's cases are not brought into the bankruptcy proceedings, the indemnitee could face "inconsistent judgments" and see "his contract of indemnity in effect nullified." 788 F.2d at 1000.





**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

Here, as *A.H. Robins* warns, if the federal court does not exercise "related to" jurisdiction to fix venue for Plaintiff's claims, A-I-I faces inconsistent judgments in the state courts and could see its indemnity rights essentially nullified in the Bankruptcy Court. For example, if a state court returns a verdict against A-I-I finding disease-causing asbestos in the talc used to make Clubman and enters judgment, but the Southern District of Texas finds the opposite in the causation proceeding, the Bankruptcy Court will have to decide whether to pay indemnity for a verdict based on a factual finding diametrically opposed to the finding made by Judge Hanks. Likewise, if the Southern District of Texas determines that BMI talc contained disease-causing asbestos, the eight plaintiffs (as well as all other plaintiffs with talc-related claims against A-I-I) will argue for preclusive effect in state cases. This could all be avoided by deferring to the Southern District of Texas until the common causation question is answered.

**B. A-I-I and BMI share the unity of identity and uniformity of injury that support jurisdiction.**

Courts assessing "related to" jurisdiction and transfer over non-debtor co-defendants weigh the relationship or "unity of identity" between the co-defendant and the debtor, the "uniformity of the source of the injury," and the general status of the pending cases. *See Arnold v. Garlock, Inc.*, 278 F.3d 426, 440 & n.12 (5th Cir. 2001).

**i. Dow Corning as an example.**

The Sixth Circuit in *Dow Corning*, a case on all fours with this one, approved the transfer and centralization of state and federal personal injury claims against non-debtor co-defendants under § 157(b)(5). Dow Corning manufactured and provided raw silicone materials to manufacturers to create silicone gel breast implants. Tens of thousands of implant recipients sued Dow Corning and other non-debtor manufacturers and suppliers alleging autoimmune reactions to the implants. Following Dow Corning's bankruptcy, the Sixth Circuit allowed the transfer of claims against non-debtor manufacturers under section 157(b)(5), finding that



**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

centralization helped "further the prompt, fair, and complete resolution of all claims 'related to' bankruptcy proceedings." 86 F.3d at 496-497.

There, as recognized by the Fifth Circuit in *Arnold*, "a claim of contribution by the co-defendants against Dow Corning, even if only intended and not yet asserted, was sufficient to invoke 'related to' bankruptcy jurisdiction" where the co-defendants were "closely involved in using the same material, originating with the debtor, to make the same, singular product, sold to the same market and incurring substantially similar injuries." *Arnold*, 278 F.3d at 435, 440 (discussing *In re Dow Corning Corp.*, 86 F.3d at 498).

*Dow Corning* invoked "related to" jurisdiction over thousands of claims against non-debtor manufacturers where the debtor supplied a raw material—silicone—that was incorporated into the non-debtors' products. 86 F.3d at 493-94. The same is true here: BMI supplied the raw material—talc—that A-I-I blended into its Clubman products. Thus, A-I-I's talc is BMI's talc, and every talc claim against A-I-I is, at its core, a claim that BMI's talc caused injury.

**ii. Relationship and unity of identity between A-I-I and BMI.**

A-I-I and BMI share a direct relationship through A-I-I's exclusive purchase of BMI talc for incorporation into Clubman. A-I-I is a creditor of the BMI Estate and has filed a Proof of Claim seeking, among other relief, breach of warranty (a direct claim) and indemnification and contribution for talc-related liabilities. This is not a case where the non-debtor defendant has no formal ties to the bankruptcy. A-I-I is a direct participant in the bankruptcy-related proceedings vis-à-vis Judge Hanks' intervention order. SDTX Dkt. No. 84 at p. 1. BMI also provided A-I-I with a written warranty of compliance with an industry standard, the United States Pharmacopeia ("USP") Monograph on Talc:[7]

---

[7] *See* A-I-I's Venue Motion, Dkt. No. 1-2 at pp. 44–48 (Certificate of Analysis and Analysis Master Report from BMI to A-I-I), Ex. 12 (Letter from BMI to A-I-I).

