# EXHIBIT B

FILED
1/15/2026
Court of Appeals
Division I
State of Washington

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

DIANNE LaSALLE, individually, as Personal Representative of the Estate of the Decedent JACK LaSALLE, and on behalf of all wrongful death beneficiaries of Decedent JACK LaSALLE,

Petitioner,

and

KAZAN, MCCLAIN, SATTERLEY & GREENWOOD, PLC; SCHROETER, GOLDMARK & BENDER,

Petitioners,

v.

AMERICAN INTERNATIONAL INDUSTRIES, et al.,

Respondent.

No. 88543-0-I

DIVISION ONE

RULING ON APPEALABILITY AND DISCRETIONARY REVIEW

Petitioners Dianne LaSalle and her law firms—Kazan, McClain, Satterley & Greenwood, PLC (Kazan Law) and Schroeter, Goldmark & Bender (Schroeter Law)—move for discretionary review of a trial court order imposing discovery sanctions and request an appealability determination. Respondent American International Industries (A-I-I) opposes the motion. Because the order is not appealable and the RAP 2.3(b) criteria are not met, discretionary review is denied.

## BACKGROUND

In July 2022, Jack LaSalle was diagnosed with pleural mesothelioma. Two months later, in September 2022, Jack and Dianne[1]—represented by Kazan Law—filed a complaint for personal injuries and loss of consortium in a California Superior Court. The LaSalles contended that Jack's use of Clubman talcum powder (Clubman Talc), which was contaminated with asbestos, contributed to his mesothelioma. A-I-I, one of the defendants in that action, denied their contentions.

While the case was pending in California, Kazan Law found and collected 28 exemplar bottles of Clubman Talc (the 28 bottles). In October 2022, Kazan Law sent the 28 bottles to its expert witness, Dr. William Longo, for asbestos testing. Later that same month, in their response to joint defense standard interrogatories, the LaSalles did not disclose the 28 bottles. Instead, in pertinent part, they responded: "Plaintiff refers Defendants to their own records of testing of Defendants' source talc and talc powders, and to testing results of Defendants' own consultants, which document the presence of asbestos." Motion for Discretionary Review (MDR) Appendix (App.) at 164. Later, A-I-I separately propounded interrogatories and requests for production that, in part, called for the disclosure of evidence that would have encompassed the 28 bottles, but the LaSalles did not disclose the existence of the 28 bottles at that time.

Shortly thereafter, in November 2022, A-I-I sent Kazan Law an evidence preservation letter saying: "Please immediately advise whether there are cosmetic talc products or samples of any type in your clients' possession, custody, and/or

[1] Because Jack and Dianne have the same surname, this ruling uses their first names when referring to them individually for clarity. No disrespect is intended.

control," that "[i]f so, please ensure that your clients do not move or alter the products or samples in any way," and warned "[f]ailure to preserve the scene and allow inspection and proper removal to preserve evidence and make it available to all parties will give rise to motions for intentional spoliation of evidence." App. at 45.

In December 2022, following A-I-I's motion for forum non conveniens, the California Superior Court entered an order in which the parties stipulated consent to jurisdiction in Washington. Also in that same month, Jack's friend and fellow barber, Daryl Anyan, gave Kazan Law another bottle of Clubman Talc (the Anyan bottle). Like the 28 bottles, the Anyan bottle was not disclosed to A-I-I.

On May 4, 2023, the LaSalles filed the present action—through Schroeter Law[2]—in King County Superior Court. In July 2023, the LaSalles disclosed Longo as one of their experts on the issue of materials science and asbestos testing. On August 1, 2023, A-I-I sent Kazan Law another evidence preservation letter.

In September 2023, A-I-I deposed Longo in a separate asbestos case filed in New York and learned that Longo had produced two reports analyzing the 28 bottles in the LaSalles' lawsuit.[3]

Later, following a CR 26(i) discovery conference in November 2023, A-I-I filed a motion for protective order and spoliation findings. In its motion, A-I-I sought a protective order preventing the LaSalles from further analyzing physical

---

[2] Although Schroeter Law filed the complaint in Washington, Joseph Satterley of Kazan Law, who has been admitted *pro hac vice* in this action, is "the lead attorney representing Plaintiffs in this case and [has] been involved in the litigation of this action since its inception." App. at 2261.

