# EXHIBIT D

Joseph D. Satterley (C.S.B. #286890)
jsatterley@kazanlaw.com
Ian A. Rivamonte (C.S.B. #232663)
irivamonte@kazanlaw.com
KAZAN, McCLAIN, SATTERLEY & GREENWOOD
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, California 94607
Telephone: (510) 302-1000
Facsimile: (510) 835-4913

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**09/27/2022 at 01:17:27 PM**
By: Xian-xii Bowie,
Deputy Clerk

Attorneys for Plaintiffs

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

JACK LaSALLE and DIANNE LaSALLE,

Plaintiffs,

v.

AMERICAN INTERNATIONAL INDUSTRIES, sued individually, as alter-ego of, and as successor-in-interest to PINAUD, INC., ED PINAUD, INC., d/b/a ED. PINAUD, THE NESLEMUR COMPANY, formerly known as THE NESTLE-LE MUR COMPANY;

ARYZ CORP.;

BARRETTS MINERALS INC.;

BAYER CONSUMER CARE HOLDINGS LLC, sued individually, as alter-ego of, and as successor-in-interest to SCHOLL, INC.;

BRENNTAG NORTH AMERICA, INC., sued individually, as alter-ego of, and as successor-in-interest to MINERAL AND PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER, CLARK & DANIELS, INC.;

BRENNTAG SPECIALTIES, LLC, individually and as successor-in-interest, parent, alter ego, and equitable trustee to BRENNTAG SPECIALTIES, INC. (formerly known as MINERAL AND PIGMENT SOLUTIONS, INC.), sued individually, as alter-ego of, and as successor-in-interest to WHITTAKER, CLARK & DANIELS, INC.;

Case No. 22CV018567

**COMPLAINT FOR PERSONAL INJURIES AND LOSS OF CONSORTIUM**

**DEMAND FOR JURY TRIAL**

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

CHARLES MATHIEU, INC.;

CHATTEM, INC., a subsidiary of SANOFI-AVENTIS U.S. LLC, sued individually, as alter-ego of, and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY;

ERX CORP.;

GLAMOUR INDUSTRIES CO., formerly known as BETTY K. DEVELOPMENT CO.;

HIMMEL MANAGEMENT CO. LLC a/k/a HIMMEL GROUP formerly d/b/a MARTIN HIMMEL, INC., sued individually, as alter-ego of, and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY;

MERCK & CO., INC., sued individually, as alter-ego of, and as successor-in-interest to SCHOLL, INC.;

PFIZER INC.;

PTI ROYSTON, LLC, a/k/a PHARMA TECH INDUSTRIES;

PTI UNION, LLC, a/k/a PHARMA TECH INDUSTRIES;

RAZY PROPERTIES, INC.;

SAFEWAY INC.;

SCHOLL'S WELLNESS COMPANY, LLC, sued individually, as alter-ego of, and as successor-in-interest to SCHOLL, INC.;

SPECIALTY MINERALS INC.;

SRYZ CORP.;

WHITTAKER, CLARK & DANIELS, INC.; and

FIRST DOE through ONE-HUNDREDTH DOE,

Defendants.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

## GENERAL BACKGROUND

**I.**

**The Plaintiffs**: Jack LaSalle ("Plaintiff" or "Mr. LaSalle") is the physically injured Plaintiff. His malignant mesothelioma was caused by his cumulative lifetime dose of asbestos, asbestiform fibers, and asbestiform talc – collectively referred to herein as asbestos – including the asbestos exposures for which Defendants bear responsibility. Plaintiff's wife is Dianne LaSalle ("Mrs. LaSalle").

**II.**

**The Defendants**: All Defendants are listed in the case caption. The true names of the Defendants sued as DOE's are unknown to Plaintiffs. Each Defendant was the agent, employee, or joint venturer of its co-defendants and acted in the full course and scope of the agency, employment, or joint venture.

