**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

DIANNE LaSALLE, individually, as Personal Representative of the Estate of the Decedent JACK LaSALLE, and on behalf of all wrongful death beneficiaries of Decedent JACK LaSALLE,

Plaintiffs,

v.

AMERICAN INTERNATIONAL INDUSTRIES, et al.;

Defendants.

Case No. 2:26-cv-03159-TL

**REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY APPLICATION FOR IMMEDIATE REMAND OF MESOTHELIOMA LAWSUIT BACK TO WASHINGTON STATE COURT**

NOTE ON MOTION CALENDAR:
September 23, 2026



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION. .......... 6

II. DISCUSSION .......... 7

A. Jurisdiction should be decided before venue, and therefore this Court should grant Plaintiff's present motion to remand, and allow the Washington state court jury trial to proceed, without waiting for the SDTX to decide A-I-I's venue motion. .......... 7

B. A-I-I's notice of removal was filed too late. .......... 8

1. The *Dietrich* case – cited by A-I-I in its opposition papers – supports remand because the *transcript* of Mr. LaSalle's 2022 deposition testimony was a state court "paper" that implicated A-I-I's Clubman talc, and which therefore triggered A-I-I's removal deadline as soon as the *Barretts* bankruptcy case was filed. .......... 8

2. The 2024 Second Amended Complaint for survivorship and wrongful death was another trigger for A-I-I's removal deadline, because A-I-I likewise understood from that state court paper that the *LaSalle* case involved A-I-I's Clubman talc. .......... 9

3. The 2025 and 2026 motion practice and appellate court proceedings concerning the allegedly mishandled bottle of Clubman talc – likewise cited by A-I-I in its opposition papers – were additional state court papers that triggered A-I-I's removal deadline. .......... 10

4. A-I-I cites no authority for A-I-I's proposed rule whereby the "related to" removal deadline is not triggered until a non-bankruptcy-debtor successfully intervenes into a bankruptcy case. .......... 10

5. A-I-I inconsistently argues that only a state court paper can trigger the removal deadline, but then A-I-I hitches its timeliness argument to a *federal* court paper – *i.e.*, the SDTX order granting A-I-I's motion to intervene. .......... 11

C. "Related to" jurisdiction does not exist here. .......... 11

1. The Ninth Circuit follows the *Pacor* line of cases, not the *A.H. Robins* line of cases cited by A-I-I in its opposition papers. .......... 11

2. A-I-I can *never* obtain complete indemnification from Barretts



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

for a judgment in the *LaSalle* case, because A-I-I made its Clubman talc including from 1987 to 1992, and Mr. LaSalle used the product including during that period, whereas Barretts did not even exist until 1992. ........ 13

3. As A-I-I concedes, Mrs. LaSalle has *not* filed any claim in the *Barretts* bankruptcy case; instead, her Washington state court lawsuit was involuntarily stayed as to Barretts when the *Barretts* bankruptcy case was filed. ........ 14

D. This Court *should* abstain from exercising any potential "related to" jurisdiction over the *LaSalle* case, because every factor weighs in favor of remand. ........ 15

1. The effect on the efficient administration of the estate. ........ 15

2. The extent to which state law issues predominate over bankruptcy issues. ........ 15

3. The difficulty or unsettled nature of applicable state law. ........ 16

4. The presence of a related proceeding commenced in state court or other non-bankruptcy court. ........ 16

5. The jurisdictional basis, if any, other than section 1334. ........ 16

6. The degree of relatedness or remoteness of the proceeding to the main bankruptcy case. ........ 16

7. The substance rather than the form of an asserted 'core' proceeding. ........ 16

8. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court. ........ 17

9. The burden on the court's docket. ........ 17

10. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties. ........ 17

11. The existence of a right to a jury trial. ........ 17

12. The presence of non-debtor parties. ........ 18

E. Barretts has no "automatic obligation to indemnify or defend" non-bankruptcy-debtor A-I-I for the *LaSalle* case, so the *LaSalle* case likewise is subject to the *mandatory* abstention rule. ........ 18

III. CONCLUSION. ........ 19




**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.H. Robins Co., Inc. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) .......... 11

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004), *as amended* (3d Cir. 2005) .......... 12