> This lot number of talc complies with USP / EP / JP Harmonized Specifications
> *This product conforms to current USP Monograph requirements for talc and is suitable for oral or topical administration*
> No Class 1, 2 or 3 solvents as defined in ICH Guidelines Q3C and USP/NF Pharmacopeia are used in the manufacturing process of these products.
> APPEARANCE: FINE WHITE POWDER
> Please be advised that the BARRETTS MINERALS Montana talc(s) which you have purchased contain no detectable quantities of any of the asbestiform minerals, as tested by XRD and TEM.
> * These values are not analyzed on each lot, but are based on quarterly composite testing
> ==========================================================================
> Approved: BARRETTS MINERALS LABORATORY Title: LAB TECHNICIAN
> Phone: (406) 683-3322

Ultimately, BMI's written warranty that its talc complied with a specific industry standard—the USP Monograph on Pharmaceutical Talc, with its asbestos testing standard—gives A-I-I automatic breach of contract/express warranty rights against BMI. This direct relationship is significant because it arises from the very product and conduct underlying Plaintiff's claims against A-I-I, which underscores the unity of identity between A-I-I and BMI.

**iii. Uniformity of alleged source of injury.**

Plaintiff's claims against A-I-I arise from the same alleged source (purportedly asbestos-contaminated BMI talc) as Plaintiff's claims against the Estate. Ms. LaSalle alleges that her husband's professional use of Clubman, which was made with purportedly asbestos-containing BMI talc, contributed to cause his mesothelioma. Dkt. No. 13 at p. 6. Her theory, therefore, depends on proving that BMI talc contained asbestos and was capable of causing mesothelioma—the same threshold question the Southern District of Texas is resolving. SDTX Dkt. No. 42 at p. 1.

Plaintiff cannot deny the uniformity of the source of Mr. LaSalle's alleged injury. All Plaintiff's state court claims against A-I-I are dependent on the content of BMI's talc, i.e., no claim can be pursued if BMI's talc did not contain asbestos. Whether framed as negligence, strict liability, or failure to warn, each claim against A-I-I requires proof that BMI talc





PIERCE DAVIS & PERRITANO LLP
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

contained asbestos capable of causing mesothelioma. That is the threshold causation question the district court is deciding. SDTX Dkt. No. 42 at p. 1.

Courts routinely distinguish between general causation (whether a substance is capable of causing disease) and specific causation (whether it caused a particular plaintiff's injury). *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). The former is a threshold scientific question common to all claimants; the latter involves individualized proof. If the Southern District of Texas determines that BMI's talc does not contain the type or amount of asbestos to cause mesothelioma, that finding is dispositive of Plaintiff's claims against A-I-I. Ms. LaSalle cannot claim that A-I-I independently "failed to warn consumers" or "failed to independently test the asbestos content" of the talc BMI supplied if BMI's talc simply did not contain asbestos at a causative level.[8]

**C. The J&J and Imerys decisions are distinguishable.**

Plaintiff's key authorities are inapposite. In *Cochran*, the court did not find "related to" jurisdiction because the Imerys indemnity agreements did not expressly indemnify J&J for liabilities arising from J&J's own acts or omissions, and the plaintiff sued J&J solely for its own conduct. *Cochran v. Johnson & Johnson*, 2019 WL 3202312, at *2–3 (S.D. Tex. 2019). In *In re Imerys*, the court likewise found no jurisdiction over roughly 2,400 removed talc cases because any indemnity was contingent on later fact-finding and J&J "to date, has not filed claims for indemnification against [the] Debtors." *In re Imerys Talc Am., Inc.*, 2019 WL 3253366, at *1, *7 (D. Del. 2019).

Neither case involved a district court presiding over a withdrawn-reference proceeding directed to the threshold question of general causation. Neither involved a defendant's intervention to participate in that general causation proceeding due to the impact on its talc cases and its claim against BMI. And neither involved a defendant that received written

[8] Similarly, this purported "independent conduct" does not extinguish A-I-I's right to pursue its claim for breach of warranty or seek indemnity from BMI (on which A-I-I relied to test and certify the talc).



**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

certifications of compliance with a comprehensive industry standard, like the USP Monograph, for pharmaceutical grade talc from the debtor.

The distinctions are decisive. A-I-I's warranty from BMI is a direct "no asbestos" certification that the causation proceeding itself will resolve—it is not an indemnity contingent on a separate finding of the supplier's wrongdoing. Further, A-I-I has filed a Proof of Claim against the Estate, which the *Imerys* court treated as a fact J&J lacked. *See id*. at *6 (distinguishing *In re Dow Corning Corp*., 86 F.3d 482 (6th Cir. 1996), in part because there the debtor and non-debtors "already had claims pending against one another"). Lastly, A-I-I removed only eight plaintiffs' claims—all with claims against the Estate—whereas J&J removed roughly 2,400 cases and never made such a showing.