[3] Longo prepared one report for Kazan Law that was dated July 13, 2023 and produced another report for Kazan Law that was dated August 31, 2023.

evidence,[4] for the immediate production of all Clubman Talc bottles in their and in Longo's possession, and an order excluding all Clubman Talc collected by Kazan Law and sent to Longo or, alternatively, an adverse inference jury instruction. The LaSalles opposed the motion and noted how they had "offered A-I-I the opportunity to visit Dr. Longo's lab, to inspect the bottles, and to take sample splits for A-I-I's own testing" and how A-I-I had rejected the offer. App. at 238.

On December 12, 2023, the trial court entered an order denying in part and granting in part A-I-I's motion, wherein it ruled:

> Defendant [A-I-I's] Motion for Protective Order as to the existing 28 bottles of Clubman Talc located at the Longo facility is DENIED as MOOT because Plaintiff offered and continues to offer Defendant access to those bottles. The Court GRANTS the protective order with respect to any "newly discovered" samples.
>
> The Court DENIES without prejudice Defendant's request for a spoliation finding. After additional discovery, that request may be renewed as appropriate.

App. at 2015 (emphasis added).

Less than a month later, on January 9, 2024, Kazan Law sent a letter to Longo enclosing the Anyan bottle, along with a chain of custody form and a declaration that Anyan executed on December 23, 2022. The Anyan bottle was neither disclosed to A-I-I nor to the trial court. Nor had the trial court entered an order allowing the Anyan bottle to be analyzed by any party or their experts.

[4] Specifically, regarding "newly discovered evidence," A-I-I requested: "To the extent Plaintiffs discover "new" evidence that either party may have reason to believe is relevant to this lawsuit, Plaintiffs should be precluded from taking any action that alters the conditions of the physical evidence or the environment from where the evidence originated." App. at 34. Furthermore, A-I-I suggested: "To prevent further spoliation, Plaintiffs should be required to notify all defendants of any newly discovered evidence within 48 hours of its identification and refrain from moving it, altering it, or taking any unilateral actions until the Court issues an order as to its disposition." App. at 34.

Jack passed away on March 29, 2024. Meanwhile, A-I-I moved to compel production of the 28 bottles, which the trial court granted in an April 9, 2024 order. In a May 23, 2024 order clarifying its April 9 order, the trial court ruled:

> Plaintiffs shall relinquish the Clubman Talc containers in question to Defendant A-I-I for a 10-day period, to occur no later than May 31, 2024. Plaintiffs shall maintain necessary chain-of-custody documentation. Plaintiffs may bill Defendant A-I-I for reasonable costs related to shipping and chain-of-custody procedures, to be paid in full by June 30, 2024. Defendant A-I-I shall return the Clubman Talc containers to Plaintiffs by June 15, 2024, maintaining all chain-of-custody protocols consistent with non-destructive testing. Defendant shall bear the cost of shipping and chain-of-custody documentation.

Response to Motion for Discretionary Review, Appendix (Resp. App.) at 194.

On May 28, 2024, the parties deposed Anyan, who was also represented by Kazan Law. Anyan testified to being a barber for nearly 50 years and recalled using two brands of talcum powder. He identified Pinaud as one brand and Clubman as the other. Anyan described Clubman Talc as being in “a metal container” akin to an “old tin-looking one,” “like the old tin things you’d see back in the ‘40s, you know, about a 6-inch-tall can.” App. at 2147. He also testified to getting rid of the talcum powder in his possession as follows:

> Q. Did you – did you – when you were asked to do this deposition, did you go back and look at – look at anything to try to recall what kinds of products might have been on the market back in the ‘70s?
> A. No. No, I had –
> Q. Okay.
> A. I had some on my back bar, you know, until I got rid of it.
> Q. Had some what?
> A. Talcum.
> Q. And when did you – when did you get rid of the talcum powder? Did you – did you have talcum powder on your back bar at the time you found out that Mr. LaSalle had cancer?

A. I don't really remember – yes, I suppose I did. After I found out that there – it – it caused cancer, I got rid of it. I didn't – I don't – I didn't want it anymore.

. . .