**III.**

**Alternate Entities**: All Defendants are individually liable for their defective products and wrongful conduct, and some Defendants are liable for the defective products and wrongful conduct of their alternate entities. Each such Defendant is liable for the torts of each of its alternate entities because:

- there were express or implied agreements between the companies to transfer and assume the liabilities;
- the transactions between the companies amounted to a consolidation or merger;
- the purchasing company is a mere continuation of the seller;
- the transfer of assets to the purchasing company was for the fraudulent purpose of escaping liability for the seller's debts;
- strict products liability was transferred because (1) there was a virtual destruction of Plaintiffs' remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor has the ability to assume the original manufacturer's risk-spreading role, and (3) it is fair to require the successor to assume responsibility for defective products that was a burden necessarily attached to the original manufacturer's goodwill being enjoyed by the successor in the continued operation of the business; and
- the companies are alter egos because (1) there is such a unity of interest,

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

ownership, and business operations between the companies that their separate personalities do not in reality exist, and (2) there would be an inequitable result if the torts in question were treated as those of one company alone.

The identities of the Defendants and their alternate entities are as follows:

| **Defendant** | **Alternate Entities** |
|---|---|
| AMERICAN INTERNATIONAL INDUSTRIES | PINAUD, INC.<br>ED PINAUD, INC., d/b/a ED. PINAUD<br>THE NESLEMUR COMPANY, f/k/a THE NESTLE-LE MUR COMPANY<br>ARYZ CORP.<br>ERX CORP.<br>GLAMOUR INDUSTRIES CO.<br>RAZY PROPERTIES, INC.<br>SRYZ CORP. |
| ARYZ CORP. | AMERICAN INTERNATIONAL INDUSTRIES<br>ERX CORP.<br>GLAMOUR INDUSTRIES CO.<br>RAZY PROPERTIES, INC.<br>SRYZ CORP. |
| BAYER CONSUMER CARE HOLDINGS LLC | SCHOLL, INC. |
| BRENNTAG NORTH AMERICA, INC. | MINERAL AND PIGMENT SOLUTIONS, INC.<br>WHITTAKER, CLARK & DANIELS, INC. |
| BRENNTAG SPECIALTIES, LLC | BRENNTAG SPECIALTIES, INC.<br>MINERAL AND PIGMENT SOLUTIONS, INC.<br>WHITTAKER, CLARK & DANIELS, INC. |
| CHATTEM, INC. | SANOFI-AVENTIS U.S. LLC<br>THE GOLD BOND STERILIZING POWDER COMPANY<br>THE GOLD BOND COMPANY |
| ERX CORP. | AMERICAN INTERNATIONAL INDUSTRIES<br>ARYZ CORP.<br>GLAMOUR INDUSTRIES CO.<br>RAZY PROPERTIES, INC.<br>SRYZ CORP. |
| GLAMOUR INDUSTRIES CO. | BETTY K. DEVELOPMENT CO.<br>AMERICAN INTERNATIONAL INDUSTRIES<br>ARYZ CORP.<br>ERX CORP.<br>RAZY PROPERTIES, INC.<br>SRYZ CORP. |
| HIMMEL MANAGEMENT CO. LLC | HIMMEL GROUP<br>MARTIN HIMMEL, INC.<br>THE GOLD BOND STERILIZING POWDER COMPANY<br>THE GOLD BOND COMPANY |
| MERCK & CO., INC. | SCHOLL, INC. |
| PTI ROYSTON, LLC | PHARMA TECH INDUSTRIES |
| PTI UNION, LLC | PHARMA TECH INDUSTRIES |
| RAZY PROPERTIES, INC. | AMERICAN INTERNATIONAL INDUSTRIES<br>ARYZ CORP.<br>ERX CORP.<br>GLAMOUR INDUSTRIES CO. |

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

| Defendant | Alternate Entities |
|---|---|
| | SRYZ CORP. |
| SCHOLL'S WELLNESS COMPANY, LLC | SCHOLL, INC. |
| SRYZ CORP. | AMERICAN INTERNATIONAL INDUSTRIES<br>ARYZ CORP.<br>ERX CORP.<br>GLAMOUR INDUSTRIES CO.<br>RAZY PROPERTIES, INC. |