*Dietrich v. Boeing Company*,
14 F.4th 1089 (9th Cir. 2021) .......... 6, 8, 10

*In re Fed.-Mogul Glob., Inc.*,
300 F.3d 368 (3d Cir. 2002) .......... 6, 12

*In re Fietz*,
852 F.2d 455 (9th Cir. 1988) .......... 6, 11

*In re Imerys Talc America, Inc.*,
2019 WL 3253366 (D. De. 2019) .......... 12, 13, 15

*In re New England Compounding Pharmacy, Inc. Products Liability Litigation*,
496 B.R. 256 (D. Mass. 2013) .......... 18

*Pacor, Inc. v. Higgins*,
743 F.2d 984 (3d Cir. 1984) .......... 6, 11, 12, 13

*Royal Canin U. S. A., Inc. v. Wullschleger*,
604 U.S. 22 (2025) .......... 7

*In re Spaulding Composites Co., Inc.*,
207 B.R. 899 (9th Cir. Bank. 1997) .......... 12

**State Cases**

*Hall v. Armstrong Cork, Inc.*,
103 Wn.2d 258 (1984) .......... 13

*Wright v. 3M Company, et al.*,
20 Wn. App. 2d 1028 (2021) .......... 14



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

**Federal Statutes**

28 U.S.C.A.
§ 157(b)(2)(B), (b)(4) .......... 18

28 U.S.C.
§ 157(b)(5) .......... 7
§ 1334(c)(1) .......... 15
§ 1334(c)(2) .......... 18
§ 1446(b)(1), (3) .......... 8, 11

**State Statutes**

RCW 4.22.060 .......... 14



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

## I. INTRODUCTION.

Defendants American International Industries, et al.'s (A-I-I) removal of this case to this court was simply a tactic to stop the currently scheduled trial set to begin in state court on November 2, 2026. A-I-I's opposition papers fail to rebut Plaintiff's showing that this Court should immediately remand the *LaSalle* case back to the State of Washington King County Superior Court, Case No. 23-2-08165-0 SEA, so that the jury trial may begin on November 2, 2026 with all defendants present.

First, this Court has an immediate and continuing obligation to determine its own subject matter jurisdiction. This Court should not wait for the SDTX to decide A-I-I's venue motion.

Second, A-I-I's opposition papers only further show that A-I-I's notice of removal was filed too late. For example, A-I-I's cited *Dietrich* case shows that Mr. LaSalle's 2022 deposition *transcript* was a state court paper that triggered the 30-day removal deadline as soon as Barretts filed its bankruptcy case. [*Dietrich v. Boeing Company*, 14 F.4th 1089, 1095 (9th Cir. 2021).]

Third, there is no "related to" jurisdiction under the *Pacor* line of cases that the Ninth Circuit follows. [*In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994-995 (3d Cir. 1984); *In re Fed.-Mogul Glob., Inc.*, 300 F.3d 368, 382 (3d Cir. 2002) ("The test articulated in *Pacor* for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy without the intervention of yet another lawsuit.").] Here, even



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

if A-I-I is subjected to a judgment in the *LaSalle* case, A-I-I would not enjoy an automatic right of indemnification against Barretts in its bankruptcy case. Instead, A-I-I would need to *prove* its claim for full or partial contractual or equitable indemnity against the Barretts estate.

Fourth, even if related to jurisdiction exists, this Court should, in its discretion, abstain from exercising jurisdiction over the *LaSalle* case because A-I-I has its own independent liability at least for the period from 1987 to 1992 before Barretts existed, as well as for the period from 1992 to 2017; and the Washington state court is ready to start the jury trial after several years of discovery and pretrial litigation.

Fifth, this Court likewise *must* abstain from exercising jurisdiction here, because A-I-I is a non-bankruptcy-debtor; the *LaSalle* case against A-I-I is not a core proceeding; and Barretts has *no* automatic obligation to indemnify or defend A-I-I.

## II. DISCUSSION.

### A. Jurisdiction should be decided before venue, and therefore this Court should grant Plaintiff's present motion to remand, and allow the Washington state court jury trial to proceed, without waiting for the SDTX to decide A-I-I's venue motion.

A-I-I incorrectly argues that the SDTX should decide venue before this Court decides jurisdiction. But 28 U.S.C. § 157(b)(5) does not *create* "related to" jurisdiction. On the contrary, only *if* "related to" jurisdiction otherwise exists, venue should be fixed in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose. [*Id.*] "[F]ederal courts are courts of limited jurisdiction: When they do not have (or no longer have) authorization to resolve a suit, they must hand



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

it over [to state court]." [*Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 28 (2025).] Accordingly, this Court should decide Plaintiff's present motion to remand for lack of jurisdiction, without waiting for the SDTX to decide venue.