Plaintiff's earlier jurisdictional concessions underscore why remand is inappropriate. Despite the overtures in Plaintiff's Motion, Plaintiff's attorneys have all but conceded that A-I-I's downstream talc relationship with BMI sets it apart from those who "could not identify any contractual or equitable indemnity rights whereby [the debtor] needed to indemnify [the non-debtor] for its own misconduct." Dkt. No. 13 at p. 23. Earlier in the Bankruptcy Cases, the Debtors' parents removed the state court action "*Maricich*." On motion to remand, Plaintiff's counsel argued the absence of contractual or equitable indemnity rights running from BMI to its parents required remand: Debtors' parents "cannot identify any contractual or equitable indemnity rights whereby [BMI] needed to indemnify [its parents] for their own misconduct. On the contrary, [BMI] relied upon [its parents] to test and certify the talc." *See* Dkt. No. 1-2 at p. 51 (Ex. 13, quoting Pl.'s Mot. to Remand at p. 21).

A-I-I, a downstream product maker, is the mirror image: It bought BMI's talc, relied upon BMI to test and certify that talc (and received written warranties from BMI), and faces suit for injuries allegedly caused by BMI's talc. This generates the classic contractual and equitable indemnity rights that the Debtors' parents purportedly lacked. Plaintiff thus agrees that a defendant with indemnity rights against BMI would satisfy the conceivable-effect test



**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

and, by extension, the variable Plaintiff's counsel argued was lacking for the Debtors' parents to create "related to" jurisdiction is present in A-I-I's cases.

**III. Plaintiff's Motion Misrepresents the Facts.**

Plaintiff attempts to muddy the water with irrelevant and inaccurate factual assertions. None alter the central point that her claims depend on the same BMI talc and the same causation issues before the Southern District of Texas.

**A. BMI existed prior to 1992.**

Plaintiff argues that A-I-I's claims cannot be related to the BMI bankruptcy because, for a couple years, A-I-I allegedly blended Clubman "before Barretts even existed." Dkt. No. 13 at p. 6-7, 11, 24, 26. That argument rests on an artificial distinction between BMI's corporate form and the talc mines underlying Plaintiff's claims.

As set forth in the First Day Filings, and conceded by Plaintiff, "BMI's talc operations were historically part of an unincorporated division of Pfizer Inc. ("Pfizer"). On August 7, 1992, BMI was incorporated as a wholly-owned subsidiary of Pfizer." Dkt. No. 14-6 at pp. 7. The fact that BMI originally operated as an unincorporated division and later as an incorporated subsidiary does not alter (i) the source of the talc (the Montana mines) used in A-I-I's Clubman, (ii) BMI's mining operations, or (iii) the causation issues presented here. Nor does Plaintiff contend that the talc BMI supplied before and after incorporation came from different mines, different operations, or different management. Dkt. No. 13 at pp. 6-7, 11, 24, 26.

"Related to" jurisdiction does not turn on whether—or when—BMI was incorporated. It turns on whether Plaintiff's claims against A-I-I implicate the same BMI talc that is the subject of the district court's threshold causation question. And they unquestionably do. Whether BMI was a "division" or a "subsidiary," Plaintiff's claims against A-I-I rise or fall on Judge Hanks' determination of whether BMI's talc "contained sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases," which categorically affects



**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

administration of the Bankruptcy Estate. *See Arnold v. Garlock, Inc*., 278 F.3d 426, 440 (5th Cir. 2001); *see also* Bankr. Dkt. No. 1479 at p. 1 (AORR).

**B. What Plaintiff claims was found in Mr. LaSalle's lungs is both contested and irrelevant to the jurisdictional question.**

Plaintiff's "mineralogical fingerprint" argument, even if it had validity, would not eliminate the common question of general causation.

Plaintiff can put on her general causation evidence in the science trial. That court may consider Plaintiff's claim that there was asbestos in Mr. LaSalle's lungs, which "must have come" from Clubman, as well as Mr. LaSalle's testimony that he did not remember where he was or what he did for a living for a 15-year period. *See* Bosworth Dec., Ex. E, at p. 364. That court could also consider Mr. LaSalle's service in the Army where he worked in munitions. His own doctor opined that his asbestos exposure in the Army caused his mesothelioma. But, then Ms. LaSalle asked the physician to "stop all attempts to complete the Nexus letter" for VA benefits because she "ha[d] been advised by [their] attorneys that doing this would hurt [their talc] case." *Id.,* Ex. F, at p. 240; *see also* Bosworth Dec., Ex. G, at p. 221.