Q. Do you know whether – so what happened to the product that you were using at the time? What did you do with it?

A. I got rid of it.

Q. How did you get rid of it?

A. I don't remember. I could have just got rid of it.

App. at 2156.

Six months later, in December 2024, A-I-I became aware of the existence of the Anyan bottle. Following a discovery conference on December 16, 2024, A-I-I began an e-mail thread with counsel in this matter memorializing the discussion, which stated: "Joe [Satterley], thanks for the call. I understand that you are pretty sure that the bottle of Clubman talc from the coworker provided to Dr. Longo has not been tested, but you are going to confirm, and then we will discuss next steps. We also need a copy of the declaration from the co-worker." App. at 2164.

Despite A-I-I's subsequent discovery requests (in March and May 2025) to Kazan Law to produce information regarding the Anyan bottle, Longo analyzed the Anyan bottle and produced a report dated April 28, 2025 for Kazan Law to use in this action. A-I-I received a copy of Longo's report on May 28, 2025. The testing of the Anyan bottle was performed without permission or an order of the trial court.

In June 2025, A-I-I filed a motion for sanctions and for a finding of spoliation against Petitioners for violation of the court's December 12, 2023 order. Specifically, A-I-I asked the court to exclude the Anyan bottle from evidence, to enter a finding of spoliation, and for an award of monetary sanctions. A-I-I supported its motion with declarations from counsel.

In response, Petitioners argued that A-I-I's motion should be denied in its entirety, that there were no grounds for spoliation findings, that there were no grounds for an exclusionary order (because they were withdrawing the Anyan bottle from evidence in this case), and there were no grounds for a monetary sanction. The LaSalles' opposition was supported by declarations from Kazan Law and a declaration from Longo. Longo declared, among other things, that he received the Anyan bottle on January 10, 2024 and that: "It is not correct that the Anyan bottle has been 'spoliated' by the removal of 1 gram of powder from a previously-opened bottle whose authenticity was attested to by its prior owner, Mr. Anyan." App. at 2196. Petitioners' lead counsel, declared in pertinent part:

> 7. When the Court issued its ruling on December 12, 2023, I read the Court's Order and believed I understood the Order. However, in retrospect I either did not fully appreciate the scope of the ruling as to "newly discovered evidence" or simply failed to connect it to a bottle, described below, that my office had received a year earlier in December 2022.
>
> 8. This is important because when the underlying motion was pending in December 2023, I overlooked that a "29th bottle" of Clubman had been sent to my office a year earlier, in December 2022, by one of Jack LaSalle's good friends and fellow barber, Daryl Anyan ("the Anyan bottle"). Mr. Anyan's bottle was received separate from, and later than, the 28 bottles, and therefore had not been sent to Dr. Longo for testing with the 287 bottles. In fact, as of December 2023 it had been sitting on a shelf in the office of one of my Firm's investigators for almost a year, and I had overlooked it.
>
> 9. When I remembered the Anyan bottle in early January 2023 I did not connect that 2022 bottle to the Court's 2023 Order. I can appreciate now that the Order would apply to that bottle, and that sending the Anyan bottle to Dr. Longo for testing on January 9, 2024 did not comply with the Court's December 12, 2023 Order. At the time, however, I inadvertently and unintentionally ran afoul of that Order. I then turned my attention to other matters and, as things turned out, Dr. Longo's lab did not produce a final report of its findings until more than a year after that, in April 2025. In the

> meantime, Jack LaSalle died on March 29, 2024 and Plaintiffs filed a Second Amended Complaint that A-I-I answered on or about August 26, 2024.
>
> 10. I acknowledge that I did not comply with the Court's Order as it applies to the Anyan bottle, and I take responsibility for that. I assure the Court that I did so inadvertently, and without intent to ignore or violate this Court's Order and without willfulness. I respect this Court, the rule of law, and the Court's authority to issue orders which govern the proceedings of this case. I simply failed to connect the Court's December 12, 2023 order to the Anyan bottle received a year earlier. I likely asked my paralegal to send the bottle for testing because that is my custom and practice and, when I thought of the bottle in January 2024, I relied on my custom and practice which, I respectfully suggest, is a reasonable justification. I do not recall why I did not follow up with Dr. Longo for the status of his testing after January 2024 including after I spoke with Mr. Bosworth in December 2024.
>
> 11. I respectfully suggest there is no need for the Court to consider or enter an order precluding this evidence because Plaintiffs hereby withdraw the bottle, its contents, and Dr. Long's testing results from evidence. Plaintiffs will not rely on the bottle, Dr. Longo's testing of its contents, or the results of Dr. Longo's testing in this case.