**IV.**

**Venue**: Venue is proper in Alameda County because certain Defendants reside in Alameda County.

**V.**

**The Asbestos Exposures**: Plaintiff was exposed to asbestos through his personal and, while he was a haircutter, occupational use of talc powder products, including Clubman (from the 1970s through the 2000s), Dr. Scholl's (from the 1970s through the 2000s), and Gold Bond (from the 1990s through the 2000s).[1]

**VI.**

**The Harm**: Mr. LaSalle has malignant mesothelioma caused by his asbestos exposures. The mesothelioma has caused and will cause Mr. LaSalle to experience financial harm. The mesothelioma also has caused and will cause Mr. LaSalle to experience physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, and other similar harm. And the mesothelioma will cause Mr. LaSalle's untimely death.

---

[1] Mr. LaSalle also used Johnson's Baby Powder talc. Pursuant to the orders of the U.S. Bankruptcy Court for the District of New Jersey in *In re LTL Management, LLC*, Case No. 21-30589 (MBK) ("*LTL*"), including the orders filed on February 25, 2022, denying the motion to dismiss (Docket No. 1572) and granting the preliminary injunction (Docket No. 1573), Plaintiffs are not asserting any claims against Defendants named herein, the debtor in the *LTL* action, or any "Protected Party" in the *LTL* action, as defined in the Preliminary Injunction Order, for Mr. LaSalle's exposure to asbestos from Johnson's Baby Powder. Plaintiffs will commence their claims relating to Mr. LaSalle's asbestos exposures from Johnson's Baby Powder if the bankruptcy court or the Third Circuit Court of Appeals issues an order allowing them to do so. Any mention of J&J or Johnson's Baby Powder in this complaint is for factual background only.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

Mr. LaSalle's injuries have caused and will cause Mrs. LaSalle to experience loss of consortium. Mrs. LaSalle's harm includes the loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, sexual relations, and other similar harm.

Plaintiffs rely upon the liability theories described below.

**VII.**

**Knowledge of Asbestos Hazards**: The following facts are illustrative, but not exhaustive, of the evolution of the knowledge of the health hazards of asbestos and what was known and knowable to Defendants:

1. Health hazards from asbestos exposure were identified in the 1890s. During this time, the Lady Inspector of Factories in Great Britain noted that individuals working with asbestos suffered various lung injuries.

2. Since the early 1900s, Defendants possessed medical and scientific data that raised concerns regarding the presence of asbestos in talcum powder and demonstrated the existence of health hazards to those exposed to asbestos-containing talcum powder products. Talc is a hydrous magnesium silicate, an inorganic material mined from the earth. Talc is used to manufacture goods such as paper, plastic, paint and coatings, rubber, food, electric cable, ceramics, and cosmetics. In its loose form and as used in consumer powder products, talc is known as "talcum powder."

3. Geologists and mining companies, including Defendants, have long known that the earth's deposits associated with talc are also associated with the formation of asbestos. Asbestos is a commercial and legal term, rather than a geological or scientific term, referring to six now-regulated magnesium silicate minerals that occur in fibrous form, including the serpentine mineral chrysotile, and the amphibole minerals actinolite, anthophyllite, tremolite, amosite, and crocidolite. The United States Geological Survey on Commercial Talc production in 1965 and those dating back to the 1800s in the United States note the presence of tremolite, anthophyllite, and chrysotile commonly among those minerals found within talc deposits.

4. As early as the 1920s, the term "asbestosis" was used to describe pulmonary fibrosis caused by asbestos exposure. Case reports in Great Britain and the United States detailed asbestosis in various workers.