**B. A-I-I's notice of removal was filed too late.**

**1. The *Dietrich* case – cited by A-I-I in its opposition papers – supports remand because the *transcript* of Mr. LaSalle's 2022 deposition testimony was a state court "paper" that implicated A-I-I's Clubman talc, and which therefore triggered A-I-I's removal deadline as soon as the *Barretts* bankruptcy case was filed.**

A-I-I cites *Dietrich* as if that opinion supports the timeliness of A-I-I's notice of removal. On the contrary, the holding *Dietrich*, interpreting 28 U.S.C. § 1446(b)(1), (3), shows that A-I-I's notice of removal was late by *years*. *Dietrich* explains, "The plain meaning of 'other paper' does not cover oral testimony, and we so hold here, because "paper' is defined as '[a] written or printed document or instrument." (Citations.) [fn.] Thus, even if Dietrich's children's depositions did affirmatively reveal a federal officer ground for removal, Boeing's removal was timely unless it received the deposition *transcripts* on or before April 15, 2019. Clearly Boeing did not, because the court reporter did not even certify the transcripts until April 17, 2019, and April 23, 2019." [*Dietrich v. Boeing Company*, 14 F.4th 1089, 1095 (9th Cir. 2021).]

Here, Plaintiffs' moving papers showed that Mr. LaSalle's November 17, 2022 deposition *transcript* informed A-I-I that Mr. LaSalle had used Clubman talc throughout his career as a barber, from the late 1960's through 2010's. [LaSalle Depo., Exh. 3 to Caggiano Decl. at 14:3-15:7, 15:8-20.] In light of that transcript, under *Dietrich* and



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

section 1446(b)(1), (3), the notice of removal deadline was triggered as soon as Barretts filed its bankruptcy case on October 2, 2023. [First-Day Decl., Exh. 6 to Caggiano Decl.] At that moment, A-I-I knew that the *LaSalle* case allegedly was "related to" the Barretts bankruptcy case, and therefore A-I-I had 30 days to file its notice of removal. And yet A-I-I waited almost three years to file it. That was too late.

**2. The 2024 Second Amended Complaint for survivorship and wrongful death was another trigger for A-I-I's removal deadline, because A-I-I likewise understood from that state court paper that the *LaSalle* case involved A-I-I's Clubman talc.**

Next, Plaintiffs' moving papers showed that the removal deadline was triggered *again* on May 8, 2024, when Mrs. LaSalle filed the operative Second Amended Complaint for survivorship and wrongful death. [SAC, Exh. 1 to Caggiano Decl.] The SAC explained to A-I-I that it was liable Mr. LaSalle's fatal mesothelioma that resulted from his use of A-I-I's talc product. [*Id.* at pp. 2-5.] In light of Mr. LaSalle's deposition transcript, A-I-I understood that the product at issue is Clubman talc. Plus, as A-I-I explains in its opposition papers, "From 1987 to 2017, A-I-I made and sold a talcum powder product called 'Clubman Talc.' BMI was the only supplier of talc to A-I-I for its Clubman product. . . . [A-I-I is] a downstream blender of a product made exclusively with talc supplied by BMI . . ." [Opp. Brief at p. 3.] Thus, on May 8, 2024 when the SAC was filed, A-I-I again knew that the *LaSalle* case allegedly was "related to" the Barretts bankruptcy case, and therefore A-I-I had 30 days to file its notice of removal. And yet A-I-I waited over two years to file it. Again, that was too late.



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

**3. The 2025 and 2026 motion practice and appellate court proceedings concerning the allegedly mishandled bottle of Clubman talc – likewise cited by A-I-I in its opposition papers – were additional state court papers that triggered A-I-I's removal deadline.**

A-I-I's opposition papers refer to the 2025 and 2026 *LaSalle* state court motion practice and appellate court proceedings concerning the allegedly mishandled bottle of Clubman talc. [Opp. Brief at p. 1.] As A-I-I notes, on January 15, 2026, the appellate court denied Plaintiff's request interlocutory review. Likewise on that date, A-I-I again knew that the *LaSalle* case allegedly was "related to" the Barretts bankruptcy case, and therefore A-I-I had 30 days to file its notice of removal. And yet A-I-I waited over eight months to file it. Again, that was too late.