Given Mr. LaSalle's inability to recall fifteen years of his life (and his wife's efforts to conceal his alternative asbestos exposure), it would be impossible to attribute his lung content to something he claimed to remember for purposes of a lawsuit: Clubman. The more probative evidence would be Plaintiff's own expert's testimony that he tested samples of BMI talc retained by A-I-I for over 17 years and that he found none of the types of asbestos Plaintiff's lawyers claim were in Mr. LaSalle's lungs.

Whether Plaintiff ultimately proves that Mr. LaSalle's mesothelioma resulted from BMI talc, military service, or some other source is a merits question. For present purposes, the relevant inquiry is whether Plaintiff's claims against A-I-I require resolution of the same threshold general causation issue that Judge Hanks is determining, and they indisputably do.



**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

**IV. The Equities Favor Transfer, Not Remand.**

**A. Abstention would be improper.**

Plaintiff fails to address abstention in any meaningful way. At the outset, mandatory abstention, under 28 U.S.C. § 1334(c)(2), expressly excludes personal injury and wrongful death claims. *See* 28 U.S.C. §§ 157(b)(2)(B), 157(b)(4). The exception "encompass[es] not only personal injury and wrongful death claims, but also claims for contribution or indemnity that derive from personal injury or wrongful death claims" because indemnity claims "are simply procedural vehicles for asserting liability against the estate for some underlying harm," and a narrower reading "would create a potentially gaping loophole in the carefully crafted system for the orderly administration of bankruptcy estates." *In re New England Compounding Pharm., Inc.*, 496 B.R. 256, 270–72 (D. Mass. 2013). *See also Berry v. Pharmacia Corp.*, 316 B.R. 883, 889 (S.D. Miss. 2004) ("[G]iven the nature of the relationship and degree of identity between the debtor [and the third-party defendant], the rationale for exempting personal injury and wrongful death claims against the debtor's estate from the mandatory abstention provision applies fully to the claims against [third-party defendant]… [in] that a judgment against [third-party defendant] is, in practical effect, a judgment against [the debtor]."). Accordingly, "[t]ransfer should be the rule, abstention the exception" for personal injury claims related to bankruptcy. *In re Pan Am. Corp.*, 950 F.2d 839, 845 (2d Cir. 1991).

Permissive abstention is unwarranted where, as here, the Court presiding over the bankruptcy is already positioned to resolve a threshold issue. Although Plaintiff cites out-of-circuit authority for the permissive abstention test, the Ninth Circuit applies the same twelve-factor test set forth in *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1990). Those factors are "(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the





**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties." *Id.*

All factors favor centralized adjudication over abstention or remand. For example, consolidation promotes the efficient administration of BMI's Estate. Causation is a common element to each of the plaintiff's claims, and it is being decided in the context of the Bankruptcy Cases. All eight plaintiffs, as well as A-I-I, have claims against BMI in the bankruptcy proceedings. Transfer of the eight cases would not place any burden on the Bankruptcy Court's docket. Indeed, the district court could simply stay the plaintiffs' cases pending resolution of the threshold issue. Forum shopping is not a concern as the Bankruptcy Court recommended the causation proceeding *sua sponte*. All parties have a right to jury trial in the Southern District of Texas.

Although A-I-I and Plaintiff are both non-debtor parties, they are also both creditors in the Bankruptcy Cases. Ms. LaSalle is a creditor against the Estate because she had this case pending against BMI when it filed for bankruptcy. BMI lists it as a claim. Ms. LaSalle's attorney is also a member of the Unsecured Creditors Committee. The plaintiffs may say they have not yet filed proofs of claim, but that is only because there is no bar date requiring the filing as of now.

The risk of inconsistent preclusive findings is concrete. Because A-I-I and Plaintiff are parties to both proceedings, whichever forum rules first, the prevailing party will assert that the ruling controls in the other. If the claims are heard in both courts, the Bankruptcy Court will inevitably spend time and resources sorting out conflicting determinations between the same parties in two different fora. It would prejudice both A-I-I and the Estate to allow two



**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

separate causation determinations to be made. Comity is promoted by the individual district courts' (or state courts) respect for and recognition of the importance of the Southern District of Texas' decision on the common causation question.

Taken together, the abstention factors point in one direction: centralized resolution of the common causation issue. Because transfer would promote efficient Estate administration, avoid inconsistent rulings, preserve the parties' rights, and impose no meaningful burden on the district court, there is no basis for abstention or remand.