App. at 2262-63.

A-I-I filed a reply arguing that sanctions were necessary and appropriate.

On July 11, 2025, the trial court granted A-I-I's motion and ruled as follows:

> 2. Plaintiff through its counsel was aware of this order, and during the litigation was repeatedly reminded of its importance with respect to the Clubman talc samples that are at the center of this asbestos litigation.
>
> 3. Plaintiff's counsel received in 2022 a sample of Clubman talc from a fact witness (Anyan). Despite extensive litigation around the issue of preserving and testing talc samples, and this Court's ultimate discovery order, Plaintiff's counsel did not notify the defense about the Anyan sample for over two years after its receipt, and Plaintiff's counsel had it tested by its own expert without notice to the defense, all of which squarely violated this Court's order. The Court does not find the explanation of Plaintiff's counsel to be credible or

> reasonable. The Court finds that the failure to disclose this sample, and the violation of the Court's order, to be willful.
>
> 4. In responding to this motion, Plaintiff's counsel stated that Plaintiff will withdraw the sample from evidence. This moots the requested sanction of exclusion. But in any event the use of the Anyan sample shall not be permitted.
>
> 5. The Court finds that the grounds for a finding of spoliation have been met, and the defense may request an adverse inference instruction at the appropriate juncture.
>
> 6. The Court finds that Plaintiff's position in withholding the sample, and violating the Court's order, are not substantially justified, requiring that the Court impose monetary sanctions on Plaintiff. See CR 37(b).
>
> 7. Defendant A-I-I I [sic] is awarded monetary sanctions, in the form of reasonable attorney's fees and costs incurred incident to this controversy, in the among of $13,200. Plaintiff's counsel shall pay this amount within 10 days of this order, with 12% annual interest to attach in the event Plaintiff does not meet this deadline.

App. at 2278-79 (emphasis added).

Dianne and Kazan Law moved for discretionary review of the trial court's July 11, 2025 order (the sanctions order). Schroeter Law joined the motion for discretionary review. Petitioners then asked this court to stay the sanctions order and trial court proceeding pending disposition of this discretionary review ruling. A-I-I did not oppose the motion and I granted the Petitioner's motion to stay.

## DISCUSSION

### A. Standing

As an initial matter, A-I-I contends that Dianne's counsel lack standing to bring or join this motion for discretionary review. Kazan Law disagrees.

"Only an aggrieved party may seek review by the appellate court." RAP 3.1. "Washington courts have long held that '[f]or a party to be aggrieved, the decision

must adversely affect that party's property or pecuniary rights, or a personal right, or impose on a party a burden or obligation.'" Randy Reynolds & Associates, Inc. v. Harmon, 193 Wn.2d 143, 150, 437 P.3d 677 (2019) (citation omitted). Although the sanctions order imposed "monetary sanctions on" Dianne, it is clear that the order affected the property rights, pecuniary rights, and imposed a burden or obligation on Dianne and on Dianne's counsel. Accordingly, Dianne's counsel has standing to seek appellate review of the sanctions order.

**B. Appealability**

Next, Kazan Law contends that the sanctions order is appealable under RAP 2.2(a)(3). Kazan Law asserts that, from its perspective, "the monetary sanction against them was a significant penalty for which they were personally responsible" and "the order was a final determination of this discovery controversy from their perspective because the order left nothing else to be determined as to them." MDR at 14. In support of its contention, Kazan Law relies on two unpublished opinions from Division Three, including: In re Recall of Clark, No. 39862-5-III (Wash. Ct. App. July 2, 2024) and In re Estate of Stennes, No. 37555-2-III (Wash. Ct. App. Oct. 5, 2021). A-I-I responds that the sanctions order is not appealable.

Under RAP 2.2(a)(3), "any written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action" is appealable. The sanction order does not satisfy the requirements of this rule. Although it is a written decision affecting a substantial right in a civil case, the sanctions order does not determine the action (i.e., the

LaSalles' lawsuit against A-I-I for damages), prevent a final judgment, nor discontinues the action. Instead, the sanctions order is one of many interlocutory orders that the trial court has entered in this matter.