5. By 1929, lawsuits for disability related to exposure to asbestos were filed against Johns Manville.

6. In the late 1930s, case reports were published addressing the relationship between asbestos and cancer.

7. Several reports, studies, and guidelines published as early as the 1930s, including California's Dust, Fumes, Vapors, and Gases Safety Orders, all recognized that asbestos is a dust that creates health hazards and that certain precautions are required to mitigate human exposure to dust. Such measures include, but are not limited to, using water to suppress the dust at its source

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

and providing those who might be exposed to dust with adequate ventilation, showers, and changing facilities. These same measures that were recommended to protect workers from asbestosis in the 1930s would also have substantially reduced the risk that bystanders, household members, and other persons would contract mesothelioma from inhaling asbestos-containing dust that those who worked with and around asbestos and asbestos-containing products carried into their households on their person and personal effects. Defendants, and each of them, knew or should have known that anyone, including household members of those who used asbestos-containing products were at risk of developing an asbestos-related disease after inhaling dust from such asbestos-containing products.

8. In 1931, the United Kingdom allowed workers to receive compensation for asbestosis.

9. In March of 1933, Waldemar C. Dreesen of the United States Public Health Service reported to the National Safety Council the results of a study conducted among tremolite, talc, and slate workers. The study indicated that the talc was a hydrous calcium magnesium silicate, being 45 percent talc and 45 percent tremolite, and the National Safety Council stated, "[t]he results of the study seemed to indicate a relationship between the amount of dust inhaled and the effect of this dust on the lungs of the workers."

10. As early as 1934, the National Safety Council published information stating that "a cause of severe pulmonary injury is asbestos, a silicate of magnesium."

11. In the September 1935 issue of National Safety News, an article entitled *No Halfway Measures in Dust Control* by Arthur S. Johnson reported lowered lung capacity resulting from "asbestosis" and "similar conditions" that developed "from exposure to excess of many mineral dusts relatively low in free silica content." The article further noted that claims for disabilities from workers who alleged exposure to "clay, talc, emery, and carborundum dusts" had "claims prosecuted successfully." The article concluded that "[i]n the absence of adequate diagnoses, occupational histories and a more satisfactory method of adjudicating claims than prosecution at common law, we must conclude that it is necessary to find a practical method for controlling all mineral dusts."

12. In 1936, California's Division of Industrial Safety issued Safety Orders establishing the standard of care for work with asbestos.

13. Also, in 1936, Illinois enacted legislation recognizing asbestosis as a compensable occupational disease under its Occupational Disease Act.

14. By the 1940s, asbestos carcinogenicity was noted in reviews in the fields of industrial medicine, cancer research, and pneumoconiosis.

15. In 1946, the American Conference of Governmental Industrial Hygienists established a maximum allowable concentration for occupational exposure.

16. During the 1940s and 1950s, asbestos hazards were discussed in popular magazines, including Scientific American (January 1949) and Newsweek (May 15, 1950), as well as the Encyclopedia Britannica (1952). On April 7, 1959, the Los Angeles Times and Wall Street Journal reported that

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

California health officials did additional research linking asbestos with cancer. Following several subsequent reports in the New York Times, Paul Brodeur published a series of articles in the New Yorker.

17. In addition, beginning in the 1940s and 1950s, it was recognized that individuals who worked with asbestos materials and those who did not work directly with asbestos products but only had relatively brief or intermittent exposures to asbestos products could develop fatal asbestos diseases.

18. In 1955, Richard Doll published a study linking asbestos to lung cancer.

19. In 1960, Chris Wagner published a study linking asbestos to mesothelioma.

20. In the early 1960s, Dr. Irving Selikoff studied groups of asbestos workers. By 1965, he had conducted various studies, published several articles, conducted special scientific symposia, been interviewed by the New York Times, and organized the international conference on the "Biological Effects of Asbestos" under the auspices of the renowned New York Academy of Sciences. The results of these presentations were published in Volume 132 of the Annals of the New York Academy of Sciences published in 1965.