**4. A-I-I cites no authority for A-I-I's proposed rule whereby the "related to" removal deadline is not triggered until a non-bankruptcy-debtor successfully intervenes into a bankruptcy case.**

Nowhere in A-I-I's opposition papers does A-I-I cited any authority for A-I-I's proposed rule whereby the "related to" removal deadline is not triggered until a non-bankruptcy-debtor successfully intervenes into a bankruptcy case. [Opp. Brief at pp. 6, 8, 9.] A-I-I cites the *Dietrich* opinion, but the cited sentence merely holds, "[the] removal clock does not start until a paper makes a ground for removal 'unequivocally clear and certain.' [*Dietrich*, 14 F.4th at 1091.] Here, as Plaintiffs have shown, A-I-I's asserted ground for removal of the *LaSalle* case – i.e., "related to" jurisdiction linked to the *Barretts* bankruptcy case – was unequivocally clear and certain years before the SDTX allowed A-I-I to intervene in that case.



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

**5. A-I-I inconsistently argues that only a state court paper can trigger the removal deadline, but then A-I-I hitches its timeliness argument to a *federal* court paper – *i.e.*, the SDTX order granting A-I-I's motion to intervene.**

In one breath, A-I-I argues that only *state* court papers can trigger the removal deadline. [Opp. Brief at p. 6.] But then in the next breath, A-I-I inconsistently argues that the removal deadline here was triggered by a *federal* court paper – *i.e.*, the SDTX order granting A-I-I's motion to intervene in the *Barretts* bankruptcy case. [*Id.*] The explanation is that A-I-I is wrong on the law. 28 U.S.C. § 1446(b)(1), (3) does not state that the removal deadline may be triggered *only* by a state court paper, or *only* by a federal court paper. Instead, the triggering paper may be any "amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." [*Id.*]

**C. "Related to" jurisdiction does not exist here.**

**1. The Ninth Circuit follows the *Pacor* line of cases, not the *A.H. Robins* line of cases cited by A-I-I in its opposition papers.**

A-I-I asks this Court to follow the *A.H. Robins* line of cases that more broadly interpret the scope of related to jurisdiction. [Opp. Brief at p. 11; *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002, fn. 11 (4th Cir. 1986).] However, the Ninth Circuit follows the *Pacor* line of cases that more narrowly interpret the scope of related to jurisdiction. [*In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994-995 (3d Cir. 1984).] As the Ninth Circuit bankruptcy panel has explained, "The Ninth Circuit has declined to endorse the *A.H. Robins* holding on several occasions and recently stated



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

that *A.H. Robins* and the other 'unusual circumstances' cases, 'although referred to as extensions of the automatic stay, were in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate.' (Citations). Here, the bankruptcy court did not rely upon its injunctive power; it found Liberty's suit threatened estate property. We do not agree. Such an expansive definition of estate property would have the effect of bringing into the bankruptcy court litigation that is properly situated outside of it." [*In re Spaulding Composites Co., Inc.*, 207 B.R. 899, 907 (9th Cir. Bank. 1997).]

Here, under the *Pacor* line of cases, the most persuasive opinions are those that resulted from Johnson & Johnson's similar, and unsuccessful, attempt to establish related to jurisdiction linked to the bankruptcy case of an unaffiliated company, Imerys Talc America, Inc. [*In re Imerys Talc America, Inc.*, 2019 WL 3253366, *2, 7 (D. De. 2019).] "Though the language first outlined in *Pacor, Inc. v. Higgins* suggests a permissive and broad test for finding 'related-to' jurisdiction, the Third Circuit has repeatedly reiterated that 'any conceivable effect' does not encompass scenarios where such an effect would only arise as a result of another lawsuit. *See e.g., id.*; *In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004), *as amended* (3d Cir. 2005) ('any indemnification claims against Combustion Engineering resulting from a shared production facility would require the intervention of another lawsuit to affect the bankruptcy estate, and thus cannot provide a basis for 'related to' jurisdiction.'); *In re Fed.-Mogul Glob., Inc.*, 300 F.3d 368, 382 (3d Cir. 2002) ('The test articulated in *Pacor* for whether a lawsuit could 'conceivably' have



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy without the intervention of yet another lawsuit.')." [*In re Imerys Talc America, Inc.*, 2019 WL 3253366, *2.]