**B. Equitable remand is not warranted.**

Similarly, equitable remand is not warranted because A-I-I's requested relief does not deprive Plaintiff of the ability to pursue her claims. It merely ensures that the common threshold issue is resolved in the court already presiding over the general causation proceeding before duplicative litigation proceeds elsewhere. This Court should accordingly stay or defer ruling on Plaintiff's motion to remand pending Judge Hanks' decision on A-I-I's Motion to Fix Venue. Such relief would avoid prejudice while preserving orderly adjudication of the common causation issue.

Judge Hanks is best positioned to decide whether Plaintiff's claims against A-I-I should proceed in Texas or Washington as "[t]he venue of the trial is to be determined by the district court in which the title 11 case is pending." 1 Collier on Bankruptcy ¶ 3.06 (16th ed. 2025). Courts defer and stay in this posture out of comity and respect for the bankruptcy court's venue-fixing authority. *See Calumet Nat'l Bank v. Levine*, 179 B.R. 117, 122–23 (N.D. Ind. 1995) (staying all proceedings and deferring ruling on pending motions while a § 157(b)(5) motion proceeded). Remand would not diminish the Southern District of Texas' power to fix venue under § 157(b)(5) in any event, so it would accomplish nothing except the duplication and inconsistency that centralization was designed to prevent. *See In re Pan Am Corp.*, 16 F.3d 513, 516 (2d Cir. 1994).

**CONCLUSION**



**PIERCE DAVIS & PERRITANO LLP**
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Telephone: (503) 229-1819

This Court need not rule on Plaintiff's motion to remand. There are no exigent circumstances warranting expedited consideration, and deferral pending the Southern District of Texas' decision on A-I-I's Motion to Fix Venue will allow the common question of general causation to be decided once, consistently, in the forum the Bankruptcy Court and the district court have already designated. Alternatively, the Court should deny Plaintiff's motion because removal was timely, this Court has "related to" jurisdiction under 28 U.S.C. § 1334(b), and neither mandatory nor permissive abstention supports returning these claims to state court.

**CERTIFICATION**

I certify that this contains 7,857 words, in compliance with the Local Civil Rules.

Dated: September 18, 2026

Respectfully submitted,

**PIERCE DAVIS & PERRITANO LLP**

By: */s/ Claude Bosworth*
Claude Bosworth, WSBA # 42568
cbosworth@piercedavis.com
Kathryn Johnson, WSBA # 59336
kjohnson@piercedavis.com
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201

***Attorneys for Defendants, American International Industries, ARYZ Corp., ERX Corp., Glamour Industries Co., RAZY Properties, Inc., and SRYZ Corp.***

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| DIANNE LaSALLE, individually, as Personal Representative of the Estate of the Decedent JACK LaSALLE, and on behalf of all wrongful death beneficiaries of Decedent JACK LaSALLE,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN INTERNATIONAL INDUSTRIES, et al.,<br><br>Defendants. | Case No. 2:26-cv-00838-TL<br><br>**DECLARATION OF DELIVERY AND/OR MAILING** |

I am employed by the law firm of Pierce Davis & Perritano LLP in Portland, Oregon. I am over the age of eighteen years and not a party to the subject cause. My business address is 1300 SW Sixth Avenue, Suite 330, Portland, OR 97201.

On the date below, I caused to be served on all parties in this action by transmitting a true copy of the foregoing document in the following manner unless otherwise indicated.

**VIA E-FILE/SERVICE & EMAIL**

| | |
|---|---|
| Brian Weinstein<br>Alexandra Caggiano<br>Dylan Johnson<br>WEINSTEIN CAGGIANO PLLC<br>600 University Street, Suite 1620<br>Seattle, Washington 98101<br>service@weinsteincaggiano.com | Martin Neira, *Pro Hac Vice*<br>Michael Reid, *Pro Hac Vice*<br>Joseph D. Satterley, *Pro Hac Vice*<br>Michael T. Stewart, *Pro Hac Vice*<br>KAZAN, MCCLAIN, SATTERLEY & GREENWOOD<br>55 Harrison St., Suite 400<br>Oakland, CA 94607<br>mneira@kazanlaw.com<br>mreid@kazanlaw.com<br>jsatterley@kazanlaw.com<br>mstewart@kazanlaw.com<br>rcervantes@kazanlaw.com<br>***Attorneys for Plaintiffs*** |

I declare under penalty of perjury and under the laws of the State of Washington (RCW 9A.72.085) that the foregoing is true and correct.

Executed at Portland, Oregon, this 18th day of September, 2026.

*s/Shannon Boyd*
Shannon Boyd
Paralegal