The cases of Clark and Stennes hold no precedential value. While not binding on this court, Kazan Law may offer these unpublished cases as persuasive authority under GR 14.1(a). In Clark, Robert Linebarger filed separate recall petitions against three school board members. In December 2021, the trial court dismissed the petitions with prejudice but retained jurisdiction to consider the issue of sanctions. "In June 2022, after a hearing, the court entered orders in each of the three cases granting the three board members' motions, concluding that CR 11 sanctions were warranted" but the order did not include the amount of sanctions to be imposed. Clark, slip op. at 10. In December 2022, the court entered orders in each of the three cases "awarding a total of $30,000 in sanctions in favor of the three board members against Linebarger and his two [former] attorneys" and "imposed the sanctions as joint and several obligations." Id. at 11. Linebarger did not timely appeal any of the orders entered in December 2021, June 2022, or December 2022. Instead, in January 2023, Linebarger moved to vacate the orders imposing sanctions, which the court denied. In May 2023, the three board members asked the trial court to apportion their shares of the $30,000. After a hearing, the trial court entered in June 2023 orders apportioning the $30,000 sanction. Linebarger appealed the June 2023 orders.

On review, the three board members challenged the scope of appeal, contending that the appeal of the June 2023 orders did not bring up the June 2022

and December 2022 sanction orders for review. After discussing the exception provided in RAP 2.4(b), Division Three said:

> The combination of these three [December 2021, June 2022, and December 2022] orders (1) affected a substantial right in the civil case, i.e., dismissed the recall petitions with prejudice and determined the among of sanctions, (2) in effect determined the action, and (2)(b) discontinued it. Thus, after the December 2022 orders were entered, the sanctions orders were appealable under RAP 2.2(a).

Clark, slip op. at 14.

As noted, Division Three's opinion in Clark analyzed the attorney sanctions order *after the recall petition action had already been dismissed with prejudice*. Unlike Clark, as noted above, the sanctions order in this case neither determined the LaSalles' lawsuit against A-I-I nor discontinued it or prevented a judgment in this action from being entered. Clark does not persuade me that the sanctions order entered under the fact of this matter is appealable.

The case of Stennes is also unavailing. There, Alex Thomason filed a notice of appeal from a December 2019 order that he pay Michael Stennes' attorney fees as a sanction in connection with his conduct resisting compliance with a discovery order in a probate proceeding. Stennes moved to dismiss the appeal, contending that the order was not appealable. Thomason countered that the decision was final as to him. A Division Three Commissioner ruled as follows: "'This Court has determined that Mr. Thomason's appeal of the judgment imposing attorney fees as sanctions against him is an appeal as a matter of right pursuant to RAP 2.2(a)(3). RAP 2.2(d) is not applicable because he is not a party in the underlying action to administer the estate.'" Stennes, slip op. at 17 (quoting

Com'r's Ruling dated July 16, 2020). Although the Commissioner's ruling was not modified and became a ruling of this court, the ruling does not include any appealability analysis and fails to provide any assistance in this matter.

In sum, based on the circumstances of this matter and based on the lack of binding authority to indicate otherwise, the sanctions order is not appealable as of right under RAP 2.2(a)(3). The sanctions order is subject to discretionary review.

**C. Discretionary Review**

"Interlocutory review is disfavored." Minehart v. Morning Star Boys Ranch, Inc., 156 Wn. App. 457, 462, 232 P.3d 591 (2010). "Piecemeal appeals of interlocutory orders must be avoided in the interests of speedy and economical disposition of judicial business." Maybury v. City of Seattle, 53 Wn.2d 716, 721, 336 P.2d 878 (1959). This court may accept discretionary review only if the petitioning party satisfies one of the four "specific and stringent" criteria set forth in RAP 2.3(b), which reflect a "plain and intentional bias against interlocutory review." In re Dependency of N.G., 199 Wn.2d 588, 595, 510 P.3d 335 (2022) (quoting Geoffrey Crooks, *Discretionary Review of Trial Court Decisions Under the Washington Rules of Appellate Procedure*, 61 WASH. L. REV. 1541, 1545, 1547 (1986)). Petitioners seek review under (b)(1) through (b)(3), which mandate that:

> [D]iscretionary review may be accepted only in the following circumstances:
>
> (1) The superior court has committed an obvious error which would render further proceedings useless;
>
> (2) The superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act; [or]

> (3) The superior court has so far departed from the accepted and usual course of judicial proceedings . . . as to call for review by the appellate court[.]