21. In 1968, a study presented at the American Industrial Hygiene Conference and published in the American Industrial Hygiene Association Journal concluded that "[a]ll of the 22 talcum products analyzed have a...fiber content...averaging 19%. The fibrous material was predominantly talc but contained minor amounts of tremolite, anthophyllite, and chrysotile, as these are often present in fibrous talc mineral deposits...Unknown significant amounts of such materials in products that may be used without precautions may create an unsuspected problem." [Cralley, L.J., et al., *Fibrous and Mineral Content of Cosmetic Talcum Products*, 29 Am. Ind. Hyg. Assoc. J. 350 (1968).]

22. In 1969, product-liability lawsuits were brought against asbestos manufacturers. Also, under the Walsh Healy Act, federal contractors with contracts of more than $10,000 were required to adhere to a workplace standard of no more than 12 fibers per cubic centimeter of air.

23. In 1970, OSHA established the first Federal guidelines for workplace asbestos exposure, which took effect in 1971. Those regulations did not identify any known safe level of exposure for asbestos and mesothelioma. The OSHA asbestos regulations were strengthened during the 1970s and 1980s. By 1986, the regulations explained: (1) the legally "permissible" levels for workplace asbestos exposures, even at just 0.2 f/cc, actually were inadequate to protect people against the risk of mesothelioma and lung cancer; (2) for carcinogens including asbestos, "no safe threshold level was demonstrable"; and (3) mesothelioma and lung cancer developed even after "low cumulative exposures to asbestos."

24. In 1972, the private American Conference of Governmental Industrial Hygienists listed asbestos as a carcinogen. Those industry standards did not identify any known safe level of exposure for asbestos and mesothelioma.

25. A 1976 follow-up study at Mt. Sinai concluded that "[t]he presence in these products of asbestiform anthophyllite and tremolite, chrysotile, and quartz

indicates the need for a regulatory standard for cosmetic talc...We also recommend that evaluation be made to determine the possible health hazards associated with the use of these products." [Rohl, A.N., et al., *Consumer Talcums and Powders: Mineral and Chemical Characterization*, 2 J. Toxicol. Environ. Health 255 (1976).] The results of the Mount Sinai study were soon picked up and reported by the New York Times and the Washington Post that same year. The study and subsequent newspaper articles listed explicitly popular consumer cosmetic talcum powders as containing high percentages of asbestos.

26. In the early 1970s, the Food and Drug Administration ("FDA") began an inquiry into whether to regulate and require warnings on consumer talcum powder products. Defendants, who were part of an exclusive lobbying and advocacy group representing companies engaged in the cosmetic products industry, repeatedly conspired and worked in concert to block efforts to label and warn consumers regarding the dangers associated with cosmetic talc powder products.

All Defendants failed to place any warning on their talc and talc powder products or ever disclose the fact that these products contained asbestos at any point, up to and including the present day, despite the clear hazard and direct information that their products did contain asbestos.

## FIRST CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY

**I.**

Plaintiffs hereby incorporate by reference the allegations in the General Background section of this Complaint as if fully stated herein.

**II.**

**Design Defect**: All Defendants, and the 1st through 100th Doe Defendants, are strictly liable, under the consumer-expectations test, for placing defectively designed products into the stream of commerce, ultimately exposing Plaintiff to asbestos from these products. First, Defendants designed, manufactured, supplied, marketed, distributed, and sold the products. Second, each product did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way because each product caused hazardous asbestos to become airborne, exposing Plaintiff to asbestos. Third, Plaintiff developed mesothelioma. Fourth, each product's failure to perform safely was a substantial factor in causing Plaintiff's mesothelioma.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

III.

**Failure-to-Warn Defect**: All Defendants, and the 1st through 100th Doe Defendants, are strictly liable for placing products with failure-to-warn defects into the stream of commerce, ultimately exposing Plaintiff to asbestos from these products. First, Defendants designed, manufactured, supplied, marketed, distributed, and sold the products. Second, each product had potential risks that were known or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community at the time of design, manufacture, supply, marketing, distribution, and sale. Third, the potential risks presented a substantial danger when each product was used or misused in an intended or reasonably foreseeable way because each product caused hazardous asbestos to become airborne. Fourth, ordinary consumers would not have recognized the potential risks. Fifth, Defendants failed to adequately warn or instruct of the potential risks. Sixth, Plaintiff developed mesothelioma. Seventh, the lack of sufficient warnings or instructions was a substantial factor in causing Plaintiff's mesothelioma.