Here, under the *Pacor* line of cases, related to jurisdiction does not exist because A-I-I's potential indemnification by Barretts for a judgment in the *LaSalle* case would require "yet another lawsuit," without automatic indemnity.

**2. A-I-I can *never* obtain complete indemnification from Barretts for a judgment in the *LaSalle* case, because A-I-I made its Clubman talc including from 1987 to 1992, and Mr. LaSalle used the product including during that period, whereas Barretts did not even exist until 1992.**

Additionally, A-I-I can *never* obtain complete indemnification from Barretts for a judgment in the *LaSalle* case. That is because, as Plaintiffs showed in their moving papers, A-I-I made its Clubman talc including from 1987 to 1992, and Mr. LaSalle used the product during that period, whereas Barretts did not even exist until 1992. [Loveless Depo., Exh. 4 to Caggiano Decl. at 10:17-11:6, 17:20-18:12, 102:5-21; LaSalle Depo., Exh. 3 to Caggiano Decl. at 14:3-15:7, 15:8-20; First-Day Decl., Exh. 6 to Caggiano Decl., at p. 7.]

A-I-I is simply wrong that Barretts existed before 1992. The truth is that "BMI's talc operations were historically part of an unincorporated division of Pfizer Inc. ("Pfizer"). On August 7, 1992, BMI was incorporated as a wholly-owned subsidiary of Pfizer." [First-Day Decl., Exh. 6 to Caggiano Delc., at p. 7.]

And the law is that a corporation normally is not liable for events that occurred before that corporation existed. [*Hall v. Armstrong Cork, Inc.*, 103 Wn.2d 258, 261-262



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

(1984).] Here, Barretts' First-Day Declaration explains that Barretts is *not* liable for pre-1992 events, and that when Barretts does receive any such lawsuits, it tenders them to Pfizer who then handles the defense and settlement costs. [First-Day Decl., Exh. 6 to Caggiano Delc., at p. 6.]

**3. As A-I-I concedes, Mrs. LaSalle has *not* filed any claim in the *Barretts* bankruptcy case; instead, her Washington state court lawsuit was involuntarily stayed as to Barretts when the *Barretts* bankruptcy case was filed.**

A-I-I insinuates that Mrs. LaSalle is trying to gain a double recovery from A-I-I in the *LaSalle* case and from Barretts in its bankruptcy case. [Opp. Brief at p. 11.] But in reality, Mrs. LaSalle has *not* filed any claim in the *Barretts* bankruptcy case; instead, her Washington state court lawsuit was involuntarily stayed as to Barretts when the *Barretts* bankruptcy case was filed. As A-I-I acknowledges much later in its brief, "Ms. LaSalle is a creditor against the Estate because she had this case pending against BMI when it filed for bankruptcy. BMI lists it as a claim. Ms. LaSalle's attorney is also a member of the Unsecured Creditors Committee. The plaintiffs may say they have not yet filed proofs of claim, but that is only because there is no bar date requiring the filing as of now." [Opp. Brief at p. 20.] Thus, Mrs. LaSalle is not seeking any double recovery; she might never even file a claim in the bankruptcy case; and there are established rules for applying settlement credits to avoid any alleged double recovery (*see* RCW 4.22.060; *Wright v. 3M Company, et al.*, 20 Wn. App. 2d 1028, *10-11 (2021)).



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

**D. This Court *should* abstain from exercising any potential "related to" jurisdiction over the *LaSalle* case, because every factor weighs in favor of remand.**

"[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.' [28 U.S.C. § 1334(c)(1).]

Here, under all twelve factors that are considered by courts, this Court should abstain from exercising any potential "related to" jurisdiction over the *LaSalle* case. [*In re Imerys Talc America, Inc.*, 2019 WL 3253366, *7 (D. De. 2019).]

**1. The effect on the efficient administration of the estate.**

The *LaSalle* case will not disrupt the efficient administration of the *Barretts* bankruptcy case, because any judgment entered against A-I-I will not automatically equal a successful indemnification claim against Barretts. As Plaintiff has shown, A-I-I has its own *completely separate* liability for the years 1987 to 1992 (before Barretts existed), and A-I-I likewise may be found liable for its own misconduct from 1992 to 2017 because A-I-I never tested the asbestos content of its product, and never warned consumers even after being sued.