RAP 2.3(b)(1)-(3) (emphasis added). Petitioners satisfy none of these criteria.

**1. Obvious Error**

Petitioners argue that the trial court obviously erred when it entered the sanctions order without complying with the Burnet[5] framework "because a court's failure to abide controlling precedent is enough to establish 'obvious error[.]'" MDR at 21. They also contend that the trial court's findings were not supported by substantial evidence and, when "coupled with the unreasonable weighing of the evidence that did exist, [it] show[s] the trial court's decision was so plainly erroneous that discretionary review is appropriate." MDR at 26.

"An obvious error is an act or decision that is *clearly* contrary to existing statute or case law and is not a matter of discretion." I WASHINGTON APPELLATE PRACTICE DESKBOOK § 4.4(2)(a) at 4-34 to 4-35 (4th ed. 2016) (emphasis added). Obvious error "refers to rulings that misapply *clearly established law* to undisputed facts or that misunderstand facts in a manner rising to the level of reversible error." Stephen J. Dwyer, Leonard J. Feldman, Hunter Ferguson, *The Confusing Standards for Discretionary Review in Washington and a Proposed Framework for Clarity*, 38 SEATTLE U. L. REV. 91, 104 (2014). Obvious error has been established where a trial court fails to follow controlling precedent. See Macias v. Mine Safety

[5] Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997) (before imposing one of the harsher remedies allowed under CR 37(b), a trial court must explicitly consider on the record whether the party's violation was willful or deliberate, whether the violation substantially prejudiced the opposing party's ability to prepare for trial, and whether a lesser sanction would be adequate).

Appliances Co., 158 Wn. App. 931, 244 P.3d 978 (2010), rev'd on other grounds by Macias v. Saberhagen Holdings, Inc., 175 Wn.2d 402, 282 P.3d 1069 (2012).

Here, Petitioners withdrew the Anyan bottle from evidence and the trial court ruled that their withdrawal "moots" A-I-I's request for the sanction of exclusion, but the court then added "in any event the use of the Anyan sample shall not be permitted." I will presume, for purposes of RAP 2.3(b)(1) analysis only, that the sanctions order expressly excludes the Anyan bottle from evidence at trial and that it did so based on insufficient evidence. The trial court did not consider on the record whether A-I-I was substantially prejudiced in its ability to prepare for trial or whether a lesser sanction would suffice. So, I presume obvious error.

Even presuming such error review under RAP 2.3(b)(1) is not warranted because Petitioners cannot satisfy this rule's effects prong. An obvious error is reviewable under RAP 2.3(b)(1) "only if it truly rendered further proceedings useless." 61 WASH. L. REV. at 1546. Review under RAP 2.3(b)(1) "is proper when the error committed is so blatant and severe that *there is no point to continuing the particular litigation*." 38 SEATTLE U. L. REV. at 102 (emphasis added).

As to the effects prong, Petitioners first point to a prior ruling of one of this court's Commissioners for the proposition that this court "has recognized that a ruling that severely hampers a party's ability to present their case may 'render further proceedings useless.'" MDR. at 26 (citing Wolf v. State, No. 87239-7-I, Comm'r's Ruling, at 16 (Wash. Ct. App. Nov. 1, 2024)). However, Wolf is factually

and procedurally different from this case, so any reliance on it is misplaced.[6] More importantly, Petitioners fail to show how the exclusion of the Anyan bottle from evidence renders further proceedings useless. As Petitioners acknowledge in these proceedings: "The [Anyan] bottle here was just one of 29 that Dianne's legal team has found." MDR Reply at 12. The exclusion of one of 29 pieces of evidence does not render further proceedings useless.

Next, Petitioners assert that "A-I-I and the other defendants would exploit the trial court's order and resulting adverse inference instruction, portraying Dianne and her attorneys as dishonest and willing to destroy evidence," that such an instruction "certainly boosts the odds of a defense verdict," and that the "complexity of asbestos litigation should figure into this Court's weighing of the effects prong."

---

[6] In Wolf, the Department of Children, Youth, and Families (Department) sought discretionary review under RAP 2.3(b)(1) and (2) of an order granting summary judgment on liability in favor of a plaintiff in a wrongful death action. As to effects, Commissioner Jennifer Koh ruled:

> I agree with the Department that this particular case warrants interlocutory review. While a damages-only trial might be tolerable result in some circumstances, this particular case, where the trial court's order deprives the Department from presenting genuine, complicated, and material factual disputes to a jury and summarily grants judgment as to all contested factual questions concerning liability, and apparently in contradiction of public policy as to the application of collateral estoppel, such use of public and judicial resources appears inappropriate. The case authority on collateral estoppel cited before the trial court denied application of the doctrine as a matter of public policy. The case authority discussed by the parties in briefing before me in this accelerated request for discretionary review appears also to heavily favor such a result. This case also involves one of the few types of negligent investigation claims allowed against state agencies as a statutory exception to generally acknowledged state law. Although a single superior court order is not binding on any other court, it seems inappropriate to ignore the potential impact that this case could have on the Department's day-to-day management of resources. See, e.g., Cleveland, 58 Wn. App. at 644 (recognizing potential difficulties in application of collateral estoppel even while viewing State as single actor). Ultimately, my decision on effects is guided by practicality. Given the Department's identification of multiple factual disputes for trial as to liability, it does not appear to make sense to require the Department to submit to a damages only trial before appealing the . . . order.

Wolf, No. 87239-7-I, Comm'r's Ruling, at 15-16.

MDR at 27. Their assertions fail to show the requisite effect. First, the trial court has not entered any adverse inference instruction yet, so the impact of such instruction is mere speculation. Second, since no instructions have been entered, the trial court's sanctions order remains interlocutory and is subject to revision. "[T]he authority of trial courts to revisit interlocutory orders 'allows them to correct not only simple mistakes, but also decision based on shifting precedent.'" Chaffee v. Keller Rohrback LLP, 200 Wn. App. 66, 76-77, 401 P.3d 418 (2017) (citation omitted). Lastly, whether and to what extent A-I-I (or any other entity) attempts to use the trial court's sanctions order outside the confines of this case has no bearing on the merits or the proceedings of this case.

In short, even if the trial court obviously erred by not considering the Burnet factors on the record, the sanctions order does not render further proceedings useless. For these reasons, the Petitioners' request for discretionary review under RAP 2.3(b)(1) is not warranted.

**2. Probable Error**

Petitioners argue the trial court's entry of the sanctions order was probable error for the same reasons that the court's error was obvious. However, again, even presuming probable error, review under RAP 2.3(b)(2) is not appropriate because Petitioners cannot meet the effects prong of this rule.

Former Washington Supreme Court Commissioner Geoffrey Crooks wrote: "It can be argued . . . that subsection (b)(2) should be applied only when a trial court's order has immediate effects outside the courtroom. This interpretation of the '*status quo' test* and 'freedom of a party to act' test would fit with the notion that

subsection (b)(2) was intended to focus on injunctions and the like." 61 WASH L. REV. at 1546. In 2014, this Court accepted and applied Commissioner Crooks's interpretation of RAP 2.3(b)(2). In State v. Howland, this Court explained that the probable error criterion is generally limited to an injunction or like orders having "an immediate effect outside the courtroom." 180 Wn. App. 196, 207, 321 P.3d 303 (2014). "For example, when a party is compelled by court order to remove a structure, the order, if given effect, quite literally alters the status quo" and, therefore, "the court's action has effects beyond the parties' ability to conduct the immediate litigation." Id. When "a trial court's action merely alters the status of the litigation itself or limits the freedom of a party to act in the conduct of the lawsuit, even if the trial court's action is probably erroneous, it is not sufficient to invoke review under RAP 2.3(b)(2)."[7] Id. Our Supreme Court later "adopt[ed] Howland's interpretation of RAP 2.3(b)(2) and [held] that 'substantially alters the status quo' requires an immediate effect outside the courtroom." In re Dependency of N.G., 199 Wn.2d 588, 602, 510 P.3d 335 (2022).

As to the effects prong of RAP 2.3(b)(2), Petitioners claim that "[i]n asbestos litigation, some defendants in the past have brought up discovery violations in unrelated matters to tarnish some plaintiffs, their counsel, and their experts" and, consequently, "if this sanctions order is not reviewed now, an intolerable risk will arise that A-I-I (and other talcum powder manufacturers) will wield the trial court's sanctions order as a weapon." MDR at 28-29. Petitioners' "immediate effects" claim falls flat. The sanctions order is not similar to a preliminary injunction. Nor

[7] Such errors "are properly reviewed, if necessary, at the conclusion of the case where they may be considered in the context of the entire hearing or trial." Howland, 180 Wn. App. at 207.

is it akin to "an order transferring custody from one individual to another, an order requiring disclosure of privileged information, or an order compelling parties to submit to arbitration rather than exercise their rights to access a court of law," all of which have an immediate impact outside the courtroom. 38 SEATTLE U. L. REV. at 102. Petitioners do not show that the sanctions order has an impact on any person or entity who is not involved in this litigation. Nor can they do so. Because the trial court has yet to enter any instructions, whether adverse or otherwise, Petitioners cannot measure the effect such instructions may have in this matter.

In sum, nothing in the sanctions order points to it having an immediate impact outside the confines of the present lawsuit. The fact that other entities in other states and in other lawsuits *may attempt* to use the sanctions order for some other desired purpose is not an immediate effect outside the courtroom that satisfied the effects prong of RAP 2.3(b)(2). Accordingly, Petitioners' request for discretionary review based on a claim of probable error must be denied.

**3. Departure from Accepted Judicial Proceedings**

By entering the sanctions order, Petitioners contend that the trial court departed so far from the accepted and usual course of judicial proceedings as to call for appellate review. They say that "[b]ecause discovery sanctions can be so powerful, parties can suffer improper and unjust penalties." MDR at 30. But Petitioners do not demonstrate that review under RAP 2.3(b)(3) is justified.

The Washington Supreme Court has clarified that RAP 2.3(b)(3) "presumes the existence of an 'accepted and usual course of judicial proceedings,' and it requires *a 'depart[ure]' from that course that is 'so far . . . as to call for' review* or

revision." In re Dependency of C.J.J.I., 4 Wn.3d 520, 526, 565 P.3d 891 (2025) (emphasis added). This rule begins "with a presumption that courts in judicial proceedings follow a generally recognized and approved practice, and *to satisfy RAP 2.3(b)(3) . . . a party must show not simply that the lower court deviated from that practice, but that it did so to such a great extent that review or revision is necessary*." Id. (emphasis added). It is "not easily satisfied, and a party must show the existence of a significant deviation, not merely a commonplace error;" but, this rule does "not erect an insuperable bar to review." Id. RAP 2.3(b) "applies to both procedural and substantive irregularities." Id. at 527.

Here, it is clear that the trial court considered the parties' pleadings for and against A-I-I's motion for sanctions and provided a written explanation for its reasoning in granting the sanctions order. Petitioners have not identified any procedural irregularities nor any significant procedural deviations from the usual course regarding the sanctions order.

A trial court has broad discretion when imposing discovery sanctions under CR 37(b) and appellate courts will not disturb such sanctions absent a clear abuse of discretion. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). Discretion is abused when a trial court's decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. Burnet, 131 Wn.2d at 494. Here, the trial court exercised its discretion to (1) not permit in evidence the Anyan bottle that Petitioners said they were withdrawing; (2) allow A-I-I to request an adverse inference instruction at some future date; and (3) require Petitioners to pay A-I-I attorney fees that were incurred in filing the

motion for sanctions. Whether or not the trial court's discretion is later determined to be proper or an abuse, I do not see a departure from the usual course of judicial proceedings to warrant discretionary review.

**CONCLUSION**

Kazan Law has standing to seek appellate review of the sanctions order. The sanctions order is not appealable under RAP 2.2(a)(3). Instead, the sanctions order is subject to discretionary review and Petitioners fail to satisfy the criteria of RAP 2.3(b). Therefore, it is

ORDERED that the motion for discretionary review is denied; and

ORDERED that the stay of the trial court proceedings is hereby lifted.