## SECOND CAUSE OF ACTION FOR NEGLIGENCE

I.

Plaintiffs hereby incorporate by reference the allegations in the General Background section of this Complaint as if fully stated herein.

II.

**General Negligence**: All Defendants, and the 1st through 100th Doe Defendants, are liable for their general negligence. First, Defendants failed to use reasonable care to prevent harm to others because they caused hazardous asbestos to become airborne through Defendants' active participation and contribution to specific activities that caused asbestos to become airborne. Second, Defendants did so by unreasonably acting and failing to act. They acted in ways that a reasonably careful person would not do in the same situation and failed to act in ways that a reasonably careful person would do in the same situation. Third, Plaintiff developed mesothelioma. Fourth, each Defendant's general negligence was a substantial factor in causing Plaintiff's mesothelioma.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

**III.**

**Negligence Per Se**: All Defendants and the 1st through 100th Doe Defendants are liable for negligently violating the applicable state and federal asbestos regulations. Defendants negligently violated those regulations by failing to properly label asbestos-containing products; failing to monitor for the presence of asbestos dust; failing to provide changing facilities and showers to exposed persons; allowing exposures of asbestos to exceed permissible exposure limits; failing to warn as to the presence of asbestos; and failing to implement industrial hygiene practices to eliminate or decrease exposures to asbestos. Those violations were a substantial factor in causing Plaintiff's exposure to asbestos and causing Plaintiff's mesothelioma. The regulations were designed to prevent overexposure to asbestos dust, and Plaintiff was within the class of persons that the regulations were designed to protect. Accordingly, Defendants' conduct is presumed to have been negligent because Defendants violated the regulations.

**IV.**

**Negligent Design, Marketing, Sale, Supply, Installation, Inspection, Repair, and Removal of Products**: All Defendants and the 1st through 100th Doe Defendants are liable for their negligent design, marketing, sale, supply, installation, inspection, repair, and removal of products. First, Defendants designed, marketed, sold, supplied, installed, inspected, repaired, and removed the products. Second, Defendants were negligent in designing, marketing, selling, supplying, installing, inspecting, repairing, and removing the products because the products released hazardous asbestos, which became airborne. Defendants failed to use the amount of care that a reasonably careful person would use in similar circumstances to avoid exposing others to a foreseeable risk of harm. Third, Plaintiff developed mesothelioma. Fourth, each Defendant's negligence was a substantial factor in causing Plaintiff's mesothelioma.

**V.**

**Negligent Failure to Warn about Products**: All Defendants and the 1st through 100th Doe Defendants are liable for their negligent failure to warn about their products. First, Defendants designed, manufactured, supplied, marketed, distributed, and sold the products. Second, Defendants knew or reasonably should have known that each product was dangerous or

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

was likely to be dangerous when used or misused in a reasonably foreseeable manner because each product caused hazardous asbestos to become airborne. Third, Defendants knew or reasonably should have known that users would not realize the danger. Fourth, Defendants failed to adequately warn of the danger or instruct on the safe use of each product. Fifth, a reasonably careful person under the same or similar circumstances would have warned of the danger or instructed on the safe use of each product. Sixth, Plaintiff developed mesothelioma. Seventh, each Defendant's negligent failure to warn or instruct was a substantial factor in causing Plaintiff's mesothelioma.

**VI.**

**Negligent Failure to Recall and Retrofit Products**: All Defendants and the 1st through 100th Doe Defendants are liable for their negligent failure to recall and retrofit their products. First, Defendants designed, manufactured, supplied, marketed, distributed, and sold the products. Second, Defendants knew or reasonably should have known that each product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner because each product caused hazardous asbestos to become airborne. Third, Defendants became aware of this defect after they placed each product into the stream of commerce. Fourth, Defendants failed to recall and retrofit each product. Fifth, a reasonably careful person under the same or similar circumstances would have recalled and retrofitted each product. Sixth, Plaintiff developed mesothelioma. Seventh, each Defendant's negligent failure to recall and retrofit each product was a substantial factor in causing Plaintiff's mesothelioma.

## THIRD CAUSE OF ACTION FOR FRAUD

**I.**

Plaintiffs hereby incorporate by reference the allegations in the General Background section of this Complaint as if fully stated herein.

**II.**

All Defendants and the 1st through 100th Doe Defendants are liable for fraud, including fraudulent misrepresentation, fraudulent concealment, conspiracy to commit fraudulent misrepresentation, and conspiracy to commit fraudulent concealment, as set forth herein.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

III.

**Fraudulent Misrepresentation:** All Defendants, and the 1st through 100th Doe Defendants, are liable for their fraudulent misrepresentations.

First, each Defendant, via its employees, agents, advertisements, or any other authorized person or document, represented that certain facts were true when they were not.

Second, each Defendant falsely represented that the products they marketed, used, sold, supplied, or specified for use were not hazardous; and/or that each Defendant's conduct did not create serious or deadly dust hazards. Those misrepresentations were made before and during the years that Plaintiff was exposed to asbestos, for which Defendants are responsible. Those misrepresentations were made either directly to Plaintiff, to a group of persons including Plaintiff, or third parties intending and reasonably expecting that the substance of those misrepresentations would be repeated to Plaintiff.

Third, each Defendant knew that the misrepresentations were false when they made them, or Defendants made the misrepresentations recklessly and without regard for the truth.

Fourth, each Defendant intended that Plaintiff and/or the same class of persons would rely on the misrepresentations or their substance.

Fifth, Plaintiff reasonably relied on Defendants' misrepresentations or their substance.

Sixth, Plaintiff developed mesothelioma.

Seventh, Plaintiff's reliance on each Defendant's misrepresentations was a substantial factor in causing Plaintiff's mesothelioma.

IV.

**Fraudulent Concealment (Nondisclosure):** All Defendants and the 1st through 100th Doe Defendants are liable for their fraudulent concealment (nondisclosure).

First, each Defendant made affirmative statements that were so misleading (e.g., misleading "half-truths") that they gave rise to a fraud cause of action even in the absence of a specific relationship or transaction as between Defendants and Plaintiff. Specifically, Defendants stated that their products could be used safely while concealing that they were, in fact, lethal because they released asbestos fibers; and/or Defendants stated that their conduct did not create

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

serious or deadly dust hazards while concealing that Defendants' conduct created risks of asbestos-related cancer.

Second, each Defendant (i) had exclusive knowledge of material facts not known to Plaintiff, (ii) actively concealed these material facts from Plaintiff, (iii) made partial representations but also suppressed material facts, as set forth above, and (iv) made factual representations, but did not disclose facts that materially qualified those representations. Such nondisclosures included Defendants representing their products as safe when used as intended and as fit for the particular purpose for which they were marketed while not disclosing the facts that these products contained asbestos that would become airborne during the intended and/or foreseeable use of the products, rendering them dangerous and unfit for their intended purpose.

Third, each Defendant entered into a relationship and/or a transaction with Plaintiff sufficient to give rise to a duty to disclose. For example, Plaintiff used or otherwise encountered Defendants' products that were purchased either directly from Defendants, Defendants' authorized dealer or supplier, or any other entity upon which Defendants derived a direct monetary benefit. Defendants derived direct monetary benefit from the industry and these individuals' use of these products because Plaintiff and/or her family members decided to use or purchase Defendants' products.

Fourth, Plaintiff did not know of the concealed facts.

Fifth, Defendants intended to deceive Plaintiff by concealing the facts, and/or making certain representations without disclosing additional facts that would have materially qualified those representations.

Sixth, had the omitted information been disclosed, Plaintiff reasonably would have behaved differently.

Seventh, Plaintiff developed mesothelioma.

Eighth, each Defendant's concealment was a substantial factor in causing Plaintiff's mesothelioma.

## V.

**Conspiracy to Commit Fraudulent Misrepresentation**: All Defendants, and the 1st

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

through 100th Doe Defendants, are liable for their conspiracy to commit fraudulent misrepresentation. First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent misrepresentation against Plaintiff. Second, Defendants agreed with their conspirators and intended that the fraudulent misrepresentation be committed. Third, Plaintiff developed mesothelioma. Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff's mesothelioma.

VI.

**Conspiracy to Commit Fraudulent Concealment**: All Defendants, and the 1st through 100th Doe Defendants, are liable for their conspiracy to commit fraudulent concealment. First, Defendants were aware that their conspirators planned to commit fraudulent concealment against Plaintiff. Second, these Defendants agreed with their conspirators and intended that the fraudulent concealment be committed. Third, Plaintiff developed mesothelioma. Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff's mesothelioma.

VII.

**Knowledge of Hazards:** At all times pertinent hereto, all Defendants, and the 1st through 100th Doe Defendants, owed Plaintiff a duty, as provided for in California Civil Code sections 1708, 1709, and 1710, to abstain from injuring Plaintiff's person, property, or rights. In violation of that duty, each Defendant engaged in the acts and omissions when a duty to act was imposed as set forth herein, thereby proximately causing injury and harm to Plaintiff. Such actions and omissions consisted of deceit as prohibited by Civil Code section 1710, and more specifically were (i) suggestions of fact which were not true and which the Defendants did not believe to be true, (ii) assertions of fact of that which was not true, which the Defendants had no reasonable ground for believing to be true, and (iii) the suppression of facts when a duty existed to disclose it, all as are more fully set forth herein, and the violation of which as to any one such item gave rise to a cause of action for violation of Plaintiff's rights as provided for in the above code sections.

Each of the foregoing acts, suggestions, assertions, and failures to act when a duty existed to act, Defendants having such knowledge, knowing Plaintiff did not have such knowledge, was done falsely and fraudulently and with full intent to induce Plaintiff to remain in a dangerous

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

environment and to cause Plaintiff to remain unaware of the true facts, all in violation of the Civil Code and other applicable law.

## BASIS FOR PUNITIVE DAMAGES

### I.

**Malice, Oppression, or Fraud**: Plaintiffs hereby incorporate by reference the allegations of all causes of action as if fully stated herein. All Defendants, and the 1st through 100th Doe Defendants, are liable for punitive damages because they engaged in the conduct that caused Plaintiff's harm with malice, oppression, or fraud.

First, Defendants committed malice in that they acted with intent to harm when they caused Plaintiff's asbestos exposures and because their conduct was despicable and was done with a willful and knowing disregard for the rights and safety of others.

Second, Defendants committed oppression in that their conduct was despicable and subjected Plaintiff to cruel and unjust hardship in knowing disregard of Plaintiff's rights.

Third, Defendants committed fraud because they intentionally concealed and misrepresented material facts and intended to harm Plaintiff.

Defendants' conduct constituting malice, oppression, or fraud was committed by, authorized by, or adopted by one or more officers, directors, or managing agents of each Defendant, who acted on behalf of each Defendant.

## PRAYER FOR DAMAGES

### I.

Plaintiffs pray for judgment against all Defendants, and the 1st through 100th Doe Defendants, for:

1. All economic and non-economic compensatory damages in excess of $25,000;
2. Punitive damages according to proof;
3. Pre- and post-judgment interest;
4. Costs of suit; and
5. Such other relief as is fair, just, and equitable.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

**DEMAND FOR JURY TRIAL**

**I.**

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: September 27, 2022

KAZAN, McCLAIN, SATTERLEY & GREENWOOD
A Professional Law Corporation

By: ______________________
Joseph D. Satterley

Attorneys for Plaintiffs