**2. The extent to which state law issues predominate over bankruptcy issues.**

The *LaSalle* case involves *only* state law claims against A-I-I. That includes Washington state law applicable to the events that occurred in Washington (*e.g.*, product exposure, medical causation, and compensatory damages). And California state law



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

applicable to the events that occurred in California (*e.g.*, A-I-I's malice, oppression, or fraud justifying punitive damages).

**3. The difficulty or unsettled nature of applicable state law.**

The Washington state court is better suited to interpret and apply the state law that governs the *LaSalle* case. That includes the Washington and California statutes, and the appellate decisions that interpret those statutes.

**4. The presence of a related proceeding commenced in state court or other non-bankruptcy court.**

Except for this improper removal case, the *LaSalle* case is pending only in Washington state court.

**5. The jurisdictional basis, if any, other than section 1334.**

There is no other asserted jurisdictional basis. A-I-I invokes only section 1334, asserting that "related to" jurisdiction exists.

**6. The degree of relatedness or remoteness of the proceeding to the main bankruptcy case.**

Again, the *LaSalle* case will not automatically lead to a successful indemnification claim by A-I-I in the *Barretts* bankruptcy case; and Mrs. LaSalle has not filed any claim of her own in that case.

**7. The substance rather than the form of an asserted 'core' proceeding.**

The *LaSalle* case is not a core proceeding, because A-I-I is a non-bankruptcy-debtor in the *Barretts* bankruptcy case.



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

**8. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.**

Again, the *LaSalle* case is not a core proceeding. It is purely a state law case.

**9. The burden on the court's docket.**

By contrast to this Court, the Washington state court has overseen the *LaSalle* case for several years, and the jury trial will start on November 2, 2026.

**10. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.**

*Only* A-I-I is guilty of forum shopping here. As A-I-I's opposition brief notes, the LaSalle case started as a California lawsuit (Opp. Brief at p. 2) because that is where A-I-I is headquartered, and that is where A-I-I made Clubman talc. A-I-I caused the case to be transferred to Washington state court, as shown by A-I-I's and its codefendants' consent to Washington state court jurisdiction. [SAC, Exh. 1 to Caggiano Decl., at Exh. A thereto.] And now, on the eve of the Washington state court jury trial, A-I-I has committed more forum shopping by removing this case to federal court, and by trying to have it transferred to the SDTX.

**11. The existence of a right to a jury trial.**

The Washington state court will provide a jury trial. And so would this Court. But it is unclear who will be the factfinder in the "science trial" (Opp. Brief at p. 18) that A-I-I and Barretts will conduct in the SDTX.



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

**12. The presence of non-debtor parties.**

As Plaintiff has shown, Defendant PTI Union, LLC will participate in the Washington state court jury trial. PTI Union is responsible for a different talc product, Dr. Scholl's.

**E. Barretts has no "automatic obligation to indemnify or defend" non-bankruptcy-debtor A-I-I for the *LaSalle* case, so the *LaSalle* case likewise is subject to the *mandatory* abstention rule.**

Although this Court need not reach the topic of mandatory abstention, abstention is indeed mandatory here. "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." [28 U.S.C. § 1334(c)(2).]

A-I-I's cited authority is factually distinguishable, because A-I-I is a non-bankruptcy-debtor; the *LaSalle* case against A-I-I is not a core proceeding; and Barretts has *no* "automatic obligation to indemnify or defend" A-I-I. [*In re New England Compounding Pharmacy, Inc. Products Liability Litigation*, 496 B.R. 256, 264 (D. Mass. 2013); 28 U.S.C.A. § 157(b)(2)(B), (b)(4).]



WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

## III. CONCLUSION.

The *LaSalle* case should be immediately remanded back to Washington State Court, King County Super. Ct. Case No. 23-2-08165-0 SEA.

**CERTIFICATION**

I certify that this memorandum contains 3,492 words, in compliance with the Local Civil Rules.

DATED this 23rd day of September, 2026.

WEINSTEIN CAGGIANO PLLC

*/s/ Alexandra B. Caggiano*
Brian D. Weinstein, WSBA No. 24497
Alexandra B. Caggiano, WSBA No. 47862
600 University Street, Suite 1620
Seattle, Washington 98101
Phone: (206) 508-7070
Counsel for Plaintiff



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

DATED this 23rd day of September, 2026.

WEINSTEIN CAGGIANO PLLC

*/s/ Julia Crippen*
Julia Crippen
Legal Assistant



**